Stephen M. Feldman, OSB No. 932674
SFeldman@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

R. Charles Henn Jr. (admitted *pro hac vice*)
chenn@kilpatricktownsend.com
Charles H. Hooker III (admitted *pro hac vice*)
chooker@kilpatricktownsend.com
Nichole D. Chollet (admitted *pro hac vice*)
nchollet@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500
Facsimile: 404.815.6555

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, a Delaware corporation; **ADIDAS AG**, a foreign entity; **ADIDAS INTERNATIONAL MARKETING B.V.**, a foreign entity; **REEBOK INTERNATIONAL LTD.**, a Massachusetts corporation; and **REEBOK INTERNATIONAL LIMITED**, a foreign entity, <br><br> Plaintiffs, <br><br> v. <br><br> **TRB ACQUISITIONS LLC**, a New York limited liability company, **CUTIE PIE BABY, INC.**, a New York corporation, **ELITE PERFORMANCE FOOTWEAR, LLC**, a New York limited liability company, **GINA GROUP LLC**, a New York limited liability company, **ONE STEP UP, LTD.**, a New York limited | No. 3:15-cv-02113-SI <br><br> **MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANTS' FIFTH AND ELEVENTH AFFIRMATIVE DEFENSES** <br><br> By Plaintiffs <br><br> Pursuant to Fed. R. Civ. P. 12(c) |

1-    MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
      DEFENDANTS' FIFTH AND ELEVENTH AFFIRMATIVE
      DEFENSES

company, **SARAMAX APPAREL
GROUP, INC.**, a New York corporation,
**UNITED LEGWEAR COMPANY,
LLC**, a New York limited liability
company, **ACTIVE BASICS LLC**, a New
York limited liability company, **USPA
ACCESSORIES, LLC DBA CONCEPT
ONE**, a New York limited liability
company, **IMX, LLC**, a New York limited
liability company, **KIDZ CONCEPTS,
LLC**, a New York limited liability
company, **Q4 DESIGNS LLC**, a New
York limited liability company,
**RBX.COM, LLC**, a New York limited
liability company, **C.D.B. BRANDS LLC**,
a New York limited liability company, and
**L.A. KIDZ, INC.**, a New York
corporation,

                              Defendants.

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1(a)(1)(A), counsel for plaintiffs adidas America, Inc., adidas AG, and

adidas International Marketing B.V. (collectively, "adidas") as well as plaintiffs Reebok

International Ltd. and Reebok International Limited (collectively, "Reebok" and together with

adidas, the "Plaintiffs") certify that their counsel has conferred in good faith with counsel for

defendant TRB Acquisitions LLC ("TRB") as well as the TRB licensee defendants (together

with TRB, the "Defendants") in an effort to resolve the issues raised by this motion, but that the

parties have been unable to do so.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(c), Plaintiffs respectfully move for

judgment on the pleadings as to Defendants' Fifth Affirmative Defense asserting "unclean

hands" and Eleventh Affirmative Defense asserting "trademark misuse." Despite their labels,

these two affirmative defenses are actually identical "antitrust" defenses based on Plaintiffs'

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

alleged anticompetitive conduct in enforcing their trademark rights.  Indeed, both of the defenses are premised upon Plaintiffs' alleged attempts "to prevent lawful competition in the marketplace and misusing their claimed intellectual property to acquire a monopoly in violation of U.S. antitrust laws."  (*See* ECF 81 at 40, 43.)  As this Court has previously held, such "antitrust" defenses are insufficient as a matter of law.  *See adidas-America, Inc. v. Payless ShoeSource, Inc.*, 546 F. Supp. 2d 1029, 1079-81 (D. Or. 2008) (hereinafter, "*Payless*").

As an initial matter, and as recognized by this Court in *Payless*, the type of antitrust defenses asserted by Defendants here are barred under the *Noerr-Pennington* doctrine. Moreover, even if the defenses were not barred, Defendants have failed to allege a legally sufficient antitrust defense.  Accordingly, and as explained further in the supporting memorandum below, the Court should dismiss Defendants' Fifth and Eleventh Affirmative Defenses set forth in their Answer, Affirmative Defenses, and Counterclaims to the First Amended Complaint (ECF 81, the "Answer").

## SUPPORTING MEMORANDUM

## I.    INTRODUCTION

In their Fifth and Eleventh Affirmative Defenses, Defendants raise "unclean hands" and "trademark misuse," alleging specifically that Plaintiffs are (1) misusing their trademarks to assert "frivolous" lawsuits, (2) "exploiting a fact-specific 2008 jury decision that involved the use of two and four stripes on footwear [i.e., the jury's verdict in *Payless* awarding adidas over $300 million] to restrain trade and to stop the use of . . . two and four striped designs on branded footwear or apparel in the marketplace," and (3) conspiring and colluding with the Seduka Defendants[1] to "knock the RBX brand out of the marketplace."  (ECF 81 at 41, 43-44.)

---

[1] Defendants define "Seduka Defendants" on page 41 of their Answer.

3-    MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
      DEFENDANTS' FIFTH AND ELEVENTH AFFIRMATIVE
      DEFENSES

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Despite their obvious familiarity with the *Payless* case,[2] Defendants ignore this Court's decision in that case holding that affirmative defenses related to a party's alleged anticompetitive behavior in enforcing its trademark rights—defenses virtually identical to those asserted by Defendants here—fail as a matter of law. *Payless*, 546 F. Supp. 2d at 1078-1081 (finding that defendant failed to plead a legally viable unclean hands or trademark misuse affirmative defense based on alleged anticompetitive conduct). As explained by this Court in *Payless*, antitrust/unclean hands and trademark misuse defenses to trademark infringement are "very narrow," and "in almost every reported instance where the antitrust misuse of a trademark has been raised as a defense, it has been rejected." *Id.* at 1078-79 (quotation marks and citation omitted). Defendants' antitrust defenses should likewise be rejected here.

First, and as noted by this Court in *Payless*, affirmative defenses premised on the type of alleged antitrust activity at issue here are expressly foreclosed by the *Noerr-Pennington* doctrine, which protects the First Amendment right of parties to petition the government for redress of their rights. Although the *Noerr-Pennington* doctrine may be circumvented upon a showing that a party has engaged in "sham" litigation, Defendants have not alleged—and indisputably cannot show—that Plaintiffs' (and, more specifically, adidas's) enforcement of their trademark rights constitutes "sham" litigation. Quite the contrary, adidas has a proven track record of successfully litigating its rights in its trademarks, including in several actions before this Court. *See, e.g.*, *adidas America, Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222 (D. Or. 2016) (granting preliminary injunction based on defendant's infringement and dilution of adidas's Three-Stripe Mark and Stan Smith Trade Dress); *Payless*, 2008 WL 4279812 (D. Or. Sept. 12, 2008) (affirming jury verdict of infringement of adidas's Three-Stripe Mark and Superstar Trade Dress); *adidas-Salomon AG v. Target Corp.*, 228 F. Supp. 2d 1192 (D. Or. 2002) (upholding the viability of adidas's trademark and trade dress infringement claims against four-stripe Superstar

---

[2] Notably, the same local counsel representing the Defendants in this case represented Payless in the *adidas v. Payless* case.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

imitations); *ACI Int'l, Inc. v. adidas-Salomon AG*, 359 F. Supp. 2d 918 (C.D. Cal. 2005) (denying motion to dismiss adidas's infringement claims regarding two-stripe footwear). Notably, in nearly all of these prior cases, as well as a number of others, the court determined that adidas has viable and enforceable infringement claims against entities marketing and selling two- and/or four-stripe imitations of its Three-Stripe Mark.[3]

Second, even if their Fifth and Eleventh Affirmative Defenses were not barred under the *Noerr-Pennington* doctrine (which they are), Defendants' allegations fall far short of those required to state a claim for violation of the antitrust laws, under either Section 1 or Section 2 of the Sherman Act, and thus fail on this basis as well. Defendants have not sufficiently alleged a conspiracy, contract, or agreement in restraint of trade to support a Section 1 claim. Nor have Defendants identified a relevant antitrust market, alleged Plaintiffs' market share in the relevant market, or alleged that Plaintiffs' activities have excluded any competitors from any market. Any one of these pleading deficiencies alone is enough to invalidate a claim under Section 2.

For the reasons previously explained by this Court in *Payless*, as well as those set forth below, Defendants' antitrust defenses are insufficient as a matter of law, and as a result, the Court should grant Plaintiffs judgment on the pleadings as to those defenses.[4]

## II.    ARGUMENT

### A.    Legal Standard for Motion for Judgment on the Pleadings.

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same standard

---

[3] *See, e.g.*, *Target*, 228 F. Supp. 2d at 1211 (explaining that "[a]lthough three stripes obviously do not equal four stripes, the issue is not simply the number of stripes. Instead, the issue is whether the total effect of the allegedly infringing design is likely to cause confusion in the minds of an ordinary purchaser.").

[4] As discussed below, Defendants' "unclean hands" defense premised on Plaintiffs' alleged anticompetitive activity of bringing trademark suits is subject to dismissal for additional reasons.

5-    MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
       DEFENDANTS' FIFTH AND ELEVENTH AFFIRMATIVE
       DEFENSES

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

"applicable to the corresponding 12(b) motion." *Elliott v. Dep't of Def.*, No. C 97-04141 MEJ, 1998 WL 737999, at *2 (N.D. Cal. Oct. 13, 1998) (quotation marks and citation omitted). To survive a Rule 12(c) motion, "the complaint's factual allegations, together with all reasonable inferences, [must] state a plausible claim for relief." *Cafasso v. Gen. Dynamics c4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal,* 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978–79 (9th Cir. 1999) (quotation marks and citation omitted). Importantly, "[w]hat *Twombly* and *Iqbal* teach is that where there are other plausible explanations, it is not sufficient to speculate in a complaint," particularly "where the expensive process of discovery in an antitrust suit is at stake."[5] *Ciba Vision Corp. v. De Spirito*, No. 1:09-cv-01343-JOF, 2010 WL 553233, at *8 (N.D. Ga. Feb. 10, 2010).

Because Defendants' defenses related to Plaintiffs' alleged anticompetitive acts are barred by the *Noerr-Pennington* doctrine and also are unsupported by Defendants' allegations, the Court should grant Plaintiffs' motion for judgment on the pleadings.

### B.   Defendants' Antitrust Defenses are Barred Under *Noerr-Pennington*.

The thrust of Defendants' so-called "unclean hands" and "trademark misuse" defenses is that Plaintiffs have acted inequitably by allegedly (1) misusing their trademarks to assert frivolous lawsuits "to reduce market competition or otherwise satisfy their corporate interests and/or the interests of parties to which Plaintiffs have contractual, common interest, or other joint defense agreements with," (2) exploiting the *Payless* jury's verdict (which found numerous two-

---

[5] Here, it appears that Defendants have asserted their (fundamentally flawed) antitrust defenses merely as a pretext to launch a sweeping, unduly burdensome, and misplaced discovery campaign focusing on an entirely speculative notion that there exists some nefarious anticompetitive basis for adidas's decision to enforce its trademark rights.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

and four-stripe designs on footwear to infringe adidas's Three-Stripe Mark) by seeking to use that verdict as a basis to stop other uses of two- and four-stripe designs on footwear and apparel in the marketplace, and (3) conspiring with the Seduka Defendants to keep Defendants out of the marketplace by asserting lawsuits against them.[6]  In other words, Defendants contend that Plaintiffs have acted inequitably by enforcing rights in their trademarks.

Any such defense is plainly barred by the *Noerr-Pennington* doctrine.  Indeed, in *Payless*, this Court expressly recognized this fundamental principle, stating:  "To the extent that [the defendant's] unclean hands/trademark misuse-antitrust defenses are premised upon adidas' aggressive trademark enforcement efforts, those claims are barred under the *Noerr-Pennington* doctrine."  546 F. Supp. 2d at 1078 n.18.  *See also PODS Enters., Inc. v. ABF Freight Sys., Inc.*, No. 8:11-cv-84-T-33MAP, 2011 WL 4948397, at *7 (S.D. Fla. Oct. 17, 2011) (striking affirmative defenses alleging trademark misuse, abuse of process, and antitrust violations because those defenses were barred under the *Noerr-Pennington* doctrine).

Under the *Noerr-Pennington* doctrine, "those who petition government for redress are generally immune from antitrust liability."  *Payless*, 546 F. Supp. 2d at 1078 n.18 (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, Inc., 508 U.S. 49, 56 (1993)).  "The Supreme Court has described the right to petition as 'among the most precious of the liberties safeguarded by the Bill of Rights' and 'intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press.'"  *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (quoting *United Mine Workers of Am. v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)).  The Ninth Circuit has held that the act of sending demand letters in advance of

---

[6] In their Fifth and Eleventh Affirmative Defenses, Defendants also allege that Plaintiffs failed to perform a reasonable pre-suit investigation, asserted cancelled or unenforceable trademark registrations in this action, and failed to affirmatively assert in this action TRB's trademark registrations.  Because these acts are inextricably intertwined with Plaintiffs' bringing of this lawsuit, they do not provide a sufficient basis for an antitrust defense for the same reasons explained in depth below.

potential litigation is also immunized.  *See Sosa v. DIRECT TV, Inc.,* 437 F.3d 923, 936-38 (9th Cir. 2006).

The only way that Defendants can circumvent *Noerr-Pennington* immunity is by satisfying the exceedingly narrow "sham" exception to *Noerr-Pennington*—that is, Defendants must prove that the allegedly anticompetitive lawsuits were but "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961); *see also United Mine Workers v. Pennington*, 381 U.S. 657, 660-61 (1965).  To establish actionable "sham" litigation, the claimant must show that the subject suit is:  (i) "objectively baseless;" and (ii) subjectively brought in bad faith, i.e., "an attempt to interfere *directly* with the business relationships of a competitor, through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."  *Prof'l Real Estate*, 508 U.S. at 60-61 (emphasis in original) (quotation marks and citations omitted).

The Supreme Court unequivocally has held that if an antitrust claimant cannot satisfy the first prong of the test (i.e., that Plaintiffs' prior trademark litigation was "objectively baseless"), then evidence bearing on the second prong is irrelevant as a matter of law.  *Id.* at 57 ("[A]n objectively reasonable effort to litigate cannot be sham regardless of subjective intent.").  "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail."  *Id.* at 60.  Indeed, if the prior proceeding was not objectively meritless, a complainant is not even entitled to discovery on the motivations behind the prior proceeding.  *Id.* at 55-56.

Significantly, the Ninth Circuit has cautioned district courts to "not lightly conclude in any *Noerr-Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections afforded by the First Amendment, a result [the Ninth Circuit] would reach only with great reluctance." *White*, 227 F.3d at 1232.  To meet the

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

exceptionally high standard of showing that litigation and pre-litigation conduct satisfies the "objectively baseless" standard, the underlying claim must offend Rule 11 standards. *See Prof'l Real Estate*, 508 U.S. at 65.  Moreover, a successful claim, by its very nature, cannot be considered objectively baseless. *Id.* at 60 n.5.

Defendants fail to specifically identify a single case brought by any of the Plaintiffs that would constitute "sham" litigation. And the only case that Defendants point to that involves Plaintiffs' alleged misuse of their trademark rights is the present case. But, as a matter of law, this litigation, which is clearly meritorious, is not "objectively baseless." [7] *See Dell, Inc. v. 3K Computers, LLC*, No. 08-80455-CIV, 2008 WL 6600766, at *2 (S.D. Fla. Oct. 7, 2008) (dismissing affirmative defense alleging that plaintiff had violated antitrust laws by asserting suit against defendants and explaining that "[a] brief review of the pleadings makes clear that plaintiff's claims are not 'objectively baseless'"); *PODS Enters.*, 2011 WL 4948397, at *5 (suit not objectively baseless where plaintiff owned four registrations for asserted trademarks). Indeed, Plaintiffs own numerous incontestable registrations for their trademarks, and TRB adopted its marks—which are similar to Plaintiffs' marks and are being used on goods identical to Plaintiffs' goods—well after Plaintiffs began using and had registered their marks. Thus, under any objective measure, Plaintiffs' claims are in fact very strong. [8]

Defendants' ability to claim that any past cases brought by Plaintiffs were "sham" litigation is likewise foreclosed. First, Defendants have not alleged that Plaintiffs have a "policy of starting legal proceedings without regard to the merits," as is required to show that Plaintiffs have engaged in "sham" litigation. *PODS Enters.*, 2011 WL 4948397, at *5 (quotation marks

---

[7] The only case other than the present case that is identified in Defendants' Answer is the *Payless* case, but Defendants do not allege that the *Payless* case constituted "sham" litigation. Indeed, how could they when the jury found unanimously in favor of adidas and awarded in excess of $300 million.

[8] Tellingly, Defendants' own actions demonstrate this this case is not objectively baseless, as Defendants did not even file a Rule 12(b)(6) motion contending that Plaintiffs' claims fail as a matter of law, much less did Defendants bring a Rule 11 motion.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

and citation omitted).  Second, even a cursory review of Plaintiffs' past lawsuits shows that adidas has experienced overwhelming success in enforcing its trademark rights.  adidas has obtained a jury verdict of over $300 million,[9] succeeded on a motion for a preliminary injunction,[10] prevailed on numerous motions for summary judgment,[11] obtained default judgments against infringers,[12] survived motions to dismiss,[13] and settled many cases (often for thousands of dollars).  Notably, in those cases, not a single defendant has thought Plaintiffs' allegations related to their trademark rights were sufficiently meritless to seek Rule 11 sanctions against Plaintiffs.  Based on this fact alone, Plaintiffs' prior enforcement actions are protected under *Noerr-Pennington*.

Because Defendants' defenses related to Plaintiffs' alleged anticompetitive behavior are clearly foreclosed by the *Noerr-Pennington* doctrine, those defenses (i.e., the Fifth and Eleventh Affirmative Defenses) should be dismissed.

### C.    Defendants Fail To Sufficiently Allege an Antitrust "Defense."

Defendants clearly attempt to invoke the antitrust laws, alleging in both their Fifth and Eleventh Affirmative Defenses that Plaintiffs are attempting "to acquire a monopoly in violation of U.S. antitrust laws" and also are conspiring with the Seduka Defendants to knock Defendants out of the market.  Even setting aside the *Noerr-Pennington* immunity to which Plaintiffs are entitled, to have any chance of prevailing on this type of antitrust/misuse defense, Defendants would have a "heavy" burden of showing that Plaintiffs are violating the antitrust laws by enforcing the well-known and incontestable Three-Stripe Mark.  *See R.J. Reynolds Tobacco Co.*

---

[9] *Payless*, 2008 WL 4279812, at *7-8.

[10] *Skechers USA, Inc.*, 149 F. Supp. 3d at 1222.

[11] *E.g.*, *Payless*, 529 F. Supp. 2d at 1262; *adidas America, Inc. v. Herbalife Int'l, Inc.*, No. CV 09-661-MO, 2011 WL 3359987 (D. Or. Aug. 1, 2011); *Target Corp.*, 228 F. Supp. 2d at 1196-97; *adidas Am. v. Kmart Corp.*, No. CV-05-120-ST, 2006 WL 2044857 (D. Or. June 15, 2006).

[12] *E.g.*, *adidas America, Inc. v. Soccer and Soccer, Inc.*, No. CV 13-7148-GW(VBKx), 2013 WL 11323120 (C.D. Cal. Oct. 25, 2013).

[13] *E.g.*, *ACI Int'l, Inc.*, 359 F. Supp. 2d at 924.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*v. Premium Tobacco Stores, Inc.*, No. 99–C–1174, 2001 WL 747422, at *4 (N.D. Ill. Jun. 29, 2001).  This Defendants cannot do.

            **1.**       **Defendants' Antitrust Allegations Do Not Support a Section 1 Defense.**

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1.  To properly plead a Section 1 conspiracy defense, Defendants must allege a "conspiracy," "contract," or "agreement" in restraint of trade.  *See Payless*, 546 F. Supp. 2d at 1079.  Although Defendants make passing reference in paragraph 5(a) of their Fifth Affirmative Defense and paragraph 11(a) of their Eleventh Affirmative Defense to Plaintiffs attempting to "restrain trade,"[14] Defendants do not allege that Plaintiffs have conspired or entered into any agreement in furtherance of restraining trade.  Defendants' allegations in those paragraphs are thus insufficient to support a Section 1 claim.  *See id.* (finding that the defendant failed to properly plead a Section 1 conspiracy defense).

Defendants do, admittedly, allege in paragraphs 5(e) and 11(e) of their affirmative defenses that Plaintiffs have conspired and colluded with the Seduka Defendants to "knock the RBX brand out of the marketplace."[15]  But this does not salvage a Section 1 defense for Defendants.  Indeed, in *Payless*, the defendant made an analogous argument, specifically arguing that "adidas unlawfully conspired with K-Swiss . . . to assist one another in the enforcement of their respective rights."  *Id.* at 1080.  This Court rejected the argument that such alleged conduct could establish a Section 1 defense, explaining:  "As several courts have recognized, such conduct, even if it pertains to products bearing trademarks, cannot be all that is required to establish the antitrust misuse defense."  *Id.* (citing *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,*

---

[14] In their Eleventh Affirmative Defense, Defendants specifically allege that "Plaintiffs have used their trademark registrations to improperly and unfairly promote a monopoly and restrict competition[.]"

[15] Defendants assert similar allegations in paragraphs 246-252 of their counterclaims.

11-  MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
     DEFENDANTS' FIFTH AND ELEVENTH AFFIRMATIVE
     DEFENSES

21184-0112/132727939.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

298 F. Supp. 1309, 1314-15 (D.C.N.Y. 1969); *R.J. Reynolds*, 2001 WL 747422, at *4–5).  This Court in *Payless* thus held that the defendant's contention that adidas and K-Swiss had conspired "to assist one another in enforcing their rights is insufficient to establish [] the antitrust misuse-unclean hands defense." *Id.*  This Court further explained that "[a]greements that restrict a competitor's ability to use a particular mark cannot have any meaningful exclusionary or anticompetitive effect because the competitor remains free to sell its goods using a different mark." *Id.* at 1081 (citing *Clorox Co. v. Sterling Winthrop, Inc.,* 117 F.3d 50, 56 (2d Cir. 1997)).

Here, Defendants' antitrust defenses fare no better under a Section 1 analysis than did the failed defense asserted by the defendant in *Payless*.  As discussed above, Defendants allege that Plaintiffs have conspired with the Seduka Defendants to "knock the RBX brand out of the marketplace."  But, consistent with the holding in *Payless*, two competitors assisting each other to file a lawsuit against another competitor is not a valid basis to support a Section 1 claim or defense.  Moreover, even assuming that Defendants' allegations are true, Plaintiffs' alleged conduct is not actionably anticompetitive in that Plaintiffs are not, even as alleged by Defendants, seeking to exclude Defendants from any market, but instead are merely seeking to restrict Defendants' use of a particular (infringing) trademark.  Defendants remain free to sell their goods in any market using any other (non-infringing) mark.

In light of the above, Defendants' allegations related to a conspiracy between Plaintiffs and the Seduka Defendants are insufficient to establish a violation of Section 1.

### 2.    Defendants Have Not Alleged a Section 2 Violation.

Defendants' allegations in paragraphs 5(a) and 11(a) that Plaintiffs are attempting to create a "monopoly in violation of U.S. antitrust laws" fall generally within the purview of Section 2 of the Sherman Act.  *See Payless*, 546 F. Supp. 2d at 1079 (observing that allegations that adidas misused trademarks to acquire monopoly on stripe designs "more closely resemble a Section 2 attempted monopoly claim than a Section 1 conspiracy claim").  Section 2 bars the

12- MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
DEFENDANTS' FIFTH AND ELEVENTH AFFIRMATIVE
DEFENSES

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

monopolization of, or attempt to or conspiracy to monopolize, any part of the trade or commerce of the United States.  *See* 15 U.S.C. § 2.  To state a viable claim (or defense) under Section 2, Defendants must first define and prove the boundaries of the relevant market and then show that Plaintiffs enjoy some degree of market power—either monopoly power or something dangerously close to monopoly power—within the relevant market.  *See, e.g.*, *Spectrum Sports v. McQuillan*, 506 U.S. 447, 459-60 (1993); *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965).

At the outset, Defendants' ill-defined antitrust defenses fail under Section 2 because they do not define the relevant market that Plaintiffs allegedly monopolize (or are attempting to monopolize), nor do they allege Plaintiffs' market share in the relevant market (whatever that might be).  In light of Defendants' failure to meet these basic requirements, their Section 2 defense should be dismissed.  *See In the Matter of Int'l Tel. & Tel. Corp.*, 104 F.T.C. 280 (F.T.C. 1984); *see also Dial A Car, Inc. v. Transp., Inc.,* 82 F.3d 484, 487-88 (D.C. Cir. 1996) (affirming dismissal of complaint that failed to allege defendant's market share).

Moreover, Defendants have not alleged that Plaintiffs' actions excluded a competitor from any market, and the notion that Plaintiffs' mere enforcement of their trademark rights might somehow enable Plaintiffs to acquire a monopoly over some (unspecified) market makes no economic sense.  The reality is that a trademark, unlike a patent or copyright, provides an extremely poor means for excluding competition from the marketplace "[b]ecause a trademark merely enables the owner to bar others from use of the mark, as distinguished from competitive manufacture and sale of identical goods bearing another mark . . . ."  *Clorox*, 117 F.3d at 56 (quotation marks and citation omitted).[16]  The antitrust laws protect competition, not competitors.  *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488 (1977). As explained above, the mere act of preventing a competitor from using a particular trademark

---

[16] *See also* Herbert Hovenkamp, Mark D. Janis & Mark A. Lemley, *IP & Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law* § 3.5 at 3-52 (2005).

does not have any significant exclusionary effect, as the competitor may still offer competing products under a different mark.  *See, e.g., Clorox*, 117 F.3d at 56.[17]  Clearly, Plaintiffs' enforcement of their trademark rights has in no way stifled Defendants' or any third party's ability to sell apparel or footwear—only their ability to sell apparel or footwear bearing confusingly similar imitations of Plaintiffs' marks.

Accordingly, Defendants' attempt to assert affirmative defenses based on Plaintiffs' enforcement of their trademark rights also fails under Section 2.

### D.    Plaintiffs' Enforcement of Their Trademark Rights Does Not Constitute Unclean Hands.

As indicated above, the focus of Defendants' "unclean hands" defense is Defendants' allegation that Plaintiffs have misused their trademarks by filing this lawsuit against Defendants and bringing lawsuits against third parties.  As an initial matter, the defense of unclean hands is "generally disfavored."  *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 292 (C.D. Cal. 1992); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1254 (D. Az. 1981).  To prevail on an unclean hands defense, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims."  *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909-10 (9th Cir. 2003); *see also Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997).

The case law makes clear that Plaintiffs' filing of trademark litigation is *not* a basis for unclean hands.  *See, e.g.*, *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 13 F. Supp. 2d 430, 445 (S.D.N.Y. 1998) ("Courts and commentators alike have rejected the thesis [defendant] advances here—that alleged bad faith in bringing suit can itself be the basis for an unclean hands defense to a trademark infringement action."); *see generally* J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY"), § 31:51 (2010) ("[T]he allegedly

---

[17] *See also California Packing Corp. v. Sun-Maid Raisin Growers*, 165 F. Supp. 245, 250-52 (S.D. Cal. 1958); *VMG Enters., Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648, 658 (D. Puerto Rico 1992); *Seven-Up Co. v. No-Cal Corp.*, 183 U.S.P.Q. 165, 166 (E.D.N.Y. 1974).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

unfair filing of a trademark infringement lawsuit cannot itself constitute a basis for an unclean hands defense to that lawsuit.") (citing cases). Similarly, courts have held that allegations relating to the violation of antitrust laws cannot support an unclean hands defense in a trademark case. *See PODS Enters.*, 2011 WL 4948397, at *7 (holding the defendant's "allegations in support of its affirmative defense of unclean hands are intertwined with" its allegations of trademark misuse and violations of antitrust law in sending cease-and-desist letters and filing suit, and "because those activities [were] not specifically related to the trademark itself, [the defendant had] not properly asserted an unclean hands defense"); *Coca–Cola Co. v. Howard Johnson Co.,* 386 F. Supp. 330, 335 (N.D. Ga. 1974) ("Merely because a plaintiff has violated the antitrust laws . . . does not result in 'unclean hands' on plaintiff's part."). Thus, here, Defendants' allegations that Plaintiffs have acted with unclean hands by bringing suit and violating the antitrust laws are insufficient as a matter of law.

Moreover, allowing Defendants to proceed on their unclean hands defense defies common sense. It is well established that aggressive enforcement of trademark rights alone cannot form the basis of an unclean hands defense, and thus litigation against third parties is insufficient to support an unclean hands defense. Indeed, a trademark owner is obligated to enforce its rights aggressively or risk losing those rights. As noted in a leading trademark treatise, trademark law "not only encourages but requires one to be vigilant on pain of losing exclusive rights." McCARTHY, § 11:9.

If the conduct Defendants complain of—i.e., enforcement of trademark rights through litigation—constituted unclean hands, then *every* trademark owner would face an impossible choice between policing its mark and facing an unclean hands defense or allowing unpoliced use to weaken the mark. *See Esquire v. Esquire Slipper Mfg. Co.*, 243 F.2d 540, 545 (1st Cir. 1956). Plaintiffs affirmatively have chosen to enforce their marks, and contrary to Defendants' baseless

15- MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANTS' FIFTH AND ELEVENTH AFFIRMATIVE DEFENSES

21184-0112/132727939.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

assertions that Plaintiffs have brought frivolous lawsuits, Plaintiffs have succeeded in numerous

litigations related to their marks, as explained above.

Defendants' unclean hands defense therefore is insufficient for these additional reasons

as well.

### III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request judgment on the pleadings

as to Defendants' Fifth and Eleventh Affirmative Defenses.

DATED:  September 16, 2016

**PERKINS COIE LLP**

By: */s/ Stephen M. Feldman*
     Stephen M. Feldman, OSB No. 932674
     SFeldman@perkinscoie.com
     1120 N.W. Couch Street, Tenth Floor
     Portland, OR  97209-4128
     Telephone:  503.727.2000
     Facsimile:  503.727.2222

R. Charles Henn Jr. (admitted *pro hac vice*)
chenn@kilpatricktownsend.com
Charles H. Hooker III (admitted *pro hac vice*)
chooker@kilpatricktownsend.com
Nichole D. Chollet (admitted *pro hac vice*)
nchollet@kilpatricktownsend.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone:  404.815.6500
Facsimile:  404.815.6555

Attorneys for Plaintiffs

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222