**Kenneth R. Davis II**, OSB No. 971132
davisk@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2121
Facsimile: 503.778.2200

**Michelle Mancino Marsh**, *pro hac vice*
michelle.marsh@arentfox.com
**Allen G. Reiter**, *pro hac vice*
allen.reiter@arentfoxcom
**Eric Roman**, *pro hac vice*
eric.roman@arentfox.com
**Lindsay Korotkin**, *pro hac vice*
lindsay.korotkin@arentfox.com
**Alissa G. Friedman**, *pro hac vice*
Alissa.friedman@arentfox.com
**Phaik Lin Goh,** *pro hac vice*
janice.goh@arentfox.com
Arent Fox LLP
1675 Broadway
New York, NY  10019
Telephone: 212.484.3900
Facsimile: 212.484.3990

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, a Delaware corporation; **ADIDAS AG**, a foreign entity; **ADIDAS INTERNATIONAL MARKETING B.V.**, a foreign entity; **REEBOK INTERNATIONAL LTD.**, a Massachusetts corporation; and **REEBOK INTERNATIONAL LIMITED**, a foreign entity, | Case No. 3:15-CV-02113-SI |
| Plaintiffs, | **DEFENDANTS'** RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |

RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

**TRB ACQUISITIONS LLC,** a New York limited liability company, **CUTIE PIE BABY, INC.,** a New York corporation, **ELITE PERFORMANCE FOOTWEAR, LLC,** a New York limited liability company, **GINA GROUP LLC,** a New York limited liability company, **ONE STEP UP, LTD.,** a New York limited company, **SARAMAX APPAREL GROUP, INC.,** a New York corporation, **UNITED LEGWEAR COMPANY, LLC,** a New York limited liability company, **ACTIVE BASICS LLC,** a New York limited liability company, **USPA ACCESSORIES, LLC DBA CONCEPT ONE,** a New York limited liability company, **IMX, LLC,** a New York limited liability company, **KIDZ CONCEPTS, LLC,** a New York limited liability company, **Q4 DESIGNS LLC,** a New York limited liability company, **RBX.COM, LLC,** a New York limited liability company, **C.D.B. BRANDS LLC,** a New York limited liability company, and **L.A. KIDZ, INC**., a New York corporation,

Defendants.

RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...........................................................................1

II.    BACKGROUND ..............................................................................................2

III.   ARGUMENT ...................................................................................................5

    A.    Plaintiffs' Motion Is Defective Because They Failed To Comply With Local Rule 7-1. .......................................................................................................7

    B.    Plaintiffs' Motion For Judgment On The Pleadings Must Be Denied Because The Challenged Defenses Are Inherently Fact-Based. ........................................9

        1.    The Unclean Hands Defense Cannot Be Resolved At This Stage. .............9

        2.    The Trademark Misuse Defense Cannot Be Resolved At This Stage Either. ...............................................................................................11

    C.    The *Noerr-Pennington* Doctrine Does Not Apply Here. .......................................12

        1.    The *Noerr-Pennington* Doctrine Does Not Bar the Challenged Defenses Insofar As They Do Not Allege Antitrust Liability. ...................................13

        2.    The *Noerr-Pennington* Doctrine Does Not Bar The Challenged Defenses As They Are Not Based Merely On Plaintiffs' "Petitioning" Activities. ..............................................................................................16

        3.    The *Noerr-Pennington* Doctrine Does Not Bar The Challenged Defenses Because Plaintiffs' Litigation Campaign Is Abusive And A Sham. ..........17

        4.    *Payless* Does Not Control Here. ...........................................................22

    D.    Even If The Unclean Hands And Trademark Misuse Defenses Were Limited To Antitrust Violations, Defendants Have Adequately Alleged Such Violations.23

        1.    Plaintiffs Misstate the Applicable Pleading Standard. .............................23

        2.    Defendants Have Adequately Pleaded Plaintiffs' Violation Of The Sherman Act. ......................................................................................25

IV.    CONCLUSION................................................................................................27

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200
711124.0001/6781800.1

# TABLE OF AUTHORITIES

## Cases

*Abramson v. 1 Global Capital, LLC,*
  No. 15-cv-61373, 2015 WL 12564318 (S.D. Fla. Sept. 23, 2015) ........................................10

*adidas America, Inc. v. Herbalife Int'l, Inc.,*
  No. 09-cv-0661 (MO), 2010 WL 596584 (D. Or. Feb. 12, 2010) ...........................................7

*adidas America, Inc. v. Payless Shoe Source, Inc.,*
  546 F. Supp. 2d 1029 (D. Or. 2008) ..................................................................................22

*Ameristar Fence Prods. v. Phoenix Fence Co.,*
  No. 10-cv-0299 (PHX)(DGC), 2010 WL 2803907 (D. Ariz. July 15, 2010) ........................25

*In re Bose,*
  580 F.3d 1240 (Fed. Cir. 2009) .........................................................................................15

*In re Buspirone Patent Litig.,*
  185 F. Supp. 2d 363 (S.D.N.Y. 2002) ................................................................................21

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,*
  690 F.2d 1240 (9th Cir. 1982) ...........................................................................................18

*Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP,*
  572 F. App'x 491 (9th Cir. 2014) ..............................................................................9, 10, 15

*Comptek Research, Inc. v. Barrister Legal Support Services, Inc.,*
  No. 81-cv-0954, 1981 WL 48146 (D.C. Dec. 21, 1981) ......................................................26

*Cyber Acoustics, LLC v. Belkin Int'l, Inc.,*
  988 F. Supp. 2d 1236 (D. Or. 2013) (Simon, J.) .................................................................24

*Dahon N. Am., Inc. v. Hon,*
  No. 2:11-cv-05835 (ODW), 2012 WL 1413681 (C.D. Cal. Apr. 24, 2012) ...........................3

*De Walt, Inc. v. Magna Power Tool Corp.,*
  289 F.2d 656 (C.C.P.A. 1961) ...........................................................................................27

*Duffy-Mott Co., Inc. v. Cumberland Packing Co.,*
  424 F.2d 1095 (C.C.P.A. 1970) .........................................................................................14

*Electrical Information Publications, Inc. v. C-M Periodicals, Inc.,*
  No. 68-cv-0136, 1969 WL 9623 (N.D. Ill. Nov. 12, 1969) ............................................14, 27

PAGE ii -   TABLE OF CONTENTS AND AUTHORITIES

*Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc*,
   No. 11-cv-00317 (LED)(JOL), 2013 WL 12040726 (E.D. Tex. May 17, 2013) ...................19

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
   189 F.R.D. 269 (S.D.N.Y. 1999) ...................................................................................12, 14

*Evans v. Jackson County*,
   No. 14-cv-0145 (CL), 2015 WL 2170114 (D. Or. May 7, 2015) .............................................7

*Freeman v. Lasky, Haas & Cohler*,
   410 F.3d 1180 (9th Cir. 2005) ..............................................................................................13

*Garber v. Mohammadi*,
   No. 10-cv-7144 (DPP)(RMN), 2011 WL 2076341 (C.D. Cal. Jan. 19, 2011) ......................24

*Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*,
   887 F.2d 228 (9th Cir. 1989) ..................................................................................................9

*Gen-Probe Inc. v. Becton Dickinson & Co.*,
   No. 09-cv-2319 (BEN)(NLS), 2010 WL 4442731 (S.D. Cal. Nov. 1, 2010) ........................10

*Goldstein v. F.D.I.C.*,
   No. 11-cv-1604 (ELA), 2012 WL 1819284 (D. Md. May 16, 2012) .....................................10

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*,
   No. 11-cv-1309 (DOC)(ANX), 2013 WL 655314 (C.D. Cal. Feb. 21, 2013) ........................13

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ................................................................................................10

*Jet, Inc. v. Sewage Aeration Sys.*,
   165 F.3d 419 (6th Cir. 1999) ..................................................................................................3

*Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*,
   552 F.3d 1033 (9th Cir. 2009) ...............................................................................................21

*Kearney v. Foley & Lardner, LLP*,
   590 F.3d 638 (9th Cir. 2009) .................................................................................................17

*Kohler v. Flava Enters., Inc.*,
   779 F.3d 1016 (9th Cir. 2015) ...............................................................................................23

*Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC*,
   No. 10-cv-0087, 2012 WL 379930 (D. Neb. Feb. 6, 2012)...................................................10

PAGE iii -  TABLE OF CONTENTS AND AUTHORITIES

*McDonald v. Alayan*,
No. 15-cv-2426 (MO), 2016 WL 2841206 (D. Or. May 13, 2016)
(Mosman, C.J.) ....................................................................................................................24

*Meas v. CVS Pharmacy, Inc.*,
No. 11-cv-0823 (JM)(JMA), 2011 WL 2837432 (S.D. Cal. July 14, 2011)..........................24

*Meijer, Inc. v. Ranbaxy, Inc.*,
No. 15-cv-11828 (NMG), 2016 WL 4697331 (D. Mass. Sept. 7, 2016)................................21

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) .........................................................................................................13

*Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*,
251 F. Supp. 968 (W.D. Mo. 1966) .......................................................................................14

*Precision Instrument Mfg. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945).............................................................................................................10

*Republic Molding Corp. v. B.W. Photo Utilities*,
319 F.2d 347 (9th Cir. 1963) ................................................................................................14

*Ricks v. BMEzine.com LLC*,
727 F. Supp. 2d 936 (D. Nev. 2010)......................................................................................15

*Roe v. San Diego*,
289 F.R.D. 604 (S.D. Cal. 2013) ..........................................................................................24

*Schutte & Koerting, Inc. v. Swett & Crawford*,
298 F. App'x 613 (9th Cir. 2008) ..........................................................................................24

*Simmons v. Navajo Cnty.*,
609 F.3d 1011 (9th Cir. 2010) ..............................................................................................24

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2009) ...................................................................................12, 17, 21

*Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*,
No. 06-cv-9170, 2013 WL 620266 (Feb. 19, 2013) ...............................................................26

*Spectrum Sports v. McQuillan*,
506 U.S. 447 (1993)..............................................................................................................26

*Stokely-Van Camp. Inc. v. Coca-Cola Co.*,
646 F. Supp. 2d 510 (S.D.N.Y. 2009) ...................................................................................16

PAGE iv -  TABLE OF CONTENTS AND AUTHORITIES

*Strong v. City of Eugene*,
No. 14-cv-0709 (AA), 2015 WL 2401395 (D. Or. May 19, 2015) ...........................................8

*Thomson v. Federico*,
324 F. Supp. 2d 1152 (D. Or. 2004) ...................................................................................7, 8

*U.S. Futures Exchange, LLC v. Bd. of Trade of City of Chicago*,
No. 04-cv-6756, 2005 WL 2035652 (N.D. Ill. Aug. 22, 2005) ...........................................16

*USS-POSCO Industries v. Contra Costa County Bldg. & Const. Trades Council,
AFL-CIO*,
31 F.3d 800 (9th Cir. 1994) ...........................................................................................19, 20

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
382 U.S. 172 (1965)........................................................................................................21, 27

*Weddle v. Bayer AG Corp.*,
No. 11-cv-0817 (JLS)(NLS), 2012 WL 1019824 (S.D. Cal. Mar. 26, 2012)........................24

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
No. 10-cv-0677 (JLS)(AJB), 2010 WL 4392547 (S.D. Cal. Oct. 28, 2010) ..........................19

*Winterland Concessions Co. v. Trela*,
735 F.2d 257 (7th Cir. 1984) ...............................................................................................26

*Worden v. California Fig Syrup Co.*,
187 U.S. 516 (1903)...............................................................................................................15

*Worthington v. Anderson*,
386 F. 3d 1314 (10th Cir. 2004) ............................................................................................13

*Wyshak v. City Nat'l Bank*,
607 F.2d 824 (9th Cir. 1979) .................................................................................................23

*Zurco, Inc. v. Sloan Valve Co.*,
785 F. Supp. 2d 476 (W.D. Pa. 2011).....................................................................................10

## Statutes

15 U.S.C. § 2.............................................................................................................................25

15 U.S.C. § 1125(c)(6).................................................................................................................3

PAGE v -    TABLE OF CONTENTS AND AUTHORITIES

### Other Authorities

5 Charles A. Wright Et Al., Fed. Prac. & Proc. Civ. § 1274 (3d ed. 2016)...................................23

Dep't Of Commerce, U.S. Patent & Trademark Office, Report To Congress:
    Trademark Litigation Tactics And Federal Government Services To Protect
    Trademarks And Prevent Counterfeiting (Apr. 27, 2011) ......................................................11

Federal Rule of Civil Procedure 8 ..............................................................................................10

Federal Rule of Civil Procedure 12(c) ..........................................................................................8

GRAEME B. DINWOODIE & MARK D. JANIS, TRADEMARKS AND
    UNFAIR COMPETITION LAW& POLICY (2d ed. 2007) ...................................................15

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
    (4th ed. 2016)........................................................................................................3, 9, 13, 14

Jason Vogel & Jeremy A. Schachter, *How Ethics Rules Can Be Used To Address*
    *Trademark Bullying*,
    103 TMR 503 (2013) ............................................................................................................11

Local Rule 7-1...................................................................................................................5, 7, 8, 9

Marc Lieberstein, *Expert Q&A on Trademark Bullying,* PRACTICAL LAW
    COMPANY, March 2013 ........................................................................................................11

Roxana Sullivan & Luke Curran, *Trademark Bullying: Defending Your Brand or*
    *Vexatious Business Tactics?* IPWATCHDOG, July 16, 2015...................................................11

William E. Ridgway, *Revitalizing the Doctrine of Trademark Misuse*,
    21 BERKELEY TECH. L.J. 1547, 1553 (2006)..........................................................................11

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

711124.0001/6781800.1

## I.  PRELIMINARY STATEMENT

Eleven days before producing some 12,000 documents, Plaintiffs moved for judgment on the pleadings relating to two fact-intensive trademark affirmative defenses: unclean hands and trademark misuse (colloquially known as the trademark bullying defense).   This motion is premature. Defendants have not yet had the opportunity to take any of Plaintiffs' depositions or review all of the documents they recently have produced. Accordingly, this motion should be denied on these grounds alone.

Even putting aside the timing, Plaintiffs' motion also fails under the strain already developed facts and supportive case law that allows a trademark infringement defendant time to develop facts to support unclean hands and trademark misuse defenses at trial. Here, Defendants have asserted conduct on the part of the Plaintiffs that gives rise to valid unclean hands and trademark misuse affirmative defenses, including without limitation, (i) Plaintiffs' assertion of cancelled or fraudulently maintained trademark registrations; (ii) the Plaintiffs' use of their trademark registrations to repeatedly threaten and initiate baseless litigation; and (iii) conspiring with a competitor (Seduka) and one of Plaintiffs' customers (Modell's Sporting Goods) to conceive of a plan to use Plaintiffs' trademark registrations to financially harm the RBX brand and the Defendants (as a possible favor to Plaintiffs' important customer). To the last point, Plaintiffs try to pass this case off as business as usual, and thus, neither discuss the relationship they forged with Seduka, nor deny they brought this suit only after the direct request of Seduka and Modell's Sporting Goods. The facts as plead support a finding of unclean hands and trademark misuse, and certainly are sufficient to support Defendants' pursuit and presentation of these affirmative defenses beyond the pleading stage. This Motion must be denied.

PAGE 1 -   RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
                  PLEADINGS

## II.  BACKGROUND

Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 109, the "Motion") is based on inaccurate and oversimplified recitations of two of Defendants' factually complex, multi-factor affirmative defenses. Given the factual nature of the defenses, the Motion is premature prior to the completion of fact discovery.   In their Answer to Plaintiffs' First Amended Complaint (ECF No. 81), Defendants asserted numerous affirmative defenses, including the fifth affirmative defense of unclean hands and the eleventh affirmative defense of trademark ("Unclean Hands Defense" and "Trademark Misuse Defense").   Defendants' Unclean Hands Defense is based on multiple grounds including, without limitation: (1) Plaintiffs' unlawful competition and exploitation of intellectual property; (2) Plaintiffs' failure to perform a reasonable pre-suit investigation[1]; (3) Plaintiffs' assertion of cancelled or otherwise unenforceable trademark registrations[2]; (4) Plaintiffs' material misrepresentation to the Court,

---

[1] A reasonable pre-suit investigation would have uncovered, among other things, facts rendering this litigation objectively unreasonable, including: (1) the decades-long history of the RBX trademarks (TRB has priority in the RBX trademarks dating back to at least as early as 2002 through its predecessors-in-interest, the Rugged Bear Company ("Rugged Bear") and SmartWool.  For some goods, TRB's priority first use date for the RBX trademarks may in fact precede Reebok's priority first use date in commerce for the asserted-but-abandoned RBK Mark); (2) Plaintiffs' long-standing co-existence with and history of inaction against the RBX trademarks; (3) Plaintiffs' sales of adidas and Reebok products through Rugged Bear; (4) Plaintiffs' own consent to and use of the mark "RBZ" in the athletic apparel fields, including by adidas's subsidiary Taylor Made  Golf Company, Inc. ("Taylor Made") (*i.e.*, the mark RBZ and a logo consisting of three stripes co-exist with Plaintiffs' alleged rights); and (5) that some of Plaintiffs' asserted trademarks were abandoned and cancelled or dramatically narrowed.

[2] One new fact that has come to light is Plaintiffs' continued false representation to the Court that its RBK trademark registrations are "incontestable." (Declaration of Michelle Marsh ("Marsh Decl."), ¶ 24, Ex. 12, p. 4, filed concurrently herewith ("Reebok owns two valid and incontestable trademark registrations covering the RBK mark (Reg. Nos. 3,234,100 & 3,074,802).").)  The Court recited the Plaintiffs' false representation in a Telephonic Motion Hearing with the Parties and the Court. (Marsh Decl., ¶ 25, Ex. 13 (ECF. No. 96, p. 31:21-23) ("Plaintiff responds that it has two valid incontestable trademark registrations governing or covering the RBK mark, and it continues to use that mark.").)  The Defendants clarified the record in their Counterclaims filed on August 22, 2016. (ECF No. 81, ¶¶ 213-214, 217, 231-232,

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

711124.0001/6781800.1

including through failure to alert the Court to principal defendant TRB Acquisitions LLC's ("TRB") six federal trademark registrations for the RBX Logo[3]; and (5) Plaintiffs' conspiring and colluding with third party apparel and footwear retailers and apparel and footwear brands to remove the Defendants from the marketplace. (*See* Ans. 40-41, ECF No. 81.)  Defendants' Trademark Misuse Defense is based on similar grounds, except that defense alleges that Plaintiffs have engaged in "bullying" and other unlawful or unfair goals and acts using their trademarks.  (*See id.* at 43-44).  Although the various bases for these affirmative defenses include Plaintiffs' anticompetitive activities, Plaintiffs' assertion that "these two affirmative defenses are actually identical 'antitrust' defenses based on Plaintiffs' alleged anticompetitive conduct in enforcing their trademark rights" is facially wrong.  (Pl.'s Mot. for J. on the Pleadings ("Mot.") 2-3, ECF No. 109.)

Further, Defendants' affirmative defenses are still developing, as discovery is still open and new facts continue to come to light in support of these defenses.  For example, Defendants have just recently learned through Plaintiffs' discovery production that not only does adidas' subsidiary Taylor Made use the mark RBZ on athletic apparel and gear, but the Reebok

---

243-245). However, in the Answer to Defendants' Counterclaims, Plaintiffs refused to admit that the '100 Registration and the '802 Registration are not incontestable (ECF No. 106). The records of the USPTO verify that the '100 Registration and the '802 Registration are not incontestable.

[3] Plaintiffs now admit to having had knowledge of these registrations as early as August 14, 2012, *see, e.g.*, Pl.'s Ans. to Defs.' Countercls. 6-7 ¶¶ 51-72, ECF No. 99; Ans. 60-63, ECF No. 81, but elected to not oppose or otherwise challenge the registrations.  Importantly, TRB's ownership of six federal trademark registrations for the RBX Logo renders Plaintiffs' state law dilution claims invalid as a matter of law.  *See* 15 U.S.C. § 1125(c)(6); *Dahon N. Am., Inc. v. Hon*, No. 2:11-cv-05835 (ODW), 2012 WL 1413681, at *8 (C.D. Cal. Apr. 24, 2012) (holding that defendant's federal registration of its marks bar trademark dilution claim against defendant for those registered marks); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 424 (6th Cir. 1999) ("[P]ossession of a valid federal trademark registration is a complete bar to a dilution claim 'under the common law or a statute of any State.'") (internal citations omitted); 4 J. Thomas McCarthy, McCarthy on Trademark and Unfair Competition § 24:80 (4th ed. 2016).

PAGE 3 -    RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
              PLEADINGS

Plaintiffs, as well as at least one of the adidas Plaintiffs (adidas International Marketing B.V.), also use the mark RBZ on athletic apparel and gear.  (*See* Marsh Decl., ¶¶ 8-12.) Defendants are also collecting information about Plaintiffs' collusion and Joint Defense Agreement with Seduka, LLC, Hashem Group LLC, Joseph Dahan (together, "Seduka"), and Modell's Sporting Goods, Inc. ("Modell's") (collectively, the "Seduka Defendants"), and/or their counsel Robert Garson or the attorneys of Garson, Segal, Steinmetz, Fladgate LLP.  (*See* Marsh Decl., ¶¶ 2-7, Ex. 1-5.) For example, Defendants recently learned that one of Plaintiffs' important customers, Modell's, contacted Plaintiffs in connection with TRB and the RBX Logo,[4] and that Plaintiffs told the Seduka Defendants that their use of the letters RPX, including on athletic apparel with two stripes, was not a problem. To date, Plaintiffs have not produced a copy of their Joint Defense Agreement with the Seduka Defendants in discovery in this Action.

In addition, through discovery in this litigation (including the review of numerous settlement and co-existence agreements just produced by Plaintiffs on September 27, 2016), Defendants are still learning of the scope and extent of Plaintiffs' campaign to rid the apparel and footwear market of merely ornamental, decorative, non-source identifying, aesthetically functional, functional, and/or generic uses of two and four striped designs on trademark branded footwear or apparel in the marketplace.[5]

Plaintiffs' Motion is also flawed because the parties have not met and conferred on the issues contained therein, as required by District of Oregon Local Rule 7-1. On Friday,

---

[4] *See* Declaration of Mark King and Exhibit A, both attached to two emails sent by Plaintiffs' Counsel Charles Hooker to the Court on September 20, 2016.

[5] In Plaintiffs' September 27, 2016 production, Defendants were finally able to review an important agreement between the adidas Plaintiffs and a third party that confirmed Defendants' belief that adidas has co-existed with third parties using four and five parallel or nearly parallel stripes on clothing and in logos.

PAGE 4 -    RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
            PLEADINGS

September 16, 2016, Plaintiffs' counsel contacted counsel for Defendants to provide notice of Plaintiffs' intention to file their Motion by close of business that day. (Marsh Decl., ¶ 13.) On this brief call, Plaintiffs' counsel requested Defendants' same-day agreement to withdraw these two affirmative defenses. (Marsh Decl, ¶ 13.) Additionally, Plaintiffs' counsel did not reveal that they intended to make a new document production of 12,000 documents on September 27, 2016. (Marsh Decl., ¶¶ 13, 17.) Defendants' counsel represents all fifteen named Defendants in this case, and before consenting to withdraw a defense, counsel would naturally have to notify each Defendant and obtain their approval to strip their case of two substantive, multipart affirmative defenses. Defendants' counsel offered to consider the request, and later that day responded by email to explain that:

> I am not entirely sure I understand the legal bases for striking these equitable defenses and you have failed to provide anything other than very cursory reasoning relating to wanting to limit or avoid discovery without any supporting caselaw. We would be happy to review any caselaw you want to present to us but otherwise, we cannot consent.

(Marsh Decl., ¶ 14, Ex. 10.) Rather than engage in any meaningful conversation as part of the required meet and confer process, Plaintiffs' counsel elected to simply file this motion that same day. (Marsh Decl., ¶ 17.)

### III.  ARGUMENT

Plaintiffs' Motion is procedurally improper and fatally flawed at every turn.

*First*, as noted above, Plaintiffs failed to meet and confer with Defendants as required by Local Rule 7-1(a). Instead, Plaintiffs' counsel simply called Defendants' counsel to declare that Plaintiffs would file this Motion that day unless Defendants' counsel, without any meaningful opportunity to consider Plaintiffs' arguments, confer with counsel, or confer with Defendants

PAGE 5 -   RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
           PLEADINGS

themselves, immediately agreed to withdraw the challenged defenses. (*See* Marsh Decl., ¶¶ 13-16.)

*Second*, the challenged defenses of unclean hands and trademark misuse, which are hornbook defenses to a trademark infringement claim, are inherently fact-specific. Accordingly, Plaintiffs' Motion for judgment on the pleadings—brought in the midst of discovery and before Plaintiffs made an additional production of 12,000 documents—is premature at best. (*See* Marsh Decl., ¶ 17.)

*Third*, Plaintiffs disingenuously mischaracterize the challenged defenses as limited to allegations that Plaintiffs violated the antitrust laws through litigation, as to which Plaintiffs claim immunity under the *Noerr-Pennington* doctrine. However, the challenged defenses have multiple additional bases that are not subject to that doctrine that Plaintiffs' Motion does not even address.

*Fourth*, to the extent the challenged defenses are based on Plaintiffs' antitrust violations, they are not limited to Plaintiffs' litigation conduct, and the *Noerr-Pennington* doctrine is thus wholly inapplicable.

*Fifth*, Plaintiffs are not entitled to *Noerr-Pennington* immunity in any event because their deceptive and harassing practices fall within the "sham" exception to that doctrine. At a minimum, application of the *Noerr-Pennington* doctrine requires detailed findings of fact and is not appropriately resolved on the pleadings alone.

*Sixth*, Plaintiffs' fallback argument that Defendants have not adequately pleaded Plaintiffs' antitrust violations also fails. Defendants' Answer supplies Plaintiffs the "fair notice" they are entitled to under the applicable pleading standards.

For all these reasons, Plaintiffs' Motion should be denied.

PAGE 6 -    RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
            PLEADINGS

**A.      Plaintiffs' Motion Is Defective Because They Failed To Comply With Local Rule 7-1.**

Local Rule 7-1(a) requires that before filing a potentially dispositive motion, a party must make "a good faith effort through personal or telephone conferences to resolve the dispute." LR 7-1(a)(1).  The rule specifically mandates "discuss[ion] [of] each claim, defense, or issue that is the subject of the proposed motion" prior to its filing.  *Id.* (a)(2).  "The obvious purpose of Local Rule 7-1 is to encourage parties to resolve disputes when possible, preserving judicial resources for those matters that require the court's intervention."  *Thomson v. Federico*, 324 F. Supp. 2d 1152, 1171-72 (D. Or. 2004).  Accordingly, it is important that parties follow both the letter of the rule and "the spirit of its substantive requirements."  *Id.*

When a moving party does not comply with Local Rule 7-1, courts may, and often do, deny the motion.  *See* LR 7-1(a)(3) ("The Court may deny any motion that fails to meet this certification requirement."); *Evans v. Jackson County*, No. 14-cv-0145 (CL), 2015 WL 2170114, at *3 (D. Or. May 7, 2015) (denying a motion for failing to meet and confer; noting that Local Rule 7-1 "makes no exception for parties who have struggled to work together in the past"); *Thomson*, 324 F. Supp. 2d at 1171-72 (denying motion and finding that LR 7-1 was not met; "Plaintiff fails to explain, and the court fails to see, how giving less than one day's notice of a summary judgment motion . . . constitute[s] a good faith attempt to resolve the dispute."). Plaintiffs routinely litigate cases in this District and are well aware of the Local Rules, including Rule 7-1.  In fact, adidas has itself, through the same counsel as here, previously highlighted a party's failure to meet and confer under Local Rule 7-1 in successfully opposing a motion to strike in another case.  *See adidas America, Inc. v. Herbalife Int'l, Inc.*, No. 09-cv-0661 (MO), 2010 WL 596584, at *3 n.2 (D. Or. Feb. 12, 2010) (denying motion to strike in part because

PAGE 7 -    RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

"[b]ased on Adidas's evidence, . . . Herbalife failed to meet and confer, as required by Local Rule 7-1").

Despite their familiarity with Local Rule 7-1, Plaintiffs failed to appropriately meet and confer with Defendants' counsel on the issues raised in this Motion prior to filing it. Plaintiffs' counsel placed only one brief and cursory telephone call to Defendants' counsel, demanding same-day consent for all fifteen Defendants to withdraw two affirmative defenses. Defendants' counsel requested more information on Plaintiffs' arguments, bases, or case law in support of their *Noerr-Pennington* theory. Plaintiffs provided none, and instead proceeded to file their Motion that same day. (Marsh Decl., ¶ ¶ 13-16.) This hardly constituted "a good faith attempt to resolve the dispute." *Thomson*, 324 F. Supp. 2d at 1171-72.

Plaintiffs' uncompromising demand for same-day consideration and consent to withdraw two affirmative defenses asserted by the fifteen Defendants violated both the letter and the spirit of Local Rule 7-1. Plaintiffs were not facing a filing deadline; Federal Rule of Civil Procedure 12(c) motions may be filed any time "[a]fter the pleadings are closed—but early enough not to delay trial." A decision to consent to withdraw two substantive, highly detailed, multi-part affirmative defenses could not be made the same day given the issues posed and that Defendants' counsel was not adequately on notice of "each claim, defense, or issue that is the subject of the proposed motion" to properly counsel its clients. LR 7-1(a). Plaintiffs' Motion should be denied on this basis alone. *See Strong v. City of Eugene*, No. 14-cv-0709 (AA), 2015 WL 2401395, at *1-2 (D. Or. May 19, 2015) (noting the court may, and "[o]rdinarily . . . would," deny a motion that failed to "comply with either the spirit or the letter of the Local Rules").

PAGE 8 -    RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
            PLEADINGS

**B.    Plaintiffs' Motion For Judgment On The Pleadings Must Be Denied Because The Challenged Defenses Are Inherently Fact-Based.**

Even if Plaintiffs had complied with Local Rule 7-1, the Motion should be denied because it is premature.  "[A] plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.  Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings."  *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).  The affirmative defenses challenged here—unclean hands and trademark misuse—are standard defenses in trademark infringement action, and require a close examination of the facts of the case.  Plaintiffs' Motion would therefore be more appropriately brought, if at all, as a motion for summary judgment once discovery in this case is complete.  Indeed, *after* filing this Motion, Plaintiffs produced 12,000 documents that may contain key evidence supporting the unclean hands and/or trademark misuse defense. (Marsh Decl., ¶ 17.)  Those defenses may also be more fully developed at depositions, which have not yet begun.  The Motion should be denied on this ground alone.

**1.    The Unclean Hands Defense Cannot Be Resolved At This Stage.**

It is well established that "[u]nclean hands is a defense to trademark infringement." *Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*, 572 F. App'x 491, 493-94 (9th Cir. 2014) (internal citations omitted); *see* 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:44 (4th ed. 2016) ("McCarthy") ("There is no doubt that in an appropriate case, unclean hands can constitute a bar to some or all of the relief sought for trademark infringement or unfair competition.").  The unclean hands defense "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which

PAGE 9 -    RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
            PLEADINGS

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

he seeks relief." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (citations omitted). This historic doctrine continues to apply with force in modern cases because "he who comes into equity must come with clean hands." *Precision Instrument Mfg. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Under Federal Rule of Civil Procedure 8, a party need only affirmatively and clearly state its intent to pursue an unclean hands defense. *See Gen-Probe Inc. v. Becton Dickinson & Co.*, No. 09-cv-2319 (BEN)(NLS), 2010 WL 4442731, at *1 (S.D. Cal. Nov. 1, 2010) ("Because [defendant] has identified and affirmatively stated that it intends to assert an unclean hands defense, [defendant] has met its pleading obligation under Rule 8I.")

Crucially, "[a]pplication of the unclean hands doctrine raises primarily a question of fact." *Cochran Firm*, 572 F. App'x at 494 (citations omitted). Where, as here, questions of fact remain open, premature motions to dispose of the claims must be denied. *See, e.g.*, *Abramson v. 1 Global Capital, LLC*, No. 15-cv-61373, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) ("[U]nclean hands is an affirmative defense that Defendant may raise in its answer which requires resolution of factual issues not ripe for discussion at the dismissal stage."); *Goldstein v. F.D.I.C.*, No. 11-cv-1604 (ELA), 2012 WL 1819284, at *18 (D. Md. May 16, 2012) ("Because the defenses [of unclean hands and *in pari delicto*] are highly fact-specific, I will not resolve them at the pleading stage."); *Lovely Skin, Inc. v. Ishtar Skin Care Products, LLC*, No. 10-cv-0087, 2012 WL 379930, at *3 (D. Neb. Feb. 6, 2012) (denying summary judgment on issue of unclean hands because the purchase of keywords that allegedly mimicked the defendant's mark raised genuine issues of fact); *Zurco, Inc. v. Sloan Valve Co.*, 785 F. Supp. 2d 476, 501-02 (W.D. Pa. 2011) (denying summary judgment on affirmative defense of unclean hands because there were contested issues of material fact to be decided).

PAGE 10 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
               PLEADINGS

## 2.    The Trademark Misuse Defense Cannot Be Resolved At This Stage Either.

Trademark misuse, which includes "trademark bullying" similar to patent trolling and copyright bullying, is a somewhat less understood defense, but no less viable. Indeed, the misuse doctrine first arose in trademark law long before being imported to other forms of intellectual property. *See* William E. Ridgway, *Revitalizing the Doctrine of Trademark Misuse*, 21 BERKELEY TECH. L.J. 1547, 1553 (2006). Misuse comes in at least two flavors: "an antitrust approach, which hones in on anticompetitive conduct, and a public policy approach, which scrutinizes behavior that is 'violative of the public policy embodied in the grant' of the intellectual property right." *Id.* at 1564. Although it is incumbent upon trademark owners to diligently protect their marks, overly aggressive enforcement campaigns that cross the line into "bullying" can deter market entry, "impos[ing] costs on society in the form of increased prices for products and services by reducing the number of legitimate competitors." Roxana Sullivan & Luke Curran, *Trademark Bullying:  Defending Your Brand or Vexatious Business Tactics?*, IPWATCHDOG, July 16, 2015.[6]

---

[6]         http://www.ipwatchdog.com/2015/07/16/trademark-bullying-defending-your-brand-or-vexatious-business-tactics/id=59155/. *See also generally* Dep't Of Commerce, U.S. Patent & Trademark Office, Report To Congress:  Trademark Litigation Tactics And Federal Government Services To Protect Trademarks And Prevent Counterfeiting (Apr. 27, 2011), *available at* https://www.uspto.gov/ip/TMLitigationReport_final_2011April27.pdf. Plaintiffs' own counsel has acknowledged the problems presented by trademark bullying and has suggested that Rule 11 sanction is an appropriate remedy to prevent this abuse.  *See, e.g.*, Marc Lieberstein , *Expert Q&A on Trademark Bullying* [with Marc Lieberstein of Kilpatrick Townsend & Stockton LLP], PRACTICAL LAW COMPANY, March 2013, http://kilpatricktownsend.com/~/media/Files/articles/2013/Replacement%20Expert%20QA%20on%20Trademark%20Bullying_4-524-3478.ashx; Jason Vogel [partner, Kilpatrick Townsend] & Jeremy A. Schachter [associate, Kilpatrick Townsend], *How Ethics Rules Can Be Used To Address Trademark Bullying*, 103 TMR 503 (2013).

PAGE 11 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
                PLEADINGS

Like unclean hands, a misuse defense requires a fully developed record and is therefore "determinable only after discovery and a hearing on the merits. To do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts." *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 273 (S.D.N.Y. 1999) (citations and internal quotations omitted). As explained above, discovery is still ongoing: Plaintiffs have just recently produced an additional 12,000 documents, and depositions have not yet begun. For all these reasons, Plaintiffs' Motion should therefore be denied.

**C.    The *Noerr-Pennington* Doctrine Does Not Apply Here.**

Plaintiffs' attempt to invoke the *Noerr-Pennington* doctrine relies on a self-servingly narrow view of the challenged defenses, and should be rejected. The *Noerr-Pennington* doctrine is a rule of statutory construction that protects the right to petition the government for redress, for example by filing suit in federal court, by immunizing such activities from statutory liability. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929-31 (9th Cir. 2009). Plaintiffs claim that Defendants' Unclean Hands and Trademark Misuse Defenses present only an argument that Plaintiffs' hyper-aggressive enforcement campaign violates the federal antitrust laws, and that the *Noerr-Pennington* doctrine forecloses that argument. Not so. Defendants' Unclean Hands and Trademark Misuse Defenses have additional, independently sufficient bases that are not subject to the *Noerr-Pennington* doctrine either because they do not allege antitrust violations, or because they allege antitrust violations based on Plaintiffs' non-petitioning activities. But even as to Plaintiffs' litigation activities, the "sham" exception to the *Noerr-Pennington* doctrine applies to strip Plaintiffs of immunity.

PAGE 12 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
              PLEADINGS

1.    The *Noerr-Pennington* Doctrine Does Not Bar the Challenged Defenses
Insofar As They Do Not Allege Antitrust Liability.

The *Noerr-Pennington* doctrine exists to avoid "chilling" the right to petition by immunizing a party from liability simply for making a protected petition. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014) ("We crafted the *Noerr-Pennington* doctrine . . . to avoid chilling the exercise of the First Amendment right to petition the government for the redress of grievances."). Accordingly, where there is no risk of chilling the right to petition, the doctrine does not apply. *Cf. id.* (holding that shifting attorney's fees in exceptional patent cases does not threaten a chill sufficient to invoke *Noerr-Pennington*); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) ("*Noerr-Pennington* . . . extends only so far as necessary to steer the Sherman Act clear of violating the First Amendment."). The Unclean Hands and Trademark Misuse Defenses challenged here are strictly affirmative defenses and cannot alone form the basis for an affirmative claim for recovery. *See, e.g.*, *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. 11-cv-1309 (DOC)(ANX), 2013 WL 655314, at *11-12 (C.D. Cal. Feb. 21, 2013) (collecting authorities). Therefore, the challenged defenses do not provide a basis for *Noerr-Pennington* immunity.

"Unclean hands" applies in trademark cases when the allegations underlying the defense relate to "getting or using the alleged trademark rights." 6 McCarthy § 31:51; *see id.* § 31:48. Typically, related conduct arises when either the plaintiff has acted inequitably either "toward the public, such as deception in or misuse of the trademark itself, resulting in harm to the public such that it would be wrong for a court of equity to reward the plaintiff's conduct by granting relief" or "toward the defendant in relation to the trademark." *Worthington v. Anderson*, 386 F.

PAGE 13 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
PLEADINGS

3d 1314, 1320-21 (10th Cir. 2004) (affirming application of unclean hands defense where co-user of trademark obtained full ownership of it and hampered second party's ability to finance rebranding, then sued for infringement); *see Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349-50 (9th Cir. 1963) ("What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant. . . . The relative extent of each party's wrong upon the other and upon the public should be taken into account, and an equitable balance struck.").

An unclean hands defense may be tied to antitrust activities, *see, e.g.*, *Estee Lauder*, 189 F.R.D. at 273 (refusing to strike affirmative defense based on plaintiffs' "misuse [of] their trademarks for anticompetitive purposes"); *Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*, 251 F. Supp. 968, 974 (W.D. Mo. 1966) ("[U]nder the facts as stipulated . . . , a violation of the antitrust laws is established and . . . such violation is an affirmative defense to the suits for trademark infringement . . . ."), or it may be based on entirely separate theories. For example, courts find that a plaintiff's fraud on the U.S. Patent and Trademark Office (the "USPTO") or on the court in connection with asserted trademarks may support an unclean hands defense. *See, e.g.*, 6 McCarthy § 31:58; *Duffy-Mott Co., Inc. v. Cumberland Packing Co.*, 424 F.2d 1095, 1099 (C.C.P.A. 1970) (applying unclean hands to bar reliance on a trademark registration when opposer made knowing misstatements in declarations to the USPTO to acquire incontestable status to its trademark registration); *Electrical Information Publications, Inc. v. C-M Periodicals, Inc.*, No. 68-cv-0136, 1969 WL 9623, at *11 (N.D. Ill. Nov. 12, 1969) (dismissing infringement claim because of the plaintiff's unclean hands in falsely or fraudulently obtaining and

PAGE 14 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
             PLEADINGS

maintaining three trademark registrations, and using them to "attempt to obtain a monopoly . . . in violation of the antitrust laws," despite plaintiff's cancellation of two of the registrations).

Bad faith actions or deception of the public by the asserting party is also reason to apply an unclean hands defense. *Cochran Firm*, 572 F. App'x at 493-94 (remanding issuance of injunction for consideration of unclean hands defense and whether asserted trademark was misused to deceive consumers); *Ricks v. BMEzine.com LLC*, 727 F. Supp. 2d 936, 965-66 (D. Nev. 2010) (finding in a reverse domain hijacking case that unclean hands applies because the complaining party registered the domain in bad faith); *see also Worden v. California Fig Syrup Co.*, 187 U.S. 516, 535 (1903) ("[I]f it appears that the trademark for which he seeks protection is itself a misrepresentation to the public and has acquired a value with the public by fraudulent misrepresentation in advertisements, all relief will be denied to him").

Similarly, a trademark misuse defense may be based on antitrust violations, or it may instead be based on a party's behavior that is inconsistent with the public policy motivating the protection of a trademark. *See supra* Section II(B); *see also* GRAEME B. DINWOODIE & MARK D. JANIS, TRADEMARKS AND UNFAIR COMPETITION LAW & POLICY 896-97 (2d ed. 2007) (explaining that a trademark misuse defense need not allege antitrust harm or be premised on monopoly or market power concerns).

Here, Defendants allege that Plaintiffs committed fraud on the USPTO by fraudulently obtaining or maintaining the now-asserted RBK trademark registrations. *See, e.g.*, (ECF No. 81, Fourth and Sixth Counterclaims); *In re Bose*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (noting that a trademark registration may be cancelled when the "registration was obtained fraudulently"). The record also shows that Plaintiffs misrepresented to the Court that they owned trademark rights in cancelled trademark registrations, asserted an expired registration, and deceptively and falsely

PAGE 15 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
           PLEADINGS

alleged that their remaining registrations for the RBK mark are incontestable. *See supra* Section II, p. 4 & p. 4 n.3. Plaintiffs also failed to alert the Court to TRB's own registrations for the allegedly infringing RBX mark, even though Plaintiffs have now admitted they knew of those registrations. *Id.* Separate and apart from any antitrust allegations, these assertions more than adequately support Defendants' Unclean Hands and Trademark Misuse Defenses.

Of particular note here, unclean hands may also apply when a party complains of conduct that is the same or similar to conduct in which it has engaged. *See Stokely-Van Camp. Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 533-34 (S.D.N.Y. 2009) (holding that unclean hands barred relief where the plaintiff engaged in the same conduct it alleged constituted false advertising by the defendant). Here, Plaintiffs' complains about the Defendants' use of a trademark comprising the letters "RB" and a third letter. (ECF. No. 60, ¶¶ 7, 9). Yet the adidas and Reebok Plaintiffs both employ their sister company's mark "RBZ" on athletic apparel. (Marsh Decl., ¶¶ 8-12, Exs. 6-9.) While these positions seem impossible to reconcile, the facts are still being more thoroughly investigated in ongoing discovery and should further support Defendants' Unclean Hands Defense independently of any antitrust violations.

### 2.    The *Noerr-Pennington* Doctrine Does Not Bar The Challenged Defenses As They Are Not Based Merely On Plaintiffs' "Petitioning" Activities.

Because, as explained above, the *Noerr-Pennington* doctrine does not apply where there is no risk of chilling the right to petition, it does not bar even an antitrust-related defense or counterclaim when the complained-of anti-competitive activity is something *other* than litigation or other forms of petitioning the government. *See, e.g.*, *U.S. Futures Exchange, LLC v. Bd. of Trade of City of Chicago*, No. 04-cv-6756, 2005 WL 2035652, at *2 (N.D. Ill. Aug. 22, 2005)

PAGE 16 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

("[T]he acts forming the basis of this claim . . . were not directed at petitioning a government body and are, therefore, not subject to *Noerr-Pennington*.").

Here, as outlined above, Defendants have alleged that Plaintiffs have engaged in conduct other than the mere filing of the complaint in this action that form the bases for the affirmative defenses, including without limitation, fraudulently maintaining trademarks and conspiring with a competitor and one of Plaintiffs' important customers to conceive of a plan to financially harm Defendants.

These allegations support the antitrust violation basis for Defendants' Unclean Hands and Trademark Misuse Defenses, but do not involve any "petitioning" of the government by Plaintiffs and therefore are not barred by the *Noerr-Pennington* doctrine.

### 3. The *Noerr-Pennington* Doctrine Does Not Bar The Challenged Defenses Because Plaintiffs' Litigation Campaign Is Abusive And A Sham.

Defendants' Unclean Hands and Trademark Misuse Defenses are still viable even as to Plaintiffs' over-aggressive litigation campaign because the *Noerr-Pennington* doctrine does not protect "sham" claims, such as those brought by trademark bullies. The sham exception applies in at least three different scenarios:

> [F]irst, where the lawsuit is objectively baseless and the [litigant's] motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*Sosa*, 437 F.3d at 938 (citations and internal quotation marks omitted).

As a threshold matter, the question of whether litigation is a sham is highly factual in nature, and Plaintiffs' Motion should be denied on that basis. See *Kearney v. Foley & Lardner,*

PAGE 17 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

*LLP*, 590 F.3d 638, 648 (9th Cir. 2009) (reversing a finding of Noerr-Pennington immunity because whether the sham litigation exception applied presented a question of fact)*; Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1254 (9th Cir. 1982) (same). Defendants have pointed to numerous facts outside of the filing of this lawsuit that require factual development, and have uncovered new facts that further support a finding of sham litigation. The most disturbing facts that have recently been uncovered involve: (i) Plaintiffs' conspiracy with a competitor and a retailer, not to protect Plaintiffs' intellectual property, but to place tremendous financial strain on Defendants so that they will be forced to exit the marketplace, benefiting all three parties; and (ii) entering into agreements that allow for third parties to engage (without license) in the precise conduct Plaintiffs complain of here, all while Plaintiffs falsely assert that the scope of their trademark rights is nearly boundless. Moreover, as explained above, Defendants' Unclean Hands and Trademark Misuse Defenses are not limited to allegations of antitrust violations, much less simply Plaintiffs' filing of lawsuits. Therefore, Plaintiffs' argument for a broad application of *Noerr-Pennington*—on the pleadings, no less—is improper.

In any event, Defendants allege that all three versions of the sham exception may apply here: Defendants contend that Plaintiffs' allegations are objectively baseless, in whole or in part; that Plaintiffs engage in serial litigation with the primary goal of outspending their adversaries into submission regardless of the merits of Plaintiffs' claims; and that Plaintiffs have asserted fraudulently maintained, and even fully or partially cancelled, trademark registrations.

      **a.    This lawsuit is objectively baseless and subjectively ill-meant.**

With respect to the first sham scenario, while Defendants maintain that Plaintiffs' joint assertion of unrelated trademarks in the same action at the encouragement or behest of a

PAGE 18 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
          PLEADINGS

competitor of Defendants and a customer of Plaintiffs is objectively baseless and has no precedent, it is too early to determine whether this single litigation constitutes a sham. "[T]o assess whether a single action constitutes sham petitioning[] [the] inquiry is essentially retrospective:  If the suit turns out to have objective merit, the plaintiff can't proceed to inquire into subjective purposes, and the action is perforce not a sham."  *USS-POSCO Industries v. Contra Costa County Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994).   Numerous issues of fact and law must first be resolved before the Court can retrospectively determine whether this suit has objective merit.   *See, e.g.*, *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc*, No. 11-cv-00317 (LED)(JOL),  2013 WL 12040726, at *5 (E.D. Tex. May 17, 2013) ("[T]he Court finds resolution of the applicability of *Noerr-Pennington* doctrine inappropriate for a 12(b)(6) determination because of the significant disputed factual underpinnings necessary . . . ."); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, No. 10-cv-0677 (JLS)(AJB), 2010 WL 4392547, at *6-7 (S.D. Cal. Oct. 28, 2010) (denying motion for judgment on the pleadings "[g]iven the intense factual findings required to assess the *Noerr-Pennington* doctrine and its exceptions").   Therefore, Plaintiffs cannot show that as a matter of law the sham litigation exception to *Noerr-Pennington* is inapplicable.

> ### b.   Plaintiffs have engaged in a hyper-aggressive campaign of trademark bullying without respect to the merits of their claims.

Under the second sham scenario,

[w]hen dealing with a series of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival. The inquiry in such cases is prospective:  Were the legal filings made, not out of a genuine interest in

PAGE 19 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
            PLEADINGS

redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?

*USS-POSCO Industries v. Contra Costa County Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994). Plaintiffs have launched a series of lawsuits against numerous third parties, using its Three-Stripe Mark as a pretext to unfairly suppress competition and to rid the apparel and footwear market of merely ornamental, decorative, non-source identifying, aesthetically functional, functional, and/or generic uses of two and four striped designs on trademark branded footwear or apparel in the marketplace. Through discovery, Defendants are still uncovering the details of the adidas Plaintiffs' campaign of stripes litigations—which span back to at least the 1990s in Europe. Many of those filings are not publicly available or were filed under seal. To date, Plaintiffs have refused to produce documents associated with its campaign of stripes litigation and the European Plaintiffs have refused to produce any documents at all. (*See, e.g.*, Defendants' Motion to Compel, ECF No. 117, 118). Until such documents are produced and made available for the Defendants' and the Court's consideration, this question is not ripe for judicial consideration and cannot be decided at this stage *as a matter of law*.

Plaintiffs have also launched a campaign of litigation against Defendants and the RBX brand, which now extends to three proceedings at the USPTO against a total of six trademark registrations and seven trademark applications for the RBX Logo, a patent action in the District of Oregon, a patent action before the International Trade Commission, and administrative trademark proceeding in Canada. (Marsh Decl., ¶¶ 19-23.) Many of these cases were brought not on the merits, but rather as "part of a pattern or practice of successive filings undertaken essentially for purposes of harassment." *USS-POSCO Industries,* 31 F.3d at 811. Therefore, the

PAGE 20 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
PLEADINGS

sham litigation exception would apply in the event the *Noerr-Pennington* Doctrine is otherwise applicable.

          **c.**    **Plaintiffs have knowingly and intentionally made misrepresentations to the Court.**

The third sham scenario applies when a party commits "*Walker Process* fraud" upon the USPTO in obtaining or maintaining intellectual property. *See Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F.3d 1033, 1045 (9th Cir. 2009); *cf. In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 369 (S.D.N.Y. 2002) ("[T]he Court of Appeals for the Federal Circuit has made it clear that the *Walker Process* exception co-exists with the sham litigation exception under *PRE* and that either exception will strip a patent holder of *Noerr-Pennington* immunity."); *Meijer, Inc. v. Ranbaxy, Inc.*, No. 15-cv-11828 (NMG), 2016 WL 4697331, at *14 (D. Mass. Sept. 7, 2016) (holding that a defendant adequately pleaded sham petitioning by alleging the plaintiff flooded the FDA with drug applications to "burden competitors by obtaining undeserved exclusivities to block the entry of other generics"). It also applies when a party "mak[es] intentional misrepresentations to the court." *Sosa*, 437 F.3d at 938. Defendants assert that Plaintiffs committed fraud on the USPTO by fraudulently obtaining or maintaining the RBK trademark registrations. The record also shows that Plaintiffs on multiple occasions have falsely stated to the Court that its RBK trademark registrations are incontestable, when they are not. (*See* Marsh Decl., ¶¶ 24-25, Exs. 12-13; *supra* p. 4, n.2.) Plaintiffs have continued to make these false representations, despite Defendants' counsel's repeated attempts to correct the record.

PAGE 21 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
                PLEADINGS

### 4.    *Payless* Does Not Control Here.

Plaintiffs' reliance on their victory in *adidas America, Inc. v. Payless Shoe Source, Inc*., 546 F. Supp. 2d 1029 (D. Or. 2008) is misplaced.  Unlike that case, Defendants' defenses here, to the extent they are based on Plaintiffs' antitrust violations, are not limited to the filing of a frivolous lawsuit and an agreement with a third party to preclude competitive use of four stripes. Defendants allege many other instances of anticompetitive and unfair activity, including the assertion of fraudulently obtained or maintained trademarks and Plaintiffs' agreement to restrain trade and the RBX brand with the Seduka Defendants.  The facts around this agreement between the Plaintiffs and the Seduka Defendants are still being developed.  Depositions have not yet been taken; Plaintiffs have recently produced hundreds of agreements that still need to be reviewed; it appears Plaintiffs' agreement with the Seduka Defendants has not been produced yet; and Plaintiffs have produced no communications between or among them and the Seduka Defendants, nor a privilege log indicating these communications to the extent they allege such communications are privileged.

Furthermore, in deciding a motion for partial summary judgment, not a motion for judgment on the pleadings, the *Payless* court found only that *Payless* "points to no evidence that the agreement between adidas and K-Swiss was motivated by a desire to curtail competition" in violation of the Sherman Act, not that no such evidence does or could exist.  *Id.* at 1081. Defendants have only just received 12,000 new documents from Plaintiffs, including certain key agreements, and are entitled to discovery on the scope, extent, and application of those agreements and other documents.  Issues of fact remain unresolved as to Plaintiffs' fraud on the USPTO and agreements with the Seduka Defendants and other third parties.  Many other issues of fact that could be outcome-determinative for the *Noerr-Pennington* Doctrine also remain

PAGE 22 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
          PLEADINGS

unresolved.  For example, the question of whether this and the related litigations or Plaintiffs' campaign of litigation against the decorative use of stripes by third parties are a sham, involves determination of unresolved questions of fact.  These facts include untangling the curious relationship between Plaintiffs and the Seduka Defendants, as well as the scope of adidas' agreements with third parties to restrain trade, and interpretation of countless other lawsuits and cease and desist letters lodged by adidas against third parties.  All of these issues, which were not addressed in *Payless*, require a determination of issues of material fact, which if true, could subject Plaintiffs to the sham litigation exception to the *Noerr-Pennington* Doctrine.  Therefore, *Payless* does not control and the Motion should be denied.

**D.    Even If The Unclean Hands And Trademark Misuse Defenses Were Limited To Antitrust Violations, Defendants Have Adequately Alleged Such Violations.**

Finally, Plaintiffs argue that Defendants' Unclean Hands and Trademark Misuse Defenses, to the extent they are based on antitrust violations, are inadequately plead.  Plaintiff's argument relies on the wrong pleading standard, and misses the mark at any rate.

**1.    Plaintiffs Misstate the Applicable Pleading Standard.**

The Federal Rules of Civil Procedure provide that "an affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives the plaintiff fair notice of the nature of the defense."  5 Charles A. Wright Et Al., Fed. Prac. & Proc. Civ. § 1274 (3d ed. 2016) (footnote omitted).  The Ninth Circuit Court of Appeals has long confirmed that affirmative defenses pleaded in "general terms" give a plaintiff the requisite "fair notice."  *See, e.g., Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015); *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) ("The key to determining the legal sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.").

PAGE 23 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
               PLEADINGS

Plaintiffs improperly posit that affirmative defenses are subject to the *Twombly-Iqbal* plausibility pleading standard, even though the Ninth Circuit continues to recognize the less stringent "fair notice" standard and the Supreme Court has not decided to the contrary. *See, e.g.*, *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (citing *Wyshak*); *Schutte & Koerting, Inc. v. Swett & Crawford*, 298 F. App'x 613, 614 (9th Cir. 2008) (same); *see also Roe v. San Diego*, 289 F.R.D. 604, 608-09 (S.D. Cal. 2013) ("[*Simmons* and *Schutte*] strongly suggest[] that the Ninth Circuit does not believe the more stringent *Twombly/Iqbal* standard should be applied to affirmative defenses."). Moreover, "unlike Rule 8(a)(2)'s requirement that a pleader 'show' an entitlement to relief, Rule 8(c) requires only that the responding party 'affirmatively state' any affirmative defenses." *Weddle v. Bayer AG Corp.*, No. 11-cv-0817 (JLS)(NLS), 2012 WL 1019824, at *3 (S.D. Cal. Mar. 26, 2012) (concluding that heightened pleading standard does not apply to affirmative defenses).

Many district courts in this Circuit therefore apply only the fair notice standard—not plausibility—to affirmative defenses when considering Rule 12 motions. *See, e.g.*, *McDonald v. Alayan*, No. 15-cv-2426 (MO), 2016 WL 2841206, at *2-3 (D. Or. May 13, 2016) (Mosman, C.J.) ("'[F]air notice' is a different, less stringent standard than the factual plausibility standard articulated in *Twombly* and *Iqbal*."); *Cyber Acoustics, LLC v. Belkin Int'l, Inc.*, 988 F. Supp. 2d 1236, 1239 (D. Or. 2013) (Simon, J.) ("An affirmative defense is legally insufficient only if it clearly lacks merit 'under any set of facts the defendant might allege.'"); *Meas v. CVS Pharmacy, Inc.*, No. 11-cv-0823 (JM)(JMA), 2011 WL 2837432, at *3 (S.D. Cal. July 14, 2011) ("[T]he court concludes that affirmative defenses are not subject to a heightened pleading standard."); *Garber v. Mohammadi*, No. 10-cv-7144 (DPP)(RMN), 2011 WL 2076341, at *4 (C.D. Cal. Jan. 19, 2011) ("[T]his Court is not convinced that *Twombly* should also apply to

PAGE 24 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
          PLEADINGS

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

affirmative defenses."); *Ameristar Fence Prods. v. Phoenix Fence Co.*, No. 10-cv-0299 (PHX)(DGC), 2010 WL 2803907, at *1 (D. Ariz. July 15, 2010) ("The Court is of the view that the pleading standards enunciated in *Twombly* and *Ashcroft v. Iqbal* have no application to affirmative defenses pled under Rule 8(c)." (citation omitted)).

As plead, the Fifth and Eleventh Affirmative Defenses provide fair notice of routine trademark infringement defenses that typically are developed factually during discovery, and particularly at the depositions of plaintiffs. Nevertheless, even under the more stringent plausibility standard, Defendants' Unclean Hands and Trademark Misuse Defenses still set forth plausible allegations. And the merits of these defenses cannot be tested on this Motion because both as alleged contain multiple issues of material fact yet to be decided. Additionally, discovery is still underway in this case, and new and highly relevant facts continue to come to light. *See supra* Section II. As explained above, Defendants' Unclean Hands and Trademark Misuse Defenses simply cannot be resolved at this motion to dismiss stage of the case. Even as to the antitrust aspect of the challenged defenses, Plaintiffs have unquestionably received "fair notice" of the basis for each defense.

## 2. Defendants Have Adequately Pleaded Plaintiffs' Violation Of The Sherman Act.

An affirmative defense related to violation of the antitrust laws may arise, not only when a person monopolizes a part of trade or commerce, but also when they "attempt to monopolize." 15 U.S.C. § 2. While proving monopolization requires a showing of monopolistic power in a relevant market along with evidence of exclusionary behavior, "to demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability

PAGE 25 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
            PLEADINGS

of achieving monopoly power." *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993).

Plaintiffs' allegation that Defendants affirmative defenses fail because they did not adequately

plead that Plaintiffs have achieved monopoly power in a relevant economic market (a factual

point still in development), overlooks that an "attempt to monopolize" is an equally viable

Sherman Act claim.  Defendants have alleged that Plaintiffs are responsible for:

> (a) attempting to prevent lawful competition in the marketplace and misusing
> their claimed intellectual property to acquire a monopoly in violation of U.S.
> antitrust laws, *including, without limitation,* by (i) using their trademarks and
> enormous financial leverage to assert frivolous lawsuits or threats thereof against
> TRB, the TRB Licensees, and third parties to reduce market competition or
> otherwise satisfy their corporate interests and/or the interests of parties to which
> Plaintiffs have contractual, common interest, or other joint defense agreements
> with; (ii) exploiting a fact-specific 2008 jury decision that involved the use of two
> and four stripes on footwear to restrain trade and to stop the use of merely
> ornamental, decorative, non-source identifying, aesthetically functional,
> functional, and/or generic uses of two and four striped designs on branded
> footwear or apparel in the marketplace.

(ECF No. 81, p. 40-41).  These allegations are sufficient to support a claim of attempt to

monopolize under Section 2 of the Sherman Act.  *See Comptek Research, Inc. v. Barrister Legal*

*Support Services, Inc.*, No. 81-cv-0954, 1981 WL 48146, at *1 (D.C. Dec. 21, 1981) (noting that

a Sherman Act Section 2 counterclaim for excessive assertion of trademark rights should not be

dismissed on the pleadings); *see also Winterland Concessions Co. v. Trela*, 735 F.2d 257, 263-64

(7th Cir. 1984) (reversing dismissal of antitrust counterclaim under the *Noerr-Pennington*

doctrine because the defendant adequately alleged that the plaintiff engaged in a pattern of

harassing or sham litigation).

Section 2 defenses may also be established when a party asserts fraudulently obtained

intellectual property.  *See Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, No. 06-cv-

9170, 2013 WL 620266 (Feb. 19, 2013) (noting that a Walker Process claim of monopolization

PAGE 26 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
            PLEADINGS

by fraudulently obtaining a trademark registration "is possible as a matter of law"), reconsidered on other grounds, 2013 WL 3983886 (E.D. La. Aug. 1, 2013); *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965) (finding use of a fraudulently obtained patent can constitute a violation of Section 2 of the Sherman Act); *Electrical Information Publications, Inc.*, 1969 WL 9623 at *11 (finding that plaintiff's fraudulently obtaining trademark registrations "to lessen competition and to attempt to obtain a monopoly" constituted an antitrust violation); *cf. De Walt, Inc. v. Magna Power Tool Corp.*, 289 F.2d 656 (C.C.P.A. 1961) (finding that real economic damage can result from improperly issued trademark registrations because the evidentiary value of a federal registration and the respect it commands in business can combine to harass persons entitled to use the term or mark at issue).

## IV.  CONCLUSION

Defendants have adequately alleged viable Unclean Hands and Trademark Misuse Defenses.  These defenses are not limited to violations of the antitrust laws, even though the antitrust violation claims are properly pleaded.  Discovery is still ongoing in this case—the parties have not yet completed document production, let alone begun depositions.  Dismissing

PAGE 27 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
          PLEADINGS

Defendants' Unclean Hands and Trademark Misuse Defenses, both of which require substantial factual determinations, is not appropriate until all the evidence is in. Nevertheless, even on the facts as plead and known now, Defendants have set forth viable defenses, and Plaintiffs' Motion should be denied.

DATED:  October 5, 2016

LANE POWELL PC


By    s/ Parna A. Mehrbani
    Kenneth R. Davis II, OSB No. 971132
    Parna A. Mehrbani, OSB No. 053235
    Telephone: 503.778.2100
    Facsimile: 503.778.2200

ARENT FOX LLP
    Michelle Mancino Marsh, *pro hac vice*
    Allen G. Reiter, *pro hac vice*
    Eric Roman, *pro hac vice*
    Lindsay Korotkin, *pro hac vice*
    Alissa G. Friedman, *pro hac vice*
    Phaik Lin Goh, *pro hac vice*
    Telephone: 212.484.3900
    Facsimile: 212.484.3990

Attorneys for Defendants

PAGE 28 -  RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE
           PLEADINGS