# Arent Fox

**Arent Fox LLP** / Attorneys at Law
Los Angeles, CA / New York, NY / San Francisco, CA / Washington, DC
www.arentfox.com

**Lindsay Korotkin**
Associate
212.457.5548 DIRECT
lindsay.korotkin@arentfox.com

May 3, 2016

VIA E-MAIL

Nicole Davis Chollet, Esq.
Kilpatrick Townsend & Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta, GA  30309-4528

Re:     Third Party Subpoenas

Dear Nicki:

We write this letter to initiate a meet and confer process regarding the subpoenas that
your office attempted service of process of on April 22, 2016—hours before the start of
Passover—on certain current and/or former licensees of TRB Acquisitions, LLC ("TRB"). This
letter is not an admission as to proper service, which we reserve all right to contest and to
otherwise object to any of the requests and topics for deposition. According to the notices that
you served on us you issued subpoenas to the following third parties:

- Cutie Pie Baby, Inc.
- Elite Performance Footwear, LLC
- Gina Group, LLC
- One Step Up, Ltd.
- SaraMax Apparel Group, Inc.
- United Legwear Company, LLC

As you are now aware, each of these subpoenaed third parties is in the process of retaining Arent
Fox in relation to the subpoenas.

General Issues and Objections

As a preliminary manner, we object to the subpoenas because they fail to allow sufficient
time for reply. As noted above, you have served or attempted to serve the above-listed six
entities on the eve of Passover, which ran this year from Friday, April 22 through Saturday, April
30, 2016. As you are aware from our previous scheduling conferences with the Court, TRB is

AFDOCS/13275049.1

555 West Fifth Street, 48th Floor    1675 Broadway            55 Second Street, 21st Floor     1717 K Street, NW
Los Angeles, CA 90013-1065           New York, NY 10019-5820   San Francisco, CA 94105-3470     Washington, DC 20006-5344
T 213.629.7400  F 213.629.7401       T 212.484.3900  F 212.484.3990   T 415.757.5500  F 415.757.5501   T 202.857.6000  F 202.857.6395

Exhibit I - Page 1 of 12

# Arent Fox

Nicole Davis Chollet,
Esq.
May 3, 2016
Page 2

managed by observant Jews, and the same is true for the above-listed licensees. Many of the subpoenaed third parties' offices were closed for the entire week of Passover, and many were also traveling and therefore unavailable during that holiday week. Given this clear issue with the timing of your subpoenas, the fourteen day deadline from service for the production of documents, information, or objects is unreasonable and unduly burdensome. And, as a result, the subpoenaed third parties will not be able to produce documents by May 6 and will also not be available and/or adequately prepared for Rule 30(b)(6) depositions by your requested dates of June 1-3.

Furthermore, I am unavailable during the week of June 1-3 due to pre-existing scheduling conflicts. In order to go through the meet and confer process to address these concerns effectively, we request an extension of the production deadlines and deposition dates to dates mutually agreeable to the parties at the conclusion of the meet and confer process.[1]

In addition to the scheduling issues the subpoenaed parties face with your very short deadlines, the sheer number of the requests (41 total document demands and 31 topics for deposition) are completely disproportionate to the dispute and are patently burdensome on non-parties. This is a trademark dispute for which Adidas and Reebok, despite admitting to having notice of TRB's mark since 2012, have sat on their collective hands and now seek to disrupt the businesses of numerous third party companies.

Additionally, many of your requests for documents and deposition topics are objectionable on multiple grounds, including that: (1) they are irrelevant, overbroad, vague, ambiguous, unlimited in time or scope, fail to identify the information sought with reasonable particularity, and/or impose an undue burden on the subpoenaed party; (2) they seek information that is already in your possession, is publicly available, and/or is equally available from TRB (the party named in the litigation); and/or (3) they seek disclosure of confidential and highly sensitive information prior to entry of an adequate protective order between Plaintiffs and the subpoenaed third parties. *See, e.g.*, *Dial Corp v. News Corp.*, No. 13-CV-6802 (WHP), 2015 WL 3778533, at *2 (S.D.N.Y. May 19, 2015) (finding a subpoena's request for all communications regardless of whether those communications were directly related to the issues in the action was overbroad); *Palumbo v. Shulman*, Case No. 97-civ-4314, 1998 WL 720668, at *4 (S.D.N.Y. Oct. 13, 1998) (emphasis added) (modifying a subpoena for "'[a]ny and all documents referring or relating to' specified accounts" to only those "limited to information and documents *germane solely* to defendants' [] investments" because the request as drafted "cast too wide a net that will necessarily snare material that is irrelevant to the subject matter of th[e] action."); *Kingsway*

---

[1] We are aware that you have served or intend to serve eight other non-parties with document demands and Rule 30(b)(6) notices that are identical to those at issue here. We are in the process of obtaining engagement letters from these parties and will address this latest batch of discovery demands in a separate letter once we have been engaged. AFDOCS/13275049.1

Exhibit I - Page 2 of 12

# Arent Fox

Nicole Davis Chollet,
Esq.
May 3, 2016
Page 3

*Financial Services, Inc. v. Pricewaterhouse-Coopers LLP*, Case No. 03-civ-5560, 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 8, 2008) (granting motion to quash a request for all documents relating to defendants for an eleven year period because, without a limitation to only those documents relevant to the litigation, the request was overbroad and would capture irrelevant documents); *Burns v. Bank of Am.*, Case No. 03-civ-1685, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (granting motion to quash subpoenas for documents from a third party because they were duplicative and cumulative of requests made to a named defendant in requests for documents).

Many of the definitions you have provided in the request for production of documents and deposition topics are alarmingly overbroad and vague. In particular, the definitions of the term "Disputed Three-Stripe Design" (which appears to be used interchangeably with the term "Disputed Three-Stripe Mark"), and the terms "Disputed Marks" and "Disputed Products" to the extent that "Disputed Three-Stripe Design" as currently defined is incorporated within those terms, are all objectionable. As previously explained in our letter to you on behalf of TRB, dated April 19, 2016, these definitions are facially flawed because they falsely imply that Plaintiffs own trademarks incorporating two or four parallel or "substantially parallel" stripes running vertically down an item of apparel or in the midfoot portion of the upper of footwear. And, even if the definition of "Disputed Three-Stripe Design" was limited to only three stripes, this definition would still be flawed because: (1) the term "substantially parallel" is vague and requires subjective interpretation; and (2) the definition does not in any way limit the claims to three parallel stripes within any clear and specific dimensional or spacing parameters. In fact, the proposed definition for Disputed Three-Stripe Design is so broad that it reads on and encompasses: (1) three stripe designs that are owned or used by third party brands, including Gucci, Bally, and Thom Browne; (2) two and four stripe designs that are owned by third parties, including Keds and Cougar Sport; and (3) the many decorative, ornamental, non-source identifying uses of "stripes" that are sold in the market by a seemingly endless list of parties that includes, of all things, plaintiff Reebok.[2] Accordingly, Plaintiffs must provide a clearer and appropriately narrow definition of the terms "Disputed Three-Stripe Design," "Disputed Marks,"

---

[2] *See e.g.*, Gucci America, Inc., U.S. Trademark Registration Nos. 1122780,1123224, 1483526,1495863, 1520796, 4567112, and 4563151; Thom Browne, Inc., U.S. Trademark Reg. Nos. 4550034, 3921361; *see also* Bally, Reebok, and Tommy Tickle footwear and apparel all containing such three stripe designs, as set forth in Defendant's First Amended Responses and Objections to Plaintiffs' First Set of Interrogatories, p. 24-29. *See also* SR Holdings, LLC, U.S. Trademark Reg. No. 2076036, D. Jacobson & Sons Limited, U.S. Trademark Registration Nos. 2839429, 3032726, 4341524, Cougar Sport, Inc., U.S. Trademark Registration No. 4733403, U.S. Trademark Application No. 86681902, DMC New York LLC, U.S. Trademark Reg. No. 4144968. *See also* Reebok, Russell Athletic, OshKosh, Turner Sports, CB Sports, Lonsdale, Azzuro, Baw Youth, Tek Gear, Thom Browne, Gola, Cougar Sport, Keds, Koala Kids, Everlast, Nike, Joe Fresh, Stepping Stones, Luvable Friends, and Blades Apparel footwear and apparel all containing such two and four stripe designs, as set forth in Defendant's First Amended Responses and Objections to Plaintiffs' First Set of Interrogatories, p. 30-48.

Exhibit I - Page 3 of 12

# Arent Fox

Nicole Davis Chollet,
Esq.
May 3, 2016
Page 4

and "Disputed Products" so that the subpoenaed third parties can respond in good faith to the requests and provide deposition testimony related to these defined terms.

As applied to the context of these subpoenaed licensees, many of the requests directed to "Disputed Three-Stripe Design," "Disputed Marks," or "Disputed Products" are highly objectionable because they fail to limit the requests to RBX branded products and activities under the RBX license. By failing to provide these necessary limitations, your subpoenas improperly seek documents and testimony on business activities, products, and records that are in no way connected to TRB or the RBX Mark. For example, as currently drafted, Request No. 10, which seeks "[d]ocuments sufficient to identify the date of Your first sale of any product bearing the Disputed Three-Stripe Design," conceivably calls for the production of documents, to the extent any exist, identifying first use dates for the use of striped designs that are in no way connected to TRB or the RBX Mark. Surely you can agree that such documents and testimony are overbroad and completely irrelevant to this case. We trust that you can also appreciate that the search for responsive documents and preparation of a witness as to these topics would be unduly burdensome, especially in light of their complete lack of relevance to the issues in the litigation. To the extent you are already aware of these issues, we remind you that under Fed. R. Civ. P. 45(d)(1), you are obligated to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Subpoenas requiring documents or deposition testimony that are mere fishing expeditions, require the production of masses of documents having no bearing upon the litigation, or impose massive burdens on non-parties are improper. *See Copantitla v. Fiskardo Estiatorio, Inc.*, Case No. 09-civ-1608, 2010 WL 1327921, at *12 (S.D.N.Y. Apr. 5, 2010) (quashing document requests that were "fishing" for information because they were "far too expansive"); *Sanofi-Snthelabo v. Apotex Inc.*, No. 02-CV-2255 (SHS), 2009 WL 5247497, at *2 (S.D.N.Y. Dec. 30, 2009) (quashing irrelevant deposition topics).

While we appreciate that you have revised your definition of the "RBK Mark" in these requests to omit the now-abandoned and USPTO-cancelled U.S. Trademark Registration No. 3,612,991, the definition is still overbroad and vague. The new definition does not include sufficient parameters for the subpoenaed parties to interpret the related requests. For example, while the definition provided for the "Reebok Mark" includes the express limitation of "on footwear and apparel," the definition for RBK Mark is completely unrestrained as to goods or services. Additionally, your current definition that the "RBK Mark" means the RBK mark, including the stylized version depicted below and the mark underlying U.S. Reg. No. 3,074,802" improperly implies ownership of marks or registrations that Reebok has abandoned.

These general objections apply with equal force to the requests for production of documents and deposition topics set forth in your subpoenas. However, in an effort to better inform you of the most urgent issues in your subpoenas, in addition to the above general

Exhibit I - Page 4 of 12

**Arent Fox**

Nicole Davis Chollet, Esq.
May 3, 2016
Page 5

objections, the following objections to specific document requests and deposition topics also apply.

## Subpoena for the Production of Documents

**Request No. 1: Documents that refer or relate to TRB.**
This request is incredibly overbroad, unlimited in time or scope, and fails to identify the information sought with reasonable particularity. In effect, it seeks every single document that is in any way related to or touches upon the subpoenaed third party's business with TRB and its use of the RBX Mark. The search for and production of all these documents would impose an undue burden on the subpoenaed party. It would also result in the production of a large number of irrelevant documents, for example, confidential business information, confidential communications related to retail and manufacturing relationships, business plans, and so forth. Surely you can agree that many of these documents would be irrelevant and that a narrower request can and should be drafted.

**Request No. 2: Any written agreements between You and TRB.**
This request seeks information that is equally available from TRB. Please withdraw this request.

**Request No. 3: Any invoices between You and TRB.**
For the same reasons as set forth above regarding Request No. 1, this request is overbroad, unlimited in time or scope, and fails to identify the information sought with reasonable particularity.

**Request Nos. 5 and 6:**
   **5. Documents related to the negotiation, drafting, execution, and performance of any agreement, oral or written, between You and TRB relating to the Disputed Marks.**
   **6. Documents related to the negotiation, drafting, execution, and performance of any agreement, oral or written, between You and TRB relating to the Disputed Products.**
These requests are overbroad and seek production of volumes of irrelevant documents that relate to business points communicated prior to the initiation of the activities complained of in the litigation, namely use of the RBX Mark on footwear and apparel. Accordingly, these requests must be withdrawn.

**Request No. 7: Documents related to any payments made by You to TRB, including but not limited to royalty payments and license fee payments.**
This request is overbroad and vague to the extent it calls for "documents related to . . ." and is not limited to the RBX Mark at issue in the litigation. This request must be withdrawn, or more narrowly crafted.

AFDOCS/13275049.1

Exhibit I - Page 5 of 12

# Arent Fox

Nicole Davis Chollet,
Esq.
May 3, 2016
Page 6

**Request No. 8: Communications between You and TRB relating to the Disputed Marks or the Disputed Products.**

For the same reasons as set forth above regarding Request No. 1, this request is overbroad and unduly burdensome. The requested pool of documents would include virtually every single document that is in any way related to or touches upon the subpoenaed third party's business with TRB and its use of the RBX Mark. This request must be withdrawn, or more narrowly crafted.

**Request No. 9: Documents sufficient to identify the date on which You first used the Disputed Marks.**

As explained above, this request is objectionable and overbroad due in part to its use of the problematic definition for Disputed Marks. However, the objection could be withdrawn if the request is narrowed and limited to the date it "first used the RBX Mark."

**Request No. 10: Documents sufficient to identify the date of Your first sale of any product bearing the Disputed Three-Stripe Mark.**

As explained above, this request is objectionable and overbroad due in part to its use of the problematic definition for Disputed Three-Stripe Mark. However, this objection could be withdrawn if this request is narrowed and limited to the date it "first used three stripes on footwear and apparel branded with the RBX Mark."

**Request No. 15: Documents that refer or relate to the quality, durability, or performance characteristics of each Disputed Product.**

This request is overbroad. The search for, review, and production of responsive documents will cause an undue burden on the subpoenaed party and will involve volumes of irrelevant documents. As you are aware, virtually every communication that a company has with its suppliers could conceivably refer or relate to "quality, durability, or performance characteristics" for the produced products. This includes communications on irrelevant and miniscule details such as the request to reposition a button or zipper, move a stitch, or use an alternative thread choice. Please provide a more narrowly tailored request and we will consider it.

**Request No. 17: Representative samples of each type of label, tag, or packaging that has been used in connection with each Disputed Product, with documents sufficient to identify when each such label, tag, or packaging was used.**

This request seeks information that is equally available from TRB. In fact, it is duplicative of your Request No. 19 in Plaintiffs' First Request for Production of Documents for "Representative samples of each type of label, tag, or packaging that has been used in connection with each Disputed Product, with documents sufficient to identify when each such label, tag, or packaging was used." As licensees of TRB and the RBX Mark, the subpoenaed third parties only use labels, tags, and packaging that are approved by TRB. As such, the documents produced by

AFDOCS/13275049.1

Exhibit I - Page 6 of 12

**Arent Fox**

Nicole Davis Chollet,
Esq.
May 3, 2016
Page 7

TRB in response to its identical request will adequately cover this information. As such, this request should be withdrawn as duplicative.

**Request No. 19:** Documents that refer or relate to Your expenditures for the advertising or promotion of any Disputed Product, including expenditures for websites or web pages featuring any Disputed Product.

This request contains the objectionable term "Disputed Products" and is overbroad to the extent it seeks all documents that "refer or relate to . . ." However, the objection could be withdrawn if this request is narrowed and limited to "[d]ocuments sufficient to identify Your expenditures for the advertising or promotion of any RBX branded apparel or footwear, including expenditures for websites or web pages featuring any RBX branded apparel or footwear."

**Request No. 20:** Documents sufficient to identify the geographic areas in which You have promoted, distributed, sold or offered for sale any Disputed Product.

This request is objectionable to the extent it seeks information on products merely "offered for sale." However, the objection could be withdrawn if this request is narrowed to remove the words "offered for sale." This, of course, is subject to your provision of a narrower and non-objectionable definition for the term Disputed Product.

**Request No. 22:** Documents that refer or relate to Your communications with any customers, clients, sellers, retailers, distributors, or licensees of the Disputed Marks or Disputed Products.

This request is overbroad to the extent it seeks "documents that refer or relate to . . ." because this implicates nearly every document that is in any way related to or touches upon the third party's business with TRB and its use of the RBX Mark. However, this objection could be withdrawn if the request is limited to "Documents sufficient to identify Your customers, clients, sellers, retailers, distributors, or licensees of apparel and footwear sold under the RBX Mark."

**Request No. 25:** Documents sufficient to identify the psychographic characteristics of typical or target consumers (i.e. end users) of each of the Disputed Products.

This request is overbroad and vague, including to the extent is refers to the undefined term "psychographic characteristics." This Request must be more narrowly crafted or withdrawn.

**Request Nos. 26:** Documents sufficient to identify how and when You first learned of each of Plaintiffs' Marks.

This request is overbroad, unduly burdensome, and vague including as to the term "learned." This Request must be more narrowly crafted or withdrawn.

AFDOCS/13275049.1

Exhibit I - Page 7 of 12

# Arent Fox

Nicole Davis Chollet, Esq.
May 3, 2016
Page 8

**Request No. 27: Documents that refer or relate to Your communications with any customers, clients, sellers, distributors, licensors, or licensees concerning any of the Plaintiffs, Plaintiffs' Marks, or Plaintiffs' Goods.**

This request is overbroad and as drafted would result in the production of volumes of irrelevant documents that are in no way connected to TRB, the RBX Mark, or the subpoenaed third party's use of the RBX Mark. The burden of review and production of these documents far outweighs any relevance they could possibly have in the litigation. Furthermore, the language "refer or relate" is vague in this context and fails to identify the information sought with reasonable particularity. This Request must be more narrowly crafted or withdrawn.

**Request No. 28: Documents that refer or relate to Your communications with any of Plaintiffs' customers, clients, sellers, distributors, licensors, or licensees concerning any of the Plaintiffs, Plaintiffs' Marks, or Plaintiffs' Goods.**

This request is overbroad and as drafted would result in the production of volumes of irrelevant documents that are in no way connected to TRB, the RBX Mark, or the subpoenaed third party's use of the RBX Mark. The burden of review and production of these documents far outweighs any relevance they could possibly have in the litigation. Furthermore, the language of "refer or relate" and the general listing of "Plaintiffs' customers, clients, sellers, distributors, licensors, or licensees" are both vague and fail to identify the information sought with reasonable particularity. This Request must be more narrowly crafted or withdrawn.

**Request Nos. 31-35:**
   **31. Documents that refer or relate to adidas.**
   **32. Documents that refer or relate to Reebok.**
   **33. Documents that refer or relate to adidas's Three-Stripe Mark.**
   **34. Documents that refer or relate to adidas's Badge of Sport Logo.**
   **35. Documents that refer or relate to Reebok's RBK Mark.**

These requests are all overbroad, the production of which would present an undue burden on the subpoenaed party, in part because the requests are unlimited in time or scope and fail to identify the information sought with reasonable particularity. These requests must be withdrawn.

**Request No. 36: Photographs or depictions of any of Plaintiffs' Marks or Plaintiffs' Goods within Your possession, custody, or control.**

This request is overbroad. Compliance with this request would present an undue burden on the subpoenaed party, especially given that in order to comply every single electronic image file in the subpoenaed party's possession would have to be collected and manually reviewed. Digital image files cannot be effectively screened and searched using existing technologies. Furthermore, even if such images were able to be identified, their relevance to the litigation is highly questionable. Given that the existence of any such images, to the extent any are in the

Exhibit I - Page 8 of 12

**Arent Fox**

Nicole Davis Chollet,
Esq.
May 3, 2016
Page 9

possession, custody, or control of the subpoenaed parties, would do little to nothing to further your case, we demand that you withdraw this request.

**Request No. 39: Documents that refer or relate to any trademark or trade dress infringement claim, objection, demand, or other assertion communicated to You by a Third Party, whether or not such communication resulted in a lawsuit.**
This request is overbroad, unlimited in time or scope, and seeks the production of irrelevant documents. Particularly distressing is that this request is open-ended and not limited to any alleged assertions of trademark or trade dress infringement in connection with the subpoenaed third party's use of the RBX Mark. To the extent that these subpoenaed third parties have received communications related to claims of trademark or trade dress infringement in connection with their businesses and licenses completely separate from the RBX Mark, those documents are both highly confidential and wholly irrelevant to the litigation. This request must be more narrowly tailored or altogether withdrawn.

**Request No. 41: Documents that refer or relate to the issues presented in the Litigation.**
This request is overbroad, vague, including as to the term "issues." and would result in the production of irrelevant documents. This request must be more narrowly tailored or altogether withdrawn.

**Deposition Topics**

      In addition to the objectionable definitions as described above as to "Disputed Three-Stripe Design," "Disputed Marks," or "Disputed Products," the definition of "TRB" is also objectionable in this context to the extent it includes the "predecessors-in-interest" of TRB. The subpoenaed third parties, as licensees of TRB, had and have no business relationship with the "predecessors-in-interest" of TRB. Given that the license relationships run directly between TRB and the subpoenaed third parties, the term "predecessors-in-interest" should be stricken from this definition of TRB and any deposition topic inquiry into TRB's predecessors-in-interest be removed from the topics list as irrelevant and outside the scope of the licensees' knowledge.

      Not only are many of the topics flawed as irrelevant, overbroad, vague, ambiguous, unlimited in time or scope, failing to identify the information sought with reasonable particularity, and imposing an undue burden on the subpoenaed party, a number of your proposed 30(b)(6) deposition topics are also improper to the extent they can be more practically obtained by other means of discovery. *See e.g.*, *Sahu v. Union Carbide Corp.*, 2010 WL 909074, at *3 (S.D.N.Y. Mar. 15, 2010) (denying a Rule 30(b)(6) deposition because the deposition topics were unreasonably cumulative or duplicative of documentary evidence already produced to the plaintiffs during discovery); *Dealer Computer Services, Inc. v. Curry*, 2013 WL 499520, at

**Arent Fox**

Nicole Davis Chollet, Esq.
May 3, 2016
Page 10

*2 (S.D.N.Y. Feb. 7, 2013) ("A deposition is not a quiz, nor is it the most practical way to obtain such information. To the extent such broad information is requested, Plaintiff should serve interrogatories to obtain it."). Any and all unreasonably cumulative or duplicative topics should be withdrawn.

**Topic No. 2: The date(s) on which [subpoenaed third party] was formed and first began conducting business.**
This topic is objectionable because it seeks information that is available from documents, including the publicly available corporate filings of the named entities from the applicable secretary of state.

**Topic No. 7: The negotiation, drafting, execution, and performance of any agreement, oral or written, between You and TRB relating to the Disputed Marks.**
This topic is objectionable in part because it seeks testimony on the irrelevant and at times confidential and privileged communications related to the negotiation or execution of any agreement between the subpoenaed party and TRB. Pre-license activities or communications are completely irrelevant to the issues of this litigation, which focus solely on the use of the RBX Mark on footwear and apparel. Accordingly, this topic should be withdrawn.

**Topic Nos. 9 & 12:**
    **9. Your knowledge of the Disputed Marks.**
    **12. Your knowledge of any of the Disputed Products.**
In addition to the above noted objections to the terms "Disputed Marks" and "Disputed Products," these topics are unreasonably vague as to the term "knowledge" and must be more narrowly tailored or withdrawn.

**Topic Nos. 10-11, 19-20, 24-25**
    **10. The date on which You first used the Disputed Marks.**
    **11. Your methods of using, advertising, and displaying the Disputed Marks since its first use.**
    **19. Your customers, clients, sellers, retailers, distributors, or licensees of the Disputed Products.**
    **20. The stores, websites, or other outlets through which You have sold any Disputed Products.**
    **24. For all Disputed Products, the units sold, dollar amount sold, the time period in which sales were made, and the geographic locations of sales from your first use of the Disputed Marks to present.**
    **25. Your annual expenditures for the advertising, marketing and promotion of any Disputed Products.**

AFDOCS/13275049.1

Exhibit I - Page 10 of 12

# Arent Fox

Nicole Davis Chollet,
Esq.
May 3, 2016
Page 11

In addition to the above noted objections as to the terms "Disputed Marks" and "Disputed Products," these topics are objectionable because they seek testimony on topics that can and will be more practically obtained by the production of documents.

**Topic Nos. 13, 17, 18:**
    **13. The development, manufacture, distribution, or sale of any Disputed Products by You.**
    **17. Any guidelines, packaging specification, or product specifications You use in manufacturing any Disputed Products.**
    **18. The quality, durability, or performance characteristics of the Disputed Products.**
These topics are overbroad and would be unduly burdensome on the subpoenaed party. The process of development, manufacture, distribution, and sale for a given product can be lengthy and complex. Guidelines, packaging specification, or product specifications are highly specific details that vary from item to item. The quality, durability, and performance characteristics are highly specific details. Surely you can agree that it would be overly burdensome to expect one witness to be fully prepared to answer questions about every one of these details for each and every product ever developed and/or produced and sold under the RBX Mark license. We demand that you narrow or withdraw these topics.


**Topic Nos. 27-28:**
    **27. All communications between You and TRB concerning the Disputed Marks or Disputed Products, including but not limited to emails, reports, proposals, videos, spreadsheets, photographs, or presentations.**
    **28. All communications between You and TRB regarding Plaintiffs, Plaintiffs' Marks, or Plaintiffs' Goods, including but not limited to emails, reports, proposals, videos, spreadsheets, photographs, or presentations.**
In addition to the general definitional objections noted above, these topics are overbroad and would be unduly burdensome in part because they seek testimony as to "all communications between You and TRB . . ." The request for a single witness to become sufficiently knowledgeable in order to provide testimony as to each and every communication between two business entities operating under a license agreement is wholly unreasonable. These topics must be withdrawn.

**Topic No. 31:** **Your knowledge of any of the issues presented in the Litigation.**
This topic is overbroad are unreasonably vague, including as to the terms "knowledge" and "issues." It must be more narrowly tailored or withdrawn.

*   *   *

AFDOCS/13275049.1

Exhibit I - Page 11 of 12

**Arent Fox**

Nicole Davis Chollet,
Esq.
May 3, 2016
Page 12

In sum, all six subpoenas request the same 41 categories of documents and 31 topics for deposition, many of which are improper for the reasons set forth above. When a narrower request or topic could be easily crafted, we have endeavored to offer those for your consideration above. In other instances, we identified some of the most pressing issues and await your withdrawal of the language or provision of more narrowly tailored requests and topics.

We are available to meet and confer by telephone conference any time on May 4. Given the short period of time between the date of the subpoena and the date by which production was requested, and in light of the holiday conflicts faced by many of the subpoenaed third parties during that period, we request that the meeting take place promptly. We believe that through this process we can reach an agreement on each of the above-referenced issues, so as to avoid being forced to move to quash the subpoenas.

The subpoenaed third parties reserve the right to supplement their objections and address any other allegations of deficiencies related to these subpoenas or in the discovery process.

Sincerely,

Lindsay Korotkin

Exhibit I - Page 12 of 12