

KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

Suite 2800, 1100 Peachtree Street NE
Atlanta, GA 30309-4528
t 404 815 6500  f 404 815 6555

May 12, 2016

direct dial 404 815 6572
direct fax 404 541 3240
CHenn@kilpatricktownsend.com

By Email

Michelle Mancino Marsh
Arent Fox LLP
1675 Broadway
New York, New York 10019
michelle.marsh@arentfox.com

  Re: <u>adidas & Reebok v. TRB Acquisitions (RBX) - Third-Party Subpoenas</u>

Dear Michelle:

  In response to Lindsay Korotkin's May 3 letter, we conducted two telephonic meet-and-confers earlier this week. This letter memorializes those conversations and attempts to resolve the concerns you raised with regard to adidas's subpoenas to TRB's licensees.

## **"Disputed Marks" and "Disputed Products"**

  Many of your objections relate to the definitions of "Disputed Marks" and "Disputed Products," and we spent a great deal of time during our phone calls discussing them.

  As you know, the pending action alleges trademark claims on behalf of Reebok against the RBX Logo and the RBX mark. On behalf of adidas, the pending action alleges trademark claims against the three-stripe component of the RBX Logo and against the use of two, three, or four stripes running vertically down apparel (e.g., on the sleeve of a top or the outseam of a pant) or in the midfoot portion of the upper of footwear.

  You have challenged the fact that the subpoenas include within their scope products that use two, three, or four stripes. As I explained, courts have made clear that adidas can bring infringement claims against such products and, indeed, the jury in *adidas v. Payless* found over a 100 different shoes bearing a variety of stripe designs to infringe adidas's rights. I provided you copies of the opinions in *adidas v. Payless* (as well as the verdict form showing the footwear in question), *adidas v. Target*, *ACI v. adidas*, and *adidas v. Skechers*. The Court in *adidas v. Target* directly addressed your colleague's argument that two- and four-stripe designs are not relevant:

> From the mathematical premise that three does not equal four, defendants argue that, as a matter of law, the use of a four stripe design on the side of a casual shoe cannot be confusingly similar to adidas' Three Stripe Mark. Defendants posit that to find otherwise would grant adidas a monopoly over the use of stripes as decorations on the sides of all

ATLANTA  AUGUSTA  CHARLOTTE  DALLAS  DENVER  LOS ANGELES  NEW YORK  RALEIGH  SAN DIEGO  SAN FRANCISCO
SEATTLE  SHANGHAI  SILICON VALLEY  STOCKHOLM  TOKYO  WALNUT CREEK  WASHINGTON  WINSTON-SALEM

Exhibit J - Page 1 of 7

Michelle Mancino Marsh
May 12, 2016
Page 2

>sports shoes. This argument is not well taken. Although three stripes obviously do not equal four stripes, the issue is not simply the number of stripes. Instead, the issue is whether the total effect of the allegedly infringing design is likely to cause confusion in the minds of an ordinary purchaser. . . . Thus, this court cannot simply count the number of stripes and determine as a matter of law that four stripes are not confusingly similar to three stripes.

*adidas v. Target*, 228 F. Supp. 2d 1192, 1211 (D. Or. 2002).

In a further effort to provide guidance concerning our definition of "Disputed Three-Stripe Designs," I emailed you a collection of RBX-branded footwear bearing what we consider to bear "Disputed Three-Stripe Designs." I also directed you to your own Amended Response to adidas's Interrogatory No. 11, in which you successfully identified numerous third-party products bearing two, three, or four stripes.

To address your concern regarding whether third parties needed to produce documents about striped products that are not licensed by TRB, I explained that the subpoenas only seek documents pertaining to RBX-branded products. To make this explicit, I stated that the definition of "Disputed Product" could be amended to "any apparel or footwear *licensed by TRB and* bearing any of the Disputed Marks."

It is worth noting that these are discovery requests and, as such, are appropriate so long as potentially relevant to adidas's claims and "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(2). By agreeing to produce the requested documents, neither TRB nor its licensees is somehow admitting liability; but adidas certainly has a right through the discovery process to receive and review documents concerning potentially infringing products.

In light of the foregoing, we believe we sufficiently have addressed your questions about which products are the subject of adidas's discovery requests.

### Specific Document Requests

At the outset, I have made clear that we are not seeking documents from third-party licensees that will be produced in discovery by TRB itself. We only require that a relevant and responsive document be produced by one entity. While some requests in the subpoenas overlap with those we served on TRB, we do not have the benefit – as you do – of knowing what documents TRB has in its possession, custody, or control or what documents are in the possession, custody, or control of particular licensees. Because you represent both TRB and the licensees, you are in a unique position to "de-duplicate" the production.

#### Requests Not in Dispute

We understand you do not object to Request Nos. 4, 11-14, 16, 18, 21, 23-24, 29-30, 37-38, and 40.

Michelle Mancino Marsh
May 12, 2016
Page 3

We hereby withdraw Request Nos. 1 and 41.

Provided we come to an agreement on Request No. 27 (as discussed below), we also would withdraw Request Nos. 28, 31, and 32.

Provided we come to an agreement on Request Nos. 27 and 15 (as discussed below), we also would withdraw Request No. 22.

**Requests 2 & 3 & 7**

As noted above, we only need the agreements (Request No. 2) from one entity (TRB or the licensee), not both. With regard to invoices (Request No. 3) and royalty payments (Request No. 7), we agreed that a schedule showing royalty and fee payments (by product, if accounted for in that manner), would be sufficient. Again, if TRB is providing those, we do not separately need them from the licensees.

**Requests 5 & 6**

We discussed the fact that adidas will pursue a reasonable-royalty theory of damages as one form of monetary relief in this case. Thus, documents reflecting the negotiation of royalty rates (or other license fees) are relevant and should be produced. We are not requesting production of license-negotiation documents that do not address royalties or fees.

**Request 8**

I agreed to re-word this request to add the underlined language as follows: "Communications between You and TRB relating to the appearance, design, or placement of one or more of the Disputed Marks on the Disputed Products." This is intended to include initial "pitch" documents to or from the licensee, as well as such documents created during the term of the license.

**Requests 9 & 10**

You agreed to produce documents sufficient to show first use and first sale of the RBX Logo and the RBX Mark.

With regard to products bearing a Disputed Three-Stripe Design, we seek production of the licensee's first use and sale of products bearing such a design *on an RBX-branded product*.

**Request 15**

As we discussed, adidas is not seeking emails reflecting "irrelevant miniscule details such as the request to reposition a button or zipper. . . ." We made clear that the purpose of Request

Michelle Mancino Marsh
May 12, 2016
Page 4

No. 15 is to obtain documents reflecting: (1) quality-control protocols, reports, or the like; (2) performance or chemical testing on Disputed Products; and (3) complaints about or returns of Disputed Products from customers, retailers, distributors, or others. I understood from our conversation that this limitation is acceptable to you.

### Request 17

Again, we only need one party (TRB or the licensee) to produce images of the labels, tags, and packaging used on Disputed Products. You agreed to follow up with TRB to confirm that they have (and will produce) these so the licensees do not need to.

### Requests 19 & 20

I agreed to your proposed limitations on these requests, namely:
- Request No. 19: "Documents sufficient to identify Your expenditures for the advertising or promotion of any RBX-branded apparel or footwear, including expenditures for websites or web pages featuring any RBX-branded apparel or footwear."
- Request No. 20: Remove "offered for sale," so it would read: "Documents sufficient to identify the geographic areas in which You have promoted, distributed, or sold any Disputed Product."

### Request 25

I explained what "psychographic characteristics" are and described the types of documents that typically contain descriptions of those characteristics. You agreed to follow up with the licensees to see if they have responsive documents.

### Request 26

Allen argued that the licensees likely "learned of" Reebok's and adidas's marks long ago, and that such information would not be reflected in documents. That may be true, in which case, we would expect the licensee to respond that no responsive documents exist.

### Request 27

You noted that TRB and its licensees compete directly with adidas and Reebok, and thus there would be a lot of correspondence mentioning the Plaintiffs or their products. I mentioned that any discussion of the Plaintiffs' *marks* is highly relevant to issues of intent and bad faith, but that with regard to mere mention of adidas, Reebok, or their products, we would limit the request. To achieve that goal, we agree to modify the request by breaking it into two requests as follows, adding the underlined language as a limitation in 27b:

Michelle Mancino Marsh
May 12, 2016
Page 5

- Request No. 27a: Documents that refer or relate to Your communications with any customers, clients, sellers, distributors, licensors, or licensees concerning any of the Plaintiffs' Marks.

- Request No. 27b: Documents that refer or relate to Your communications with any customers, clients, sellers, distributors, licensors, or licensees concerning any of the Plaintiffs or Plaintiffs' Goods <u>and also mentions or references one or more of the Disputed Products</u>.

**Requests 33-35**

Documents that specifically mention Reebok's or adidas's trademarks are highly relevant to issues of intent and bad faith. For this reason, we will not withdraw Request Nos. 33-35, but we are willing to limit them as follows:
- Request No. 33: Documents that mention adidas's Three-Stripe Mark.
- Request No. 34: Documents that mention adidas's Badge of Sport Logo.
- Request No. 35: Documents that mention Reebok's RBK Mark.

**Request 36**

You agreed to follow up with TRB's licensees to determine the manner in which they maintain and/or catalog images or samples of branded products, so we could assess the burden associated with responding to this request. I mentioned that one solution we used in another case was to issue a Notice under Rule 34(a)(2) to visit the defendant's "sample room" and copy (through videographic means) images of adidas products within the defendant's possession. We are happy to do that here if it would minimize the burden on the licensee associated with culling through large collections of branded products.

**Request 39**

You refused to comply with this request and did not propose any means of limiting it in a manner you would find acceptable.

**Deposition Topics**

As I mentioned, we would like to schedule depositions of the licensees at mutually convenient times once we receive the responsive documents. Therefore, you do not need to move to quash the deposition subpoena at this time.

**Topics Not in Dispute**

We understand you do not object to Topics 3-6, 8, 14-16, 21-23, 26, 29-30. We agreed to withdraw Topic 31. On further consideration, I also will withdraw Topic 2.

Michelle Mancino Marsh
May 12, 2016
Page 6

### Topic 1

While not raised in your May 3 letter, Allen raised a concern on the phone about the scope of Topic 1. As I mentioned, we do not plan to engage in "gotcha" questioning with regard to documents that have nothing to do with the witness. On the other hand, through Topic 1 we expect the licensee to offer a witness who is prepared to authenticate documents produced and who generally is aware of what materials were produced in response to the subpoena.

### Topic 7

Topic 7 generally parallels Document Requests 5 & 6. We discussed the fact that adidas will pursue a reasonable-royalty theory of damages as one form of monetary relief in this case. Similarly, issues of quality are implicated by our dilution claims. Thus, we expect each licensee to present a witness capable of discussing (a) that licensee's negotiation of royalty rates (or other license fees) and (b) quality-control provisions. Let us know if this limitation addresses your concern.

### Topics 9 & 12

For these Topics, we are seeking each licensee to produce a witness capable of testifying on behalf of the licensee concerning: (a) the design of Disputed Products, including placement and appearance of the Disputed Marks, (b) the licensee's reasons for wanting to use the Disputed Marks, and (c) the circumstances under which the licensee first became aware of each of the Disputed Marks. Let us know if this limitation addresses your concern.

### Topics 10-11, 13, 17-20, 24-25

Your primary objection to these Topics appears to be the definition of "Disputed Marks" and "Disputed Products," which are discussed above.

I agreed to make clear that we are not interested in engaging in a "trick question" exercise with the licensee witnesses, and do not intend to ask detailed questions about the quality, reseller, or advertising of individual products pulled randomly from the licensee's catalog. We do, however, intend to ask generally about the licensee's advertising, sales, packaging, and quality-control efforts with regard to the Disputed Products. I understand that with this clarification, you will make available a witness capable of testifying generally about these topics on behalf of the licensee.

### Topic 27

I mentioned that this Topic parallels, in large part, Document Request No. 8. We agree to a similar limitation on this deposition Topic, as follows: "Communications between You and TRB concerning the <u>the appearance, design, or placement of one or more of</u> the Disputed Marks <u>on</u> the Disputed Products, including but not limited to emails, reports, proposals, videos,

Michelle Mancino Marsh
May 12, 2016
Page 7

spreadsheets, photographs, or presentations." As noted with respect to Request 8, this Topic is intended to encompass communications prior to and during the term of any license agreement.

### Topic 28

Communications between a licensee and TRB concerning adidas, Reebok, or their respective marks and products are highly relevant to a number of issues, including intent, proximity of goods, sales and marketing channels, bad faith, and damages. We therefore believe each licensee should make available a witness prepared to testify as to such communications.

### Conclusion

We have made good progress, and I hope this letter allows us to put any remaining objections to rest. Please let me know, however, if any of the foregoing Requests or Topics need to be brought to Judge Simon's attention for resolution.

Sincerely,

R. Charles Henn Jr.

cc:  Stephen Feldman
     Nicki Chollet