

KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

Suite 2800, 1100 Peachtree Street NE
Atlanta, GA 30309-4528
t 404 815 6500  f 404 815 6555

July 18, 2016

direct dial 404 815 6572
direct fax 404 541 3240
CHenn@kilpatricktownsend.com

**VIA EMAIL**

Honorable District Judge Michael H. Simon
U.S. District Court for the District of Oregon
Room 1327
1000 Southwest Third Avenue
Portland, Oregon 97204-2944

    Re:    *adidas America, Inc. et. al v. TRB Acquisitions LLC*, Case No. 3:15-cv-02113-SI

Dear Judge Simon:

We write pursuant to the Court's request that we respond to counsel for Defendant's July 15 letter (the "Discovery Letter").

### 1.    Whether Issues are Ripe for the Court's Involvement

When defense counsel sent the Court the Discovery Letter, Plaintiffs believed that the parties were still engaged in the required meet-and-confer process, and Plaintiffs were committed to trying to resolve both parties' outstanding discovery-related issues before burdening the Court. It appears TRB unilaterally opted to discontinue meet-and-confer efforts and seek Court involvement.

In addition to the issues raised by Defendant in the Discovery Letter, Plaintiffs long ago identified numerous deficiencies in Defendant's responses to Plaintiffs' discovery requests. And, for many weeks, Plaintiffs have been attempting to resolve those deficiencies without Court involvement – to no avail.

Plaintiffs are willing to address these discovery issues with the Court; however, Plaintiffs suggest that the Court direct the parties to continue their meet-and-confer efforts through the end of this week. Then, any unresolved issues that still remain can be addressed in a telephone conference with the Court on July 25 (or another time that is convenient for the Court).

### 2.    Defendant's Deficient Discovery Responses

Counsel for Defendant's decision to rush to the Court without continuing in good faith to confer is troubling. Nevertheless, if the Court would prefer to address the issues in Defendant's Discovery Letter now, Plaintiffs respectfully request that the Court also address the following deficiencies in Defendant's discovery responses:

ATLANTA  AUGUSTA  CHARLOTTE  DALLAS  DENVER  LOS ANGELES  NEW YORK  RALEIGH  SAN DIEGO  SAN FRANCISCO
SEATTLE  SHANGHAI  SILICON VALLEY  STOCKHOLM  TOKYO  WALNUT CREEK  WASHINGTON  WINSTON-SALEM

Exhibit Q - Page 1 of 14

Honorable District Judge Michael H. Simon
July 18, 2016
Page 2

### a. Deficient Production of Electronically Stored Information

Six months ago, Plaintiffs served a comprehensive set of 90 document requests on Defendant (the "First Requests"). In May, Plaintiffs served another 33 document requests on issues relating to adidas's remedies, including injunctive relief, damages, and disgorgement of Defendant's profits (the "Second Requests").

Defendant recently disclosed in publicly filed documents that it achieved $90 million in wholesale revenue in the U.S. in 2014. Based on adidas's investigation, Defendant's sales have increased substantially over the intervening two years. Despite what is clearly a sizeable business selling product through major national retailers, with fourteen different licensees that use Defendant's trademark to sell footwear and apparel, Defendant has produced a grand total of **381** emails.[1]

adidas repeatedly has requested Defendant to supplement its production to produce all responsive electronically stored information ("ESI"), but Defendant has not done so. Accordingly, Defendant should be compelled to produce all ESI responsive to both the First Requests and Second Requests

### b. Failure to Produce Any Documents Responsive to 66 Requests

On June 28, Plaintiffs sent Defendant a list of 33 of the specific requests for production included in the First Requests for which Defendant had not yet produced *any* documents (including but not limited to ESI).[2] In addition, Defendant has still not produced a *single* document responsive to the Second Requests.[3] In short, Defendant has not produced any documents responsive to 66 of Plaintiffs' document requests.

Defendant claims broadly that it has produced documents responsive to some of the First Requests, but refuses to identify a single bates number in support of this claim. Defendant claims that no responsive documents exist to some of the First Requests, but has only identified *one* such specific request for production that supposedly falls into this category. Thus, Plaintiffs cannot distinguish between the requests for production as to which Defendant has failed to produce documents compared to those as to which Defendant purportedly does not have responsive documents without Defendant amending its responses.

In addition, Defendant responded to several of the First Requests by noting that it would produce documents from its predecessor-in-interest. But, Defendant has not done so.

Plaintiffs request that Defendant be compelled: (a) to amend its responses to indicate clearly if responsive documents do not exist; (b) to immediately produce responsive documents,

---

[1] Making matters worse, many of these emails are simply adidas and Reebok marketing emails that Defendant receives by subscription. So, many of the very few emails that Defendant has produced are emails that already were in adidas and Reebok's possession.
[2] A copy of this list is attached as **Exhibit 1** to this letter.
[3] A copy of the Second Requests is attached as **Exhibit 2** to this letter.

Honorable District Judge Michael H. Simon
July 18, 2016
Page 3

including ESI, to all other of the 66 outstanding Requests; and (c) to supplement its production to produce responsive documents from Defendant's predecessor-in-interest.

### c. Failure to Comply With Properly Served Subpoenas

As noted above, Defendant licenses the infringing RBX mark to fourteen (14) third-party licensees, which, in turn, advertise and sell a wide range of infringing footwear and apparel. In April and early May, Plaintiffs properly served subpoenas on each of these licensees pursuant to Fed. R. Civ. P. 45.[4] Counsel for Defendant (and specifically Ms. Marsh, who authored the Discovery Letter) represents each of these licensees. Despite having received the subpoenas *months* ago, none of the licensees has responded to the subpoena served on it, i.e., none of the licensees has produced a single document or moved to quash the subpoena.

Plaintiffs conferred at length with the licensee's counsel regarding the scope of the subpoenas and repeatedly has asked for responsive documents, but counsel has refused. Without any legal authority, defense counsel (and counsel for the licensees) has taken the untenable position that none of the licensees need respond to the properly served subpoenas because Plaintiffs have moved to amend the Complaint to add them as defendants.

The licensees should be compelled to produce responsive documents and identify dates on which representatives are available for depositions.[5]

### 3. A Brief Response to Defendant's Discovery Letter

#### a. Should Plaintiffs Be Required to Search for and Produce 15-Year-Old Documents?

Defendant has objected to Plaintiffs' five-year temporal limitation on their discovery responses, instead asking the Court to compel Plaintiffs to search for and produce all responsive documents going back fifteen years.

At the outset, three issues bear highlighting:

(1) Plaintiffs already have produced nearly 30,000 documents comprising over 100,000 pages. Plaintiffs anticipate producing an additional 49,000 responsive documents this week and more the following week. This substantial production comprises documents *within* Plaintiffs' five-year time limitation. Defendant repeatedly has complained about the quantity of responsive documents that have been produced in response to Defendant's broad document requests, even asserting at one point that it intended to bill Plaintiffs for Defendant's costs

---

[4] These licensees are the same entities that Plaintiffs seek to add as defendants in Plaintiffs' pending Motion for Leave to File the First Amended Complaint (i.e. the "Licensee Defendants") (ECF No. 46).

[5] As noted in Plaintiffs' pending motion for leave to amend, if the Court grants the motion and adds the licensees as defendants, then Plaintiffs have agreed to treat the subpoenas as requests for production and deposition notices under Federal Rules of Civil Procedure 34 and 30, respectively

Honorable District Judge Michael H. Simon
July 18, 2016
Page 4

    (2)    Plaintiffs' document-retention policy provides that very few categories of documents are retained beyond six years and even fewer categories are retained for ten years. Most of the handful of categories that are retained beyond ten years are not relevant or responsive (e.g., human-resources files, merger and acquisition documents, and articles about the history of the company). As a practical matter, therefore, Defendant essentially is asking Plaintiffs to incur substantial expense to search for old documents that likely were destroyed long ago (and well before this litigation began) pursuant to the companies' document retention policy, presumably in an effort to obtain random documents that were inadvertently retained in contravention of the companies' policy.

    (3)    Plaintiffs have produced copies of their product catalogs – showing use of their respective trademarks on footwear and apparel – dating back more than ten years. adidas has made available to Defendant hard copies of its catalogs going back into the 1970s, and Reebok has produced catalogs dating back to 2002.

Defendant argues that the basis for its fifteen-year demand is related to Defendant's claim that Reebok abandoned its RBK mark in 2007.[6] To understand the flaw in Defendant's argument, one must consider the elements of a trademark-abandonment claim: (1) complete non-use of the mark; and (2) a subjective intent by Reebok not to resume use of the mark. *See Herb Reed Enters. v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247–48 (9th Cir. 2013) (noting that abandonment "must be strictly proved" and that "[e]ven a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith"); *see also* 15 U.S.C. § 1127 (noting that a presumption of abandonment does not arise until non-use occurs for three consecutive years); *Electro Source, LLC v. Brandess-Kalt-Aetna Grp.*, 458 F.3d 931, 935–941 (9th Cir. 2006).

Reebok owns two valid and incontestable trademark registrations covering the RBK mark (Reg. Nos. 3,234,100 & 3,074,802). Moreover, Reebok has produced documents (including catalogs, photographs, advertisements, etc.) to Defendant showing that Reebok has used the RBK mark over the past decade and, indeed, *continues to use the mark today*. Thus, even if Reebok reduced its use of the mark in 2007, its continued use over the intervening decade clearly establishes that Reebok did not cease use and did not have the requisite subjective intent not to resume its use.

It is also significant that Defendant represented to the Patent & Trademark Office that it began using its infringing RBX mark in <u>July 2012</u>. Plaintiffs' five-year time limitation on

---

[6] Despite Plaintiffs' difficultly to understand Defendant's insistence on receiving documents dating back fifteen years, Plaintiffs agreed to review a list of documents that Defendant provided and determine if there was a basis for compromise on any category. Plaintiffs provided a response to each of the document categories identified by Defendant on June 28, but counsel for Defendant never set up a time to discuss the matter further.

Honorable District Judge Michael H. Simon
July 18, 2016
Page 5

document production includes documents dating back to early 2011 – more than a year *before* Defendant began using the RBX mark.

    For all of these reasons, Defendant's demand for fifteen-year-old documents is designed exclusively to impose an unnecessary burden and expense on Plaintiffs and is not designed to acquire relevant information. The fact is that Plaintiffs have set reasonable limitations on the temporal scope of their document productions, and Defendant's proposal is not proportional to the needs of the case.

    **b.    Should Plaintiffs Produce European Documents Never Transmitted to a U.S. Business Person?**

    Defendant's second demand is that Plaintiffs search for responsive documents from European-based employees of Plaintiffs.

    This is a trademark infringement case involving *only* the use of Plaintiffs' and Defendant's respective marks *in the United States*. While Defendant is correct that the parent company of adidas and Reebok is in Germany, the only documents relevant to the claims and defenses in this case would be documents (including emails) sent to someone involved in the U.S. business of Reebok or adidas. And, because relevant custodians in the U.S. were identified, and their data, documents, and emails were captured, all relevant foreign-originating materials were already captured and included in Plaintiffs' document production.

    A separate and further collection of documents from European-based custodians that were not sent to individuals involved in the U.S. business is not calculated to obtain relevant information and is not proportional to the needs of the case.

    We appreciate the Court's time and attention to this matter.

                               Sincerely,

                                 R. Charles Henn Jr.

cc:    Charles. H. Hooker III, Esq.
        Stephen Feldman, Esq.
        Michelle Mancino Marsh, Esq.
        Lindsay Korotkin, Esq.
        Kenneth R. Davis, Esq.
        Parna Mehrbani, Esq.

**Exhibit 1**

Specific Requests from Plaintiffs' First Set of Requests

**adidas Document Request No. 2:** Documents that refer or relate to TRB's design, selection, or adoption of any Disputed Three-Stripe Design

**adidas Document Request No. 4:** Documents that refer or relate to TRB's design, selection, or adoption of the RBX Logo.

**adidas Document Request No. 5:** Documents sufficient to identify any alternative designs considered by TRB, whether or not adopted, in connection with the process that resulted in the adoption of the RBX Logo.

**adidas Document Request No. 6:** Documents that refer or relate to TRB's design, selection, or adoption of the RBX Mark.

**adidas Document Request No. 7:** Documents sufficient to identify any alternative designs considered by TRB, whether or not adopted, in connection with the process that resulted in the adoption of the RBX Mark.

**adidas Document Request No. 14:** Documents sufficient to identify the date of first sale by TRB of any product bearing a Disputed Three-Stripe Design.

**adidas Document Request No. 15:** Documents sufficient to identify the date of first sale by TRB of each Disputed Product.

**adidas Document Request No. 31:** Documents that refer or relate to TRB's communications with Seduka, LLC concerning any of the Plaintiffs or Plaintiffs' Marks.

**adidas Document Request No. 32:** Documents that refer or relate to TRB's communications with One Step Up, Ltd. or Harry Adjmi concerning any of the Plaintiffs or Plaintiffs' Marks.

**adidas Document Request No. 33:** Documents that refer or relate to TRB's communications with United Legwear Co., LLC concerning any of the Plaintiffs or Plaintiffs' Marks.

**adidas Document Request No. 34:** Documents sufficient to identify the demographic characteristics of typical or target consumers (*i.e.*, end users) of each Disputed Product.

**adidas Document Request No. 37:** Documents that refer or relate to any research (including focus groups, polls, surveys, interviews, and market analysis) that TRB conducted or had conducted concerning any Disputed Three-Stripe Design.

**adidas Document Request No. 38:** Documents that refer or relate to any research (including focus groups, polls, surveys, interviews, and market analysis) that TRB conducted or had conducted concerning the RBX Logo.

**adidas Document Request No. 61:** Documents that refer or relate to adidas's Three-Stripe Mark (*see, e.g.*, Complaint ¶¶ 20–33, Exs. 1–13) or stripes on adidas apparel or footwear.

**adidas Document Request No. 62:** Documents that refer or relate to adidas's Badge of Sport (*see, e.g.*, Complaint ¶¶ 34–35, Ex. 14.

**adidas Document Request No. 63:** Documents that refer or relate to Reebok's RBK Mark (*see, e.g.*, Complaint ¶¶ 48–55, Exs. 19–21).

**adidas Document Request No. 67:** Documents sufficient to identify any elements of cost or deduction claimed by TRB under 15 U.S.C. § 1117.

**adidas Document Request No. 70:** Documents that refer or relate to any dispute between TRB and Seduka, LLC involving the RBX Logo or the RBX Mark, including any documents produced by TRB in discovery in such a dispute.

**adidas Document Request No. 71:** Documents that refer or relate to any communications between Eli Yedid and Joe or Michael Dahan that refer or relate to the RBX Logo, the RBX Mark, or any of Plaintiffs' Marks.

**adidas Document Request No. 72:** Documents that refer or relate to any loss, destruction, deletion, or purging of TRB's communications or other documents since February 18, 2015.

**adidas Document Request No. 75:** Documents that refer or relate to TRB's assertion that "Plaintiffs' claims are barred in whole or in part by the applicable two year statute of limitations in the state of Oregon and any other applicable statute of limitations.."

**adidas Document Request No. 76:** Documents that refer or relate to TRB's assertion that "Plaintiffs' claims are barred in whole or in part due to waiver."

**adidas Document Request No. 77:** Documents that refer or relate to TRB's assertion that "Plaintiffs' claims are barred in whole or in part pursuant to the doctrine of laches."

**adidas Document Request No. 78:** Documents that refer or relate to TRB's assertion that "Plaintiffs' claims are barred in whole or in part due to their unclean hands."

**adidas Document Request No. 79:** Documents that refer or relate to TRB's assertion that "Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel."

**Adidas Document Request No. 80:** Documents that refer or relate to TRB's assertion that "Plaintiffs' claims are barred in whole or in part by the doctrine of acquiescence."

**adidas Document Request No. 81:** Documents that refer or relate to TRB's assertion that "Plaintiffs' state law dilution claims are barred because they are preempted by federal law and TRB's ownership of federal trademark registrations."

**adidas Document Request No. 82:** Documents that refer or relate to TRB's assertion that "Plaintiffs have failed to mitigate their damages, if any."

**adidas Document Request No. 83:** Documents that refer or relate to TRB's assertion that "Plaintiffs would be unjustly enriched if allowed to recover on their Complaint."

**adidas Document Request No. 84:** Documents that refer or relate to TRB's assertion that "Plaintiffs have used their trademark registrations to improperly and unfairly promote a monopoly and restrict competition, and therefore should be denied enforcement of any purported rights therein."

**adidas Document Request No. 85:** Documents that refer or relate to TRB's monitoring of its websites for visits, hits, or traffic from users or IP addresses at Plaintiffs or the law firms of Kilpatrick Townsend & Stockton LLP or Perkins Coie LLP.

**adidas Document Request No. 86:** Documents that refer or relate to communications between TRB and any Third Party regarding this civil action.

**adidas Document Request No. 88:** Documents sufficient to identify each Person that TRB may call as a fact witness at any hearing or at the trial of this civil action.

**Exhibit 2**

## III.  DOCUMENT REQUESTS

91. Documents sufficient to identify the article, style, SKU, or other identifying number for each Disputed Product.

92. Documents sufficient to identify TRB's competitors with regard to sales of Disputed Products.

93. Documents that refer or relate to any research concerning the U.S. market for athletic footwear, including documents that refer or relate to market size, TRB's market share, competitor's market share, market potential, market segments, and/or current or anticipated trends that may impact demand.

94. Documents that refer or relate to any research concerning the U.S. market for athletic apparel, including documents that refer or relate to market size, TRB's market share, competitor's market share, market potential, market segments, and/or current or anticipated trends that may impact demand.

95. Documents that refer or relate to consumer opinion or perception of athletic footwear, including trends, factors that influence purchasing decisions, the role and importance of brand names, and desired attributes.

96. Documents that refer or relate to consumer opinion or perception of athletic apparel, including trends, factors that influence purchasing decisions, the role and importance of brand names, and desired attributes.

97. Documents that refer or relate to any research, including studies or surveys, concerning the price elasticity of demand for athletic footwear.

5- PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Perkins Coie LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2222
Fax:  503.727.2222

Exhibit Q - Page 11 of 14

98. Documents that refer or relate to any research, including studies or surveys, concerning the price elasticity of demand for athletic apparel.

99. Any strategic business plans that refer or relate to Disputed Products.

100. Any marketing plans that refer or relate to Disputed Products.

101. Documents that refer or relate to forecasts or projections of sales, revenue, or profit for the Disputed Products.

102. Documents sufficient to identify all revenues earned by TRB (or any business unit of TRB) in connection with the Disputed Products.

103. Documents sufficient to identify all costs or expenses – whether fixed or variable – incurred by TRB (or any business unit of TRB) in connection with the Disputed Products, including profit and loss statements.

104. Documents sufficient to identify the profit margin realized by TRB (or any business unit of TRB) in connection with the Disputed Products, including contribution margin statements.

105. Documents sufficient to identify the net profits earned or the net losses suffered by TRB (or any business unit of TRB) in connection with the Disputed Products, including income statements.

106. Documents sufficient to show (i) the number of units and (ii) the dollar value of Disputed Products returned to TRB. If available, please produce the information by month, by year, and by Customer for each Disputed Product.

6- PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Perkins Coie LLP**
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2222
Fax: 503.727.2222

Exhibit Q - Page 12 of 14

107. Documents sufficient to show the discounts or allowances applied by TRB to the sales price of any of the Disputed Products. If available, please produce the information by month, by year, and by Customer for each Disputed Product.

108. Documents sufficient to identify TRB's monthly net sales by Customer for each Disputed Product.

109. Documents sufficient to identify TRB's annual net sales by Customer for each Disputed Product.

110. Documents that refer or relate to the value or valuation of the RBX Logo.

111. Documents that refer or relate to the value or valuation of the RBX Mark.

112. Documents that refer or relate to the value or valuation of a Disputed Stripe Design.

113. Documents that refer or relate to the value or valuation of any intangible asset(s) owned or licensed by TRB -- other than the Disputed Marks -- used on the Disputed Products.

114. Documents that refer or relate to the value or valuation of any of Plaintiffs' Marks.

115. Documents that refer or relate to TRB's efforts to account for the intangible value of the RBX Logo, including goodwill.

116. Documents that refer or relate to TRB's efforts to account for the intangible value of the RBX Mark, including goodwill.

117. Documents that refer or relate to TRB's efforts to account for the intangible value of any Disputed Stripe Design, including goodwill.

7- PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Perkins Coie LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2222
Fax: 503.727.2222

Exhibit Q - Page 13 of 14

118. Documents that refer or relate to TRB's efforts to account for the intangible value of any of Plaintiffs' Marks, including goodwill.

119. Documents that refer or relate to TRB's approval of the appearance, design, or placement by a Licensee of one or more of the Disputed Marks on a Disputed Product.

120. Documents that refer or relate to TRB's approval of the appearance, design, or placement by a Licensee of one or more of the Disputed Marks on packaging, labels or tags for a Disputed Product.

121. Documents that refer or relate to TRB's disapproval of the appearance, design, or placement by a Licensee of one or more of the Disputed Marks on a Disputed Product.

122. Documents that refer or relate to TRB's disapproval of the appearance, design, or placement by a Licensee of one or more of the Disputed Marks on packaging, labels or tags for a Disputed Product.

123. Documents that refer or relate to TRB's efforts to review, monitor, or control the quality of Disputed Products designed, manufactured, produced, distributed, offered for sale or sold by Licensees.

124. Documents regarding the purchase, transfer of assets, merger, or acquisition of Rugged Bear by TRB, including any due diligence concerning the RBX Mark or the RBX Logo.

8- PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Perkins Coie LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2222
Fax: 503.727.2222

Exhibit Q - Page 14 of 14