**Chollet, Nicki**

---

| | |
|---|---|
| **From:** | Hooker, Charles |
| **Sent:** | Tuesday, September 20, 2016 9:39 AM |
| **To:** | 'mary_austad@ord.uscourts.gov' |
| **Cc:** | Henn, Charlie; Chollet, Nicki; Stephen Feldman; Davis K; TRB Adidas; M Ehrbanip; Alissa Friedman |
| **Subject:** | adidas America, Inc. et al. v. TRB Acquisitions LLC et al., Case No. 3:15-cv-02113-SI |
| **Attachments:** | 20160916091017484.pdf; 2016.09.14_ Plaintiffs_ Specially Set Deposition of TRB Acqusition LLC P....pdf |

Dear Ms. Austad,

We write in response to Ms. Friedman's request for a telephone conference with the Court. In addition to the issues raised in Ms. Friedman's e-mail, adidas and Reebok (collectively, "Plaintiffs") request that the Court address continued deficiencies in Defendants' document production as well as Defendants' failure to meaningfully participate in discovery. Counsel for Plaintiffs will make themselves available for a telephone conference at the Court's convenience, and, in aid of such a conference, provide the following responses and background, which we request you provide to Judge Simon in advance.

**Plaintiffs' Depositions of the Licensee Defendants**

*Briefly stated, Defendants flatly mislead the Court by accusing Plaintiffs of failing to follow the Local Rules and Rule 45 in noticing and subpoenaing the Licensee Defendants' depositions. Plaintiffs' counsel repeatedly conferred with Defendants' counsel and—over one month ago—noticed and properly subpoenaed deposition dates which were provided to Plaintiffs <u>by Defendants' counsel</u>. Before, during, and after the mediation, Plaintiffs' counsel could not have been more clear that Plaintiffs were not in any way interested in staying this case, delaying discovery, or putting off the parties' noticed depositions. Defendants' comments to the contrary are false.* A more complete explanation follows.

Although Defendants have waited until the eleventh hour to bring to the Court's attention their concern over depositions of the Licensee Defendants, Plaintiffs long ago noticed and subpoenaed these depositions after meeting and conferring with opposing counsel regarding dates. Specifically, as far back as April 22, May 2, and May 10, 2016, Plaintiffs served document and deposition subpoenas on the then third-party Licensees. These subpoenas fully complied with Rule 45; they were properly served on each Licensee and were accompanied with the requisite witness fee. (If it would be helpful to the Court, Plaintiffs can supply all affidavits of service.) Promptly after the Licensees became Defendants in this case, the Plaintiffs agreed to convert the third-party subpoenas into document requests and deposition notices and, with the Court's blessing, Plaintiffs did so. On July 29, and consistent with Local Rule 30-2, counsel for Plaintiffs sent the deposition notices to Defendants' counsel, with a request that Defendants' counsel confer with their clients regarding the dates of the depositions. (The accusation in Ms. Friedman's e-mail that Plaintiffs did not comply with Local Rule 30-2 is false.)

Shortly thereafter, on August 2, counsel for Plaintiffs followed up with Defendants' counsel, stating that Plaintiffs wanted to have depositions scheduled by August 15. Thereafter, counsel for the parties conferred by telephone on August 15 regarding dates for taking the Licensee Defendants' depositions. (Notably, at no time in any of these communications between counsel did Defendants' counsel raise any issue with, much less object to, service of the deposition subpoenas or notices.)

During the August 15 call, Ms. Friedman confirmed that an attorney and a witness were available on certain specified dates. Although counsel for Plaintiffs asked during the August 15 call, which particular Licensee Defendant was available on which date, neither Ms. Friedman nor any of the other defense attorneys were willing to provide this specific

1

information. Accordingly, based on the representation made by Ms. Friedman during the August 15 call that an attorney and a witness were available on certain specified dates, counsel for Plaintiffs issued revised subpoenas and deposition notices to the Licensee Defendants on August 17. (Again, these subpoenas fully complied with Rule 45.) It was imperative that the depositions of the Licensee Defendants got scheduled without further delay in light of the overall number of Licensee Defendants (i.e., 14), the total number of depositions to be scheduled in this case, and the upcoming November 11 close of discovery. Significantly, these subpoenas and deposition notices were served *over one month ago* on August 17, and for the next *three weeks* counsel for Plaintiffs heard nothing further from Defendants' counsel. As far as Plaintiffs understood, the deposition dates, as set forth in the properly issued subpoenas and deposition notices, were set. And Defendants' prolonged silence on the subject simply confirmed this to be so.

Not until a separate meet and confer on September 9, did Defendants' counsel comment on or raise any concern over the subpoenaed and noticed deposition dates. Following that conference, Plaintiffs' counsel repeatedly stated that—in light of the fast approaching close of discovery, among other issues—Plaintiffs need to proceed with the depositions. Notwithstanding the clarity of Plaintiffs' position, Defendants waited until September 16 even to propose specific, alternate deposition dates for each of the Licensee Defendants. And the proposed alternate dates are infeasible because they cram a dozen Licensee Defendants' depositions into the very tail end of the discovery period, thereby foreclosing the opportunity for any follow-up discovery, which is highly likely. Moreover, Defendants waited until the eve of the depositions to raise their concerns to the Court, knowing full well that Plaintiffs' counsel already has made travel arrangements (Mr. Henn is flying to New York today for the first deposition) and other preparations for taking the depositions. (The Court also should keep in mind that counsel for Plaintiffs put the Licensee Defendants (as well as their counsel) on notice well over *four months ago* that Plaintiffs intended to take the deposition of each of the Licensee Defendants, yet it was not until September 16 that defense counsel supposedly was able to provide specific dates for the Licensee Defendants to be deposed; and those dates are still weeks away. Specifically, the *earliest* date for a Licensee deposition proposed by Defendants' counsel is not until October 14.)

Finally, Ms. Friedman's account of the September 6 mediation and surrounding events is not accurate. Specifically, at no point during the mediation (or at any other time) did counsel for Plaintiffs withdraw the subpoenas or notices or otherwise suggest the depositions were not going forward. In fact, throughout the scheduling of the mediation—despite Defendants' repeated requests for a joint motion to stay the litigation—Plaintiffs were clear that they were not interested in stalling discovery only to have it restart in the midst of the holidays. Particularly when viewed in conjunction with Defendants' document-production deficiencies, Defendants' actions plainly are designed to delay, waste Plaintiffs' resources, and harass the Plaintiffs and their counsel.

**Defendants' Proposed Motion to Compel Regarding Plaintiffs' Document Collection and Production**

*Defendants' ongoing effort to manufacture a discovery dispute surrounding the collection of documents from the European Plaintiffs is a fishing expedition of truly epic proportions aimed at supporting Defendants' wholly untenable "unclean hands" and "trademark misuse" defenses, which are barred by the Noerr-Pennington doctrine. See Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 109). Defendants' efforts further are designed to harass Plaintiffs and distract this Court from the rampant actual confusion being caused by Defendants' ongoing use of egregiously infringing marks.*

Plaintiffs have no objection to Defendants filing a motion to compel concerning Plaintiffs' document collection efforts—both with respect to the European Plaintiffs and the temporal issue. Plaintiffs welcome the opportunity to respond and respectfully submit that providing the Court with written submissions on these topics will provide a more efficient and complete means of addressing these issues than arguing them prematurely during a telephone conference.

Succinctly stated, Plaintiffs have explained to Defendants:
- Plaintiffs object to the scope of Defendants' 149 document requests to adidas insofar as they seek documents from European custodians which do not relate to U.S. trademark rights, the use of marks in the United States, adidas's conduct or enforcement efforts in the United States, or infringement by others in the United States. Defendants have refused to narrow the scope of their requests accordingly.

- Similarly, Plaintiffs object to the scope of Defendants' 167 document requests to Reebok along the same lines. There too, Defendants refuse to narrow the scope.
- Since the last conference with the Court, Plaintiffs have undertaken efforts to search for non-privileged, non-duplicative responsive documents in the possession, custody, or control of any of the European Plaintiffs. To date, Plaintiffs have not uncovered any such documents. In response to a motion to compel from TRB, Plaintiffs will be prepared to file declarations supplying further details.
- Regarding the temporal issue, Plaintiffs did not restrict the collection of documents stored in Plaintiffs' custodians' e-mail systems or other files by date.
- Documents which Defendants nakedly speculate and hypothesize *might* exist either simply never existed or may have been long ago purged pursuant to the Plaintiffs' document retention policy.
- Additionally, all employees are limited in the amount of data they may maintain in their e-mail system. As a result, to avoid having their e-mail shut down, employees periodically purge old e-mails (and their attachments), which are not archived by adidas or Reebok. In light of this policy, emails stretching far back in time were in all likelihood purged long ago.
- Plaintiffs offered to compromise on the temporal restriction with respect to Plaintiffs' settlement and license agreements by agreeing to produce such agreements going back 10 years. Defendants rejected this offer.

**Depositions of Plaintiffs' Witnesses and Third-Party Licensees**

On around August 8, Defendants requested dates for Plaintiffs' witnesses. Shortly thereafter, we provided dates for each witness (with three exceptions, whose dates we subsequently provided). After we provided dates for our witnesses, Defendants noticed depositions *on those dates*. These witnesses then blocked their schedules and made themselves available on those dates. Plaintiffs now claim they are unable to take the depositions on these dates due to their incorrect perception that supposedly unproduced documents will come to light and necessitate continuances of these depositions. Defendants are wrong. In addition to the reasons above, the search for documents from European Plaintiffs has no impact on any of the already-noticed depositions, as none of these U.S.-based witnesses are custodians of such documents.

Between August 12 and 15, Defendants also served Plaintiffs' licensees with document and deposition subpoenas— which we note set deposition dates despite Defendants' counsel's failure to confer on these dates. Counsel for Plaintiffs were retained by the third-party licensees, and we subsequently provided dates for the depositions of the third parties. We fail to understand why Defendants now refuse to take the previously scheduled depositions of Plaintiffs' third-party licensees, on whom Defendants served subpoenas. To argue that any documents that may be produced from European-based custodians would impact the depositions of Plaintiffs' third-party licensees strains credulity. Again, Defendants are engaged in dilatory tactics aimed at delaying this case, prolonging Defendants' infringing sales, and harassing Plaintiffs and their counsel.

**Defendants' Desire for an Apex Deposition of Mark King, President of adidas Group North America**

Incredibly, despite their refusal to proceed with the other depositions of Plaintiffs' witnesses, Defendants press the Court to compel an entirely unnecessary and unwarranted deposition of Mark King. Setting aside the fact that Defendants failed entirely to confer with Plaintiffs' counsel regarding such a deposition, Mr. King is a classic apex witness. Courts routinely protect such witnesses from deposition notices because such notices hold a high potential for harassment and undue burden. Indeed, courts require that a party seeking to depose an apex witness show that (1) the deponent has "unique first-hand, non-repetitive knowledge of the facts at issue" and that (2) the party seeking the deposition "has exhausted other less intrusive discovery methods." *Rookaird v. BNSF Ry. Co.*, No. C14-176RSL, 2015 WL 11233096, at *1 (W.D. Wash. July 8, 2015). Defendants can make neither showing.

Defendants seek to depose Mr. King regarding his knowledge of the Modell's Emails. But, as Plaintiffs repeatedly have explained, and as the attached declaration makes clear, Mr. King *has no such knowledge*. *See* King Decl. Para. 4 – 7. Moreover, outside of recent discussions with counsel regarding this case, Mr. King has "*never communicated with anyone regarding TRB Acquisitions, LLC or its RBX logo.*" *Id.* Para. 8 (emphasis added).

Additionally, the Modell's Emails are relevant to this case only inasmuch as they relate to Plaintiffs' decision to bring this action. Even if Mr. King had knowledge regarding Plaintiffs' decision to bring this action, and he does not, his purported knowledge would not be "unique." Rather, every member of the adidas and Reebok in-house legal team who has worked on this case could testify as to that issue, as could many other of Plaintiffs' employees. Defendants, of course, already have already noticed such depositions, but rather than pursue them, Defendants have set their sights on harassing adidas's President.

Defendants' failure to pursue less intrusive means of discovery before noticing Mr. King's deposition is egregious and the notice should be quashed. *Robinett v. Opus Bank*, No. C12-1755MJP, 2013 WL 5850873, at *6 (W.D. Wash. Oct. 30, 2013) (denying apex deposition because defendants had not provided "any proof that 'less intrusive means of discovery' had been tried without success"); *see also Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (quashing apex deposition because "the corporate deposition has not yet been taken, and it could satisfy some of plaintiffs' needs").

**Plaintiffs' Specially Set Deposition of TRB Pursuant to Fed. R. Civ. P. 30(b)(6)**

During the August 19th conference with the Court, the Court granted Plaintiffs a special 30(b)(6) deposition of TRB regarding its ESI and document collection and production efforts. After Plaintiffs' counsel repeatedly requested a date for this deposition, Defendants finally provided a date on September 16th. Plaintiffs agree to take this deposition on September 29 at 10:00 am at Arent Fox's offices.

After Defendants refused to produce a witness absent a 30(b)(6) witness with topics, Plaintiffs served the attached notice. Subsequently, Defendants have objected to topics 2, 3, and 4. Those topics are aimed at understanding the types of documents that exist in TRB's possession, custody, or control relevant to this dispute. Accordingly, Plaintiffs maintain that these topics are appropriate for this deposition and request the Court's assistance in adjudicating the scope of the deposition topics in advance of the September 29 deposition.

**Defendants' Document-Production Deficiencies**

Notwithstandings Mr. Reitter's representations to the Court during the August 19th telephone conference—where Mr. Reiter said "Your Honor, we will be producing documents on August 31"—the Licensee Defendants did not produce their documents by August 31. Nor have they provided a date certain by which their productions will be complete. In addition to these shortcomings, Plaintiffs raise the following issues.

<u>Redactions and the Failure to Produce in Color</u>

Despite having identical issues with TRB's production, the Licensee Defendants have produced improperly redacted documents. There is no indication that these redactions were made on the basis of privilege. Instead, the Licensee Defendants appear to have redacted documents on the basis of *non-responsiveness*. Nowhere in the Federal Rules of Civil Procedure are parties granted the power to unilaterally redact information from documents on the basis that particular portions of the document may be non-responsive. *See Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451-52 (D. Minn. 2011) ("It is rare that a document contains only relevant information. . . . Fed.R.Civ.P. 34 concerns the discovery of 'documents'; it does not concern the discovery of individual pictures, graphics, paragraphs, sentences, words within those documents."); *Archelormittal Cleveland Inc. v. Jewell Coke co., L.P.*, No. 1:10-CV-00362, 2010 WL 5230862, at *3 (N.D.Ohio Dec. 16, 2010) ("[T]he language of Rule 34 discusses production of 'documents,' rather than pages or sentences."); *In re FedEx Ground Package Sys., Inc.,* No. 3:05-MD-527 RM, 2007 WL 79312, at *5 (N.D. Ind. Jan. 5, 2007) ("[T]he Federal Rules provide no procedural device for unilateral redaction by a party and it is a procedure that is not favored . . . .").

The Licensee Defendants have an obligation to produce documents as kept in the ordinary course of business, with redactions permitted only in limited circumstances, such as a claim of privilege. *See Beverage Distrib., Inc. v. Miller Brewing Co.*, No. 2:08-cv-827, 2010 WL 1727640 at *4 (S.D.Ohio April 28, 2010) ("[R]edaction of otherwise discoverable documents is the exception rather than the rule . . . ."). Accordingly, redactions for non-responsiveness are an alteration of evidence, and are inappropriate, particularly when a comprehensive protective order is in place. *See Upton v. McKerrow*, No. 1:94-cv-353MHS, 1996, WL 193807, *5 (N.D.Ga. Feb. 20, 1996) (granting plaintiff's motion to compel, requiring defendant to produce unredacted copies of responsive documents); *see also David v. Alphin*, No.3:07cv11, 2010 WL 1404722, at *7–8 (W.D.N.C. Mar. 30, 2010) (court "troubled by wholesale unilateral red[a]ction of documents," especially where a protective order was in place); *Orion Powers Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301, at *2 (W.D.Pa. Sept. 30, 2008) (holding that redaction is not allowed under Rule 34).

Likewise, as Defendants know, the production of color documents is critical in this case. Nevertheless, the Licensee Defendants have failed to produce documents in color documents, including images of the Licensee Defendants' products. Plaintiffs request that the Court order the Licensee Defendants to cure these deficiencies.

    Deficiencies in Defendants' Document Production

TRB has failed to produce documents responsive to numerous document requests, or its productions are severely deficient. Despite our pointing to specific requests for which no or very few documents have been produced, Defendants persist in their systematic failure to abide by their discovery obligations.

- Document Requests for which TRB has produced *no* documents: Requests 2, 14, 18, 26, 28, 31, 34-40, 44, 61-63, 67, 70-72, 75-90, 93-109, 112-124.
- Document Requests for which TRB's production is deficient: Requests 4-13, 15, 17, 23-25, 27, 29, 32-33, 41-42, 58-60, 64-66, 68-69, 73-74, 92.

Similarly, the Licensee Defendants have produced a paucity of documents, despite having more than four months to collect documents responsive to Plaintiffs' document requests. Below is a list of the document requests for which the Licensee Defendants have failed to produce any responsive documents:

- Requests for which Active Basics has Produced No Documents: Requests 1, 3, 5-12, 14-16, 18-19, 22, 24-41
- Requests for which CDB Brands has Produced No Documents: Requests 1, 3, 5-12, 14-16, 18-19, 21-41
- Requests for which Cutie Pie Baby has Produced No Documents: Requests 1, 3, 5-12, 14, 16, 18-19, 22, 24-41
- Requests for which Elite Performance has Produced No Documents: Requests 1, 3, 5-12, 14, 16, 18-41
- Requests for which Gina Group has Produced No Documents: Requests 1, 3, 5-12, 14, 16, 18-19, 22, 24-41
- Requests for which IMX has Produced No Documents: Requests 1, 3, 5-12, 14, 16, 18-19, 22, 24-41
- Requests for which Kidz Concepts has Produced No Documents: Requests 1, 3, 5-12, 14, 16, 18-19, 22, 24-41
- Requests for which LA Kidz has Produced No Documents: Requests 1, 3, 5-12, 14-16, 18-19, 21-41
- Requests for which One Step Up has Produced No Documents: Requests 1, 3, 5-12, 14, 16, 18-19, 22, 24-41
- Requests for which Q4 Produced No Documents: Requests 1, 3, 5-12, 14, 16, 18-19, 22, 24-41
- Requests for which RBX.com LLC Produced No Documents: Requests 1, 3, 5-12, 14-41
- Requests for which SaraMax Produced No Documents: Requests 1, 3, 5-12, 14-41
- Requests for which United Legwear Produced No Documents: Requests 1, 3, 5-12, 14-16, 18-19, 22, 24-41
- Requests for which USPA d/b/a Concept One Produced No Documents: Requests 1, 3, 5-12, 14, 16, 18-19, 22, 24-41

There is no reason, particularly given how much time the Licensee Defendants have had, that their productions should be so severely deficient. *What is even more concerning is that each of the Licensee Defendants have failed to produce documents to the same requests*. Plaintiffs request that the Court order Defendants to cure their document-production deficiencies.

**Conclusion**

**The pattern of Defendants' discovery conduct appears to be aimed at (i) delaying this litigation to maximize the time in which Defendants may continue to profit from their infringing conduct, (ii) harassing Plaintiffs and their counsel, and (iii) distracting the parties and the Court from the pervasive actual confusion being caused by Defendants' uses of patently infringing marks.  Defendants' request to extend discovery results from these efforts and from their own negligence.  Defendants are well aware that Plaintiffs' witnesses will be hard pressed for availability during November and December—the height of the holiday season and a busy time for manufacturers and distributors of retail products.  Nevertheless, they seek to extend the discovery cut-off in such a way so as to, in all likelihood, cause the close of fact discovery to fall precisely within this window of time.  Defendants' request for an extension of fact discovery should be rejected, and the parties should be ordered to proceed with the depositions as scheduled.  If, upon proceeding in this manner, an extension is truly warranted, either or both parties may bring that need to the Court's attention.**

Thank you,
Charles Hooker

**Charles Hooker**
**Kilpatrick Townsend & Stockton LLP**
Suite 2800 | 1100 Peachtree Street NE | Atlanta, GA  30309-4528
office 404 815 6376 | cell 404 822 5338 | fax 404 541 3498
chooker@kilpatricktownsend.com | My Profile | vCard

---

**From:** Alissa Friedman
**Sent:** Monday, September 19, 2016 8:56 PM
**To:** 'mary_austad@ord.uscourts.gov'
**Cc:** Henn, Charlie; Hooker, Charles; Davis K; Chollet, Nicki; TRB Adidas; M Ehrbanip; Stephen Feldman
**Subject:** adidas America, Inc. et al. v. TRB Acquisitions LLC et al., Case No. 3:15-cv-02113-SI

Dear Ms. Austad:

We write on behalf of Defendants in the above-captioned action regarding a time-sensitive issue about the scheduling of depositions.  Can you please forward this request to Judge Simon and advise if he is available for a telephone conference with the parties?  We acknowledge that this is the type of issue that ordinarily can and should be resolved among the parties themselves – and have so advised Plaintiffs' counsel; nonetheless, we are compelled to seek the Court's intervention as our conferences with Plaintiffs' counsel have been unsuccessful.  The time sensitive nature of the first issue is described below.

In brief, counsel for Plaintiffs insists on taking depositions of the newly-joined licensee defendants beginning this Wednesday, September 21, despite our repeatedly advising that their selected dates are not available to either the witnesses or counsel and our provision of alternate dates for most of the licensee defendants before the scheduled close of discovery.  Plaintiffs appended Rule 45 subpoenas to their deposition notices without complying with the requirements of Rule 45, and argue that these subpoenas require the licensee defendants to appear on dates for which they are unavailable.  It is our view that these subpoenas are both unnecessary and improper, as this practice conflicts with the requirement of Local Rule 30-2 that counsel must make a good faith effort to confer with all counsel regarding a mutually convenient date, time, and place prior to service of a Notice of Deposition.

Before Plaintiffs' counsel e-mailed the combined Notices of Deposition and Subpoenas at issue, we had conferred with them about these potential deposition dates by phone; however, it is our understanding that those dates were never finalized.  This was in part because we were awaiting Plaintiffs' response to a pending question regarding the scheduling logistics (that is, whether Plaintiffs intended to depose two licensee parties per day, as was contemplated by Plaintiffs in their original subpoenas before the licensees were joined as parties).  Another reason these potential deposition dates were not finalized was that the parties had jointly

turned their attention to several other matters in this case, including a mediation that was conducted on September 6. In short, despite the dates being a work in progress, on August 17, Plaintiffs sent by e-mail the combined Notices of Deposition and Subpoenas containing deposition dates that had never been confirmed.

During the mediation on September 6, counsel for Plaintiffs acknowledged that we should all get our calendars together to finalize deposition dates in order to be sensitive to everyone's families, especially given the great deal of travel that would be required. Accordingly, on September 12, and as a follow up to the mediation, we e-mailed Plaintiffs' counsel that we would confer with our clients and respond with new deposition dates. After various e-mails between the parties, on September 15, Plaintiffs' counsel told us that they would consider new deposition dates. We provided those dates on September 16. Today, however, Plaintiffs' counsel rejected those dates and advised that they plan to proceed with their unilateral schedule, including a deposition *this Wednesday*. As we have tried to be cooperative by providing new deposition dates and resolve any misunderstanding to no avail, we regrettably must involve the Court given the short time between now and Wednesday. ***We request a telephone conference at the Court's earliest convenience.***

In addition, we would like to bring to the Court's attention two other issues. First, pursuant to the Court's directive during the August 19 telephone hearing and Plaintiffs' continued refusal to (a) search for, or produce, responsive documents from European-based custodians or (b) produce documents dating back beyond five years, Defendants will be making a motion to compel within the week to which Plaintiffs will have the opportunity to respond. If that motion is granted, Plaintiffs would have to undergo additional document searches and additional document productions, and defendants would then have to review such production. Given the time required for briefing and anticipated follow-up production, we think it is highly likely that Plaintiffs' discovery will not be complete by the current November 11 deadline for fact discovery. Moreover, as we have told Plaintiffs, defendants cannot begin to schedule depositions until Plaintiffs' document search and production has been completed, and we have had the opportunity to review it, *including* the production we anticipate will be required by the outcome of our motion to compel. Thus, we request that the Court also address the fact discovery deadline and the possibility of extending it, as the parties have likewise been unable to agree on this issue and a resolution may also alleviate the issues presented above regarding deposition scheduling.

Lastly, we have reached an impasse on another issue that may require a motion to compel. It has come to our attention that Mark King, President, North America at adidas Group, exchanged emails with one of their retailers, Modell's Sporting Goods, concerning TRB, the RBX mark, and Seduka, LLC during the time period relevant to this action, and which we believe is the genesis of this litigation. These emails are responsive to at least Request No. 48 of TRB's First Set of Requests For Documents to the adidas Plaintiffs and Request No. 17 of TRB's Fourth Set of Requests for Documents to the adidas Plaintiffs. Plaintiffs, however, have not yet produced any of those e-mails, or any other responsive documents from this US-based custodian. In response to our alerting them to this deficiency, adidas has stated that they:

> "[H]ave consulted with Mr. King, and he has no memory or record of ever receiving any emails from Modell's related to TRB or its RBX mark. As you are aware, Mr. King is the president of adidas America, and as such is an apex employee. Accordingly, we confirm he is not a custodian in this case and has not been identified in any interrogatory responses as he does not have any relevant information or knowledge regarding TRB or its infringing RBX mark."

The parties conferred on this issue on September 9, but Plaintiffs' counsel maintains their position. Accordingly, we also request the Court's assistance on this issue.

We are available for a conference call with the Court at its convenience to address these issues.

We thank the Court in advance for its attention to this matter and express our regrets at having to involve the Court in additional discovery issues, as we had hoped the parties could resolve these matters cooperatively.  If it would be helpful for the Court to see the prior detailed correspondence among the parties on these issues, we are happy to provide it.

Respectfully,

Alissa

**Alissa G. Friedman**
Associate

Arent Fox LLP | Attorneys at Law
1675 Broadway
New York, NY 10019-5820
212.484.3949  DIRECT | 212.484.3990 FAX
alissa.friedman@arentfox.com | www.arentfox.com

---

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

---

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

---

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.