IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.,** a Delaware corporation, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>**TRB ACQUISITIONS LLC,** a New York limited liability company, *et al.*,<br><br>    Defendants. | Case No. 3:15-cv-2113-SI<br><br>**OPINION AND ORDER ON PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEFENDANTS' FIFTH AND ELEVENTH AFFIRMATIVE DEFENSES** |

Stephen M. Feldman, PERKINS COIE LLP, 1120 N.W. Couch Street, Tenth Floor, Portland, OR 97209; R. Charles Henn Jr., Charles H. Hooker III, and Nichole D. Chollet, KILPATRICK TOWNSEND & STOCKTON LLP, 1100 Peachtree Street, Suite 2800, Atlanta, GA 30309. Of Attorneys for Plaintiffs.

Kenneth R. Davis II and Parna A. Mehrbani, LANE POWELL PC, 601 S.W. Second Avenue, Suite 2100, Portland, OR 97204; Michelle Mancino Marsh, Allen G. Reiter, Eric Roman, Lindsay Korotkin, Alissa G. Friedman, and Phaik Lin Goh, ARENT FOX LLP, 1675 Broadway, New York, NY 10019. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

In this lawsuit, three adidas-named entities (adidas America, Inc., adidas AG, and adidas

International Marketing B.V.) and two Reebok-named entities (Reebok International Ltd. and

Reebok International Limited) (collectively, "Plaintiffs") allege claims of trademark

infringement, unfair competition, trademark dilution, and deceptive trade practices against

Defendant TRB Acquisitions LLC and fourteen of TRB's licensees (collectively, "Defendants").

In Defendants' First Amended Answer, Affirmative Defenses, and Counterclaim, Defendants

assert "unclean hands" as their fifth affirmative defense and "trademark misuse" as their eleventh

affirmative defense. ECF 81 at 40, 43. Before the Court is Plaintiffs' Motion for Judgment on the

Pleadings as to Defendants' Fifth and Eleventh Affirmative Defenses. ECF 109. For the

following reasons, the Court grants the motion.

## STANDARD

Under Federal Rule of Civil Procedure 12(c), a motion for judgment on the pleadings is

"proper when the moving party clearly establishes on the face of the pleadings that no material

issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal

Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The

"allegations of the non-moving party must be accepted as true, while the allegations of the

moving party which have been denied are assumed to be false." *Id.* Additionally, an affirmative

defense is sufficiently pled if it "gives plaintiff fair notice of the defense." *Simmons v. Navajo

Cty.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827

(9th Cir. 1979) (per curiam)). "[T]he 'fair notice' required by the pleadings standards only

requires describing the defense in 'general terms.'" *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016,

1019 (9th Cir. 2015) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and

Procedure* § 1274 (3d ed. 1998)).

In resolving a motion under Rule 12(b)(6) or Rule 12(c), if a court considers matters

outside the pleadings the motion generally must be treated as one for summary judgment. Fed. R.

Civ. P. 12(d). A court may, however, consider "documents attached to the complaint, documents

incorporated by reference in the complaint, or matters of judicial notice—without converting the

motion . . . into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (in the context of a motion under Rule 12(b)(6)); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (noting that a court may consider matters of judicial notice in a resolving motion under Rule 12(c)). A court may also consider documents on which the complaint necessarily relies if the parties do not dispute the authenticity of the documents. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

## BACKGROUND

### A. The Trademarks

The adidas-named entities manufacture, market, advertise, promote, distribute, and sell footwear and apparel bearing the Three-Stripe trademark (the "Three-Stripe Mark"). The adidas-named entities also use a triangular logo that incorporates the Three-Stripe Mark (the "Badge of Sport Mark"). Plaintiff adidas AG is the owner of United States trademark registrations for several iterations of its Three-Stripe Mark. Plaintiff adidas International Marketing B.V. is the owner of trademark registrations for the Badge of Sport Mark.

The Reebok-named entities manufacture, market, advertise, promote, distribute, and sell footwear and apparel under the REEBOK trademark and the RBK trademark (the "RBK Mark"). Plaintiff Reebok International Limited ("Reebok UK") owns both the REEBOK trademark and the RBK Mark. Plaintiff Reebok International Ltd. ("Reebok USA") advertises and distributes all REEBOK-branded and RBK-branded products in the United States. Plaintiff adidas AG wholly owns Plaintiff Reebok USA, and Plaintiff Reebok USA wholly owns Reebok UK.

Defendant TRB owns all rights, interest, and title in and to the RBX trademark (the "RBX Mark"). TRB licenses the use of the RBX Mark to others, including the licensee defendants, in accordance with the terms of several license agreements. Plaintiffs allege, among

other things, that the RBX Mark infringes the Three-Stripe Mark, the Badge of Sport Mark, the

REEBOK trademark, and the RBK Mark.

**B.  Defendants' Fifth and Eleventh Affirmative Defenses**

As their fifth affirmative defense, Defendants allege that Plaintiffs' "unclean hands"

preclude their claims. Specifically, Defendants contend that Plaintiffs engaged in the following

conduct:

> (a) "attempting to prevent lawful competition in the marketplace and misusing their
>
> claimed intellectual property to acquire a monopoly in violation of U.S. antitrust
>
> laws" by (i) bringing frivolous lawsuits, and (ii) "exploiting" a 2008 favorable
>
> jury verdict;[1]
>
> (b) failing "to perform a reasonable pre-suit investigation";
>
> (c) "asserting cancelled or otherwise unenforceable trademark registrations";
>
> (d) failing to alert the Court to TRB's "valid federal trademark registrations for the
>
> RBX Mark"; and
>
> (e) conspiring with competitors Seduka, LLC, Hashem Group LLC, Joseph Dahan
>
> ("Seduka"), and Modell's Sporting Goods, Inc. in an attempt to "knock the RBX
>
> brand out of the marketplace for the benefit of Plaintiffs and/or these third
>
> parties."

ECF 81 at 40-41.

---

[1] Plaintiffs infer (and Defendants do not dispute) that this reference is to *adidas-America, Inc. v. Payless ShoeSource, Inc.*, a case in which a jury awarded adidas more than $300 million in damages for trademark and trade dress infringement, dilution, and related federal and state law claims. *See* Case No. 3:01-cv-1655-KI (D. Or. May 5, 2008) (ECF 861); *see also Payless*, 2008 WL 4279812 (D. Or. Sept. 12, 2008) (denying motions for judgment as a matter of law and denying motion for new trial conditioned on remittitur of punitive damages).

As their eleventh affirmative defense, labeled "trademark misuse," Defendants repeat these same five allegations of conduct and contend that Plaintiffs "used their trademark registrations to improperly and unfairly promote a monopoly and restrict competition." ECF 81 at 43-44.

## DISCUSSION

Plaintiffs argue they are entitled to judgment on the pleadings against Defendants' fifth and eleventh affirmative defenses because these defenses are precluded by the *Noerr-Pennington* doctrine.[2] In the alternative, Plaintiffs argue that even if these defenses were not barred by that doctrine, Defendants have failed sufficiently to plead these defenses.

Defendants respond that Plaintiffs' motion is premature because the parties are still undertaking discovery. Defendants also argue that their fifth and eleventh affirmative defenses are not subject to the *Noerr-Pennington* doctrine and even if they were, Plaintiffs' conduct constitutes "sham" litigation, which is an exception to that doctrine. Defendants further argue that they have adequately pleaded their defenses.[3]

---

[2] The *Noerr-Pennington* doctrine comes from *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

[3] Defendants also dispute that Plaintiffs adequately conferred, as required under Local Rule 7-1. Plaintiffs' counsel called Defendants' counsel, informed her that the *Noerr-Pennington* doctrine barred the unclean hands and trademark misuse affirmative defenses and directed Defendants' counsel to the *adidas v. Payless* case. Plaintiffs' counsel added that Plaintiffs intended to file their motion by the close of business unless Defendants agreed to withdraw the affirmative defenses. At close of business that day, Defendants' counsel responded in writing that she needed more information about the grounds for the motion. Plaintiffs' counsel reiterated that the defenses were barred by *Noerr-Pennington*. The demand by Plaintiffs' counsel that Defendants' counsel respond "by the close of business" does not appear to be warranted by any temporal exigency. Accordingly, it is inconsistent with the degree of professionalism expected by the Court. Although the Court will not deny Plaintiffs' pending motion on the grounds of inadequate conferral in this instance, going forward in this lawsuit, Plaintiffs must afford Defendants' counsel at least three business days to respond before Plaintiffs may file any motion other than a motion that presents a true emergency requiring expedited relief.

PAGE 5 – OPINION AND ORDER

## A. Application of *Iqbal* and *Twombly* to Affirmative Defenses

The parties dispute whether the Federal Rules of Civil Procedure, as interpreted in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), require affirmative defenses to include sufficient facts to "plausibly" state a claim. No Ninth Circuit case to date directly analyzes the issue. Nevertheless, even after the Supreme Court issued its decisions in *Iqbal* and *Twombly*, the Ninth Circuit continued to hold that affirmative defenses need only provide "fair notice" and be alleged "in general terms." *See, e.g.*, *Simmons*, 609 F.3d at 1023; *Kohler*, 779 F.3d at 1019.

This Court recently held in *Fathers & Daughters Nevada, LLC v. Moaliitele*, 2016 WL 7638187, at *2-3 (D. Or. Dec. 19, 2016), that the standard outlined in *Iqbal* and *Twombly* does not apply to affirmative defenses, and the Court continues to adhere to that decision. Although this Court previously adopted Findings and Recommendation of a U.S. Magistrate Judge that found *Iqbal* and *Twombly* applies to affirmative defenses, *Hayden v. United States*, 147 F. Supp. 3d 1125, 1128-1131 (D. Or. 2015), this Court only reviewed the Magistrate's Findings and Recommendation in that case for clear error because no party filed objections. Because the Ninth Circuit has not specifically held that *Iqbal* and *Twombly* do not apply to affirmative defenses, and because district courts are split on this issue, this Court did not find clear error. Based on its own *de novo* analysis, however, the Court finds that it is bound to follow the Ninth Circuit in holding that affirmative defenses need only provide "fair notice" of the defense and need only be described "in general terms." *Simmons*, 609 F.3d at 1023; *Kohler*, 779 F.3d at 1019.[4]

---

[4] In their Reply, Plaintiffs cited *Doe v. The Reed Institute*, Case No. 3:15-cv-00617-MO, 2015 WL 3964151 (D. Or. June 5, 2015), with the following parenthetical comment: "noting Judge Simon's 'thorough and well-reasoned opinion' in *Hayden* regarding application of *Twombly* to affirmative defenses." ECF 134 at 10 (internal page 2). Plaintiffs' citation to *Doe*, however, is misleading in two respects. First, the undersigned merely found in *Hayden* no clear error in the Magistrate's Findings and Recommendation to which no party filed any objection.

**B.   The *Noerr-Pennington* Doctrine**

The First Amendment to the United States Constitution guarantees the right "to petition the Government for a redress of grievances." U.S. Const. Amend. I, cl. 6. To make the Petition Clause meaningful, the Supreme Court, through the *Noerr-Pennington* doctrine, ensures parties are immune from antitrust, statutory, or tort liability "for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014) (describing immunity from antitrust liability); *see also Theme Promotions, Inc. v. New Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (applying doctrine to state law claims alleging tortious interference with prospective economic advantage).[5] Importantly, the immunity extends to protect "conduct intimately related to . . . petitioning activities" in order "to preserve the breathing space required for the effective exercise of the rights it protects." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933-34 (9th Cir. 2006). The question, then, is whether allowing Defendants to proceed with their fifth and eleventh

---

Second, and more significantly, the citation to *Doe* implies that the parenthetical comment comes from a *court decision*. The comment, however, comes only from a brief filed by the plaintiff in that case, not from the court. *See* Plaintiff's Motion to Strike Affirmative Defenses filed on June 5, 2015 in *Doe v. The Reed Institute*, Case No. 3:15-cv-00617-MO (ECF 22 at 12). Any further citation by Plaintiffs implying that a brief filed by a party in another case is actually a court decision will likely be met with *sua sponte* sanctions. Further, this is not the first time that the Court has observed misleading conduct by Plaintiffs in this case.

[5] Defendants argue that the doctrine does not apply to affirmative defenses, but only to affirmative claims. ECF 126 at 21. The Court disagrees. *See* J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition* § 31:105 (4th ed. 2016) (explaining "dismissal for failure to allege a claim will result if the antitrust complaint, counterclaim or *affirmative misuse defense* fails to allege that a trademark infringement claim is objectively baseless or was filed without regard to the final outcome of the case and solely for the purpose of forcing the infringement defendant to incur the expense of mounting a legal defense" (emphasis added)); *see also adidas-Am., Inc. v. Payless ShoeSource, Inc.*, 546 F. Supp. 2d 1029, 1078 n.18 (D. Or. 2008) (holding antitrust affirmative defenses barred by *Noerr-Pennington*).

affirmative defenses could "impair [Plaintiffs'] right of access to the courts protected by the First Amendment." *Id.* at 936.

### 1. Application of *Noerr-Pennington* to the Fifth and Eleventh Affirmative Defenses

The factual allegations underlying Defendants' fifth (unclean hands) and eleventh (trademark misuse) affirmative defenses are materially identical. Defendants allege in paragraph 5(a) of their fifth affirmative defense and paragraph 11(a) of their eleventh affirmative defense that Plaintiffs brought "frivolous lawsuits," or threatened such litigation, against Defendants and other third parties in an attempt to prevent competition and acquire a monopoly and that Plaintiffs "exploit[ed]" a 2008 jury verdict in favor of Plaintiffs in *Payless* to "restrain trade" on two and four striped designs on footwear and apparel. ECF 81 at 40-41, 43-44. These allegations are directed at litigation and threatened litigation—conduct squarely protected by the *Noerr-Pennington* doctrine.

In addition, paragraph 5(b) and paragraph 11(b), respectively, of the two affirmative defenses at issue allege that Plaintiffs failed to perform a reasonable pre-suit investigation. This allegation similarly involves "conduct intimately related" to the protected activity of bringing litigation. *Sosa*, 437 F.3d at 936 (holding pre-suit demand letter was subject to *Noerr-Pennington* immunity); ECF 126 at 10 n.1 (listing all the facts Defendants believe a proper investigation would have revealed, arguably rendering this litigation unjustifiable).

Similarly, Defendants allege in paragraph 5(c) and paragraph 11(c), respectively, of the two affirmative defenses that Plaintiffs in this lawsuit are asserting cancelled or otherwise unenforceable trademark registrations. As Defendants clarify in their response, Defendants allege Plaintiffs made these misrepresentations "to the Court[.]" ECF 126 at 23-24. Further, in paragraphs 5(d) and 11(d), Defendants allege that Plaintiffs failed to alert "the Court" to TRB's valid trademark registrations. ECF 81 at 41, 44. Because these allegations in both (c) and (d)

PAGE 8 – OPINION AND ORDER

arise in the context of the present litigation, they too are subject to protection by *Noerr-Pennington*. *See Sosa*, 437 F.3d at 934-35 (noting cases in which settlement offers and alleged discovery violations were considered "conduct incidental to a petition" and were deemed protected by the doctrine); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009) (holding "breathing space" includes discovery communications); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) ("Discovery, like settlement talks, is 'conduct incidental to' a petition-in this case, incidental to the realtors' associations' defense against Freeman's lawsuit.").

Finally, paragraphs 5(e) and 11(e) each contains the allegation that Plaintiffs conspired with competitors in an attempt to "knock the RBX brand out of the marketplace for the benefit of Plaintiffs and/or these third parties." ECF 81 at 41, 44. Defendants argue that Plaintiffs "brought this suit only after the direct request of Seduka and Modell's Sporting Goods." ECF 126 at 9. As Plaintiffs note, however, the allegations refer to discussions leading up to the filing of this litigation (and, Plaintiffs speculate, after Seduka also brought a similar declaratory action against TRB). Such "[c]oordinated intellectual property litigation is protected by the *Noerr-Pennington* First Amendment defense." J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition* § 31:102 (4th ed. 2016); *see also Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.*, 219 F.3d 92, 99 (2d Cir. 2000) (noting that court decisions have relied on the *Noerr-Pennington* doctrine to hold that copyright holders can engage in concerted litigation). Thus, each of Defendants' allegations in their fifth and eleventh affirmative defenses are directed at

conduct involving litigation or incidental to the prosecution of litigation such that these affirmative defenses are subject to dismissal under the *Noerr-Pennington* doctrine.[6]

### 2.  The "Sham" Exception

A narrow exception to the *Noerr-Pennington* doctrine arises when the petitioning at issue constitutes "sham litigation." *Sosa*, 437 F.3d at 934. Under this exception, "activity 'ostensibly directed toward influencing governmental action' does not qualify for *Noerr* immunity if it 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'" *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993) (alteration in original) (quoting *Noerr*, 365 U.S. at 144). To qualify for the exception, the litigation at issue must satisfy two tests. First, the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. Second, if the litigation is objectively baseless, the court then proceeds to examine the litigant's "subjective motivation" and ask whether the litigant intended "to interfere *directly* with the business relationships of a competitor." *Id.* at 60-61. (quoting *Noerr*, 365 U.S. at 144) (emphasis in original).

Additionally, the Ninth Circuit notes two other related instances when the sham exception may apply. First, "where the conduct involves a series of lawsuits 'brought pursuant to

---

[6] Defendants also point to other conduct they contend falls outside of the *Noerr-Pennington* doctrine. Specifically, they rely on allegations that Plaintiffs committed fraud on the U.S. Patent and Trademark Office (the "USPTO"). These allegations, however, are contained in Defendants' fourth and sixth counterclaims—counterclaims that are not at issue in the pending motion. Similarly, Defendants refer to Plaintiffs' decision to allow an RBZ mark on apparel, as well as an RPX mark, while complaining in the present litigation about Defendants' use of "RB" and a third letter. Again, this allegation is not included in either the fifth or eleventh affirmative defense (or any other affirmative defense). A motion for judgment on the pleadings is limited to matters presented in the pleadings. The Court, thus, does not consider these statements in evaluating application of the *Noerr-Pennington* doctrine to Defendants' fifth and eleventh affirmative defenses.

a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose," the *Noerr-Pennington* doctrine will not afford immunity. *Sosa*, 437 F.3d at 938 (quoting *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)). Second, the doctrine will not protect "allegedly unlawful conduct [that] 'consists of making intentional misrepresentations to the court' . . . [that] deprive the litigation of its legitimacy.'" *Id.* (quoting *Kottle*, 146 F.3d at 1060)).

### a.    Objective Merit

In assessing the objective merit of a case, the Supreme Court refers to the standard stated in Rule 11 of the Federal Rules of Civil Procedure. The relevant question is whether Plaintiffs' suit is "arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.'" *Prof'l Real Estate Inv'rs*, 508 U.S. at 65 (quoting Fed. R. Civ. P. 11).

Defendants argue that they need the opportunity for further factual development. The Ninth Circuit has described this category of "sham litigation" as involving an "essentially retrospective" inquiry, noting that "[i]f the suit turns out to have objective merit, the plaintiff can't proceed to inquire into subjective purposes, and the action is perforce not a sham." *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994). Defendants, however, do not cite any cases for the proposition that the Court is *precluded* from assessing application of the doctrine and the sham exception based on the allegations alone. Rather, the cases they cite direct careful application of the standard relevant to the pending motion. *See Kearney*, 590 F.3d at 647-48 (observing district court failed to assume plaintiff's allegations to be true); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1254 (9th Cir. 1982) (discussing need to accept allegations as fact).

Defendants' only relevant allegation is that Plaintiffs asserted "frivolous" lawsuits. ECF 81 at 41, 43. Under the standard set out by the Supreme Court, however, Plaintiffs'

claims—based on registration of numerous trademarks—could not be characterized as "objectively baseless." *See James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, 2013 WL 655314, at \*14 (C.D. Cal. Feb. 21, 2013) (granting summary judgment, holding "to the extent that Plaintiff owns a federally-registered trademark and is attempting to enforce it against a competitor with an arguably similar mark, Defendant cannot state that 'no reasonable litigant' could expect success on the merits of Plaintiff's claim"); ECF 134 at 19-20 (Plaintiffs' citation to multiple cases for similar proposition); *see also Dell, Inc. v. 3K Computers, LLC*, 2008 WL 6600766, at \*2 (S.D. Fla. Oct. 7, 2008) ("A brief review of the pleadings makes clear that plaintiff's claims are not 'objectively baseless.'"); *Rolex Watch U.S.A., Inc. v. Rainbow Jewelry, Inc.*, 2012 WL 4138028, at \*4 (S.D. Fla. Sept. 19, 2012) ("Rainbow's affirmative defense may prove to be a winner on the merits, but that does not inexorably lead to the conclusion that Rolex's lawsuit is a sham. Far from it, it appears both parties have credible arguments as to why they will succeed on the merits, thus rendering inapplicable the 'sham' exception to the *Noerr-Pennington* doctrine."); *1-800 Contacts, Inc. v. Mem'l Eye, P.A.*, 2010 WL 988524, at \*6 (D. Utah Mar. 15, 2010) (dismissing affirmative defense and finding lawsuit not baseless).

The Court follows the Ninth Circuit's direction that "[w]e do not lightly conclude in any *Noerr-Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections afforded by the First Amendment, a result we would reach only with great reluctance." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000). With respect to this version of the exception for sham litigation, considering the claims in the First Amended Complaint and the attached registration certificates, Plaintiffs are entitled to judgment as a matter of law against Defendants' fifth and eleventh affirmative defenses. Thus,

Plaintiffs' motivation for bringing this suit is irrelevant. *See Prof'l Real Estate Inv'rs*, 745 F.3d at 57.

### b.  Policy of Repeated Meritless Litigation

The second version of the exception for sham litigation precludes immunity for a "whole series of lawsuits and other legal actions without regard to the merits" that constitute "a pattern or practice of successive filings undertaken essentially for purposes of harassment[.]" *USS-POSC Indus.*, 31 F.3d at 811. Defendants do not plead that Plaintiffs have a policy of bringing harassing lawsuits without regard to the merits. Instead, in their brief responding to this motion, Defendants contend that they are still discovering the extent of "the adidas Plaintiffs' campaign of stripes litigations—which span back to at least the 1990s in Europe," but that they believe Plaintiffs have "launched a series of lawsuits against numerous third parties" in an attempt to suppress competition. ECF 126 at 28. Defendants then assert in a conclusory manner that Plaintiffs have a policy of starting meritless legal proceedings.

The Court declines to deny *Noerr-Pennington* immunity based on Defendants' conclusory assertion in their brief that Plaintiffs are engaging in harassing litigation. Defendants do not identify in their answer and affirmative defense, or even in their brief, a single lawsuit Plaintiffs have purportedly filed against third parties that is baseless and harassing. Further, Plaintiffs respond by identifying many cases in which they have achieved successful outcomes. ECF 109 at 10 n. 9-13; *see also USS-POSC Indus.*, 31 F.3d at 811 (recognizing "[t]he fact that more than half of all the actions as to which we know the results turn out to have merit cannot be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success").

Defendants also argue that Plaintiffs' "three proceedings at the USPTO against a total of six trademark registrations and seven trademark applications for the RBX Logo, a patent action

in the District of Oregon, a patent action before the International Trade Commission, and [an] administrative trademark proceeding in Canada" are evidence that Plaintiffs have "launched a campaign of litigation against" them and the RBX Mark. ECF 126 at 28. Defendants contend "[m]any of these cases were brought not on the merits." *Id.*

Defendants do not identify which of the six petitions is "baseless [and] repetitive." *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 840 (9th Cir. 1980). Nor have Defendants alleged facts from which the Court plausibly can conclude that any of the petitions are meritless or brought for purposes of harassment. *See id.* at 841-42 (finding sufficiently alleged facts where the plaintiff alleged that 13 earlier lawsuits were baseless and had "been decided against [the defendant] summarily," that the purpose of the lawsuits was "to interfere directly with [the plaintiff] as a potential competitor," that the defendant knew the plaintiff's development was contingent on financing through bonds, that the defendant knew the bonds could not be marketed while a lawsuit was pending, and that the lawsuits had been used as a means to halt the development and prevent the plaintiff's entrance into the market as a competitor).

Furthermore, upon the joint request of the parties, the three proceedings before the USPTO have been consolidated and stayed pending resolution of this case, undermining any suggestion that Plaintiffs are abusing the administrative process for purposes of harassment. In short, Defendants have not offered sufficient allegations for this Court to conclude Plaintiffs have engaged in a "'pattern of baseless, repetitive claims . . . which leads the factfinder to conclude that the administrative and judicial processes have been abused.'" *Prof'l Real Estate Inv'rs.*, 508 U.S. at 57 (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972)). The Court concludes that the pattern exception does not apply.

### c.  Intentional Misrepresentations to the Court

Defendants also argue that they have alleged circumstances sufficient to fall within the sham exception based on Plaintiffs' alleging "cancelled or otherwise unenforceable trademark registrations" and Plaintiffs' failing "to alert the Court to TRB's numerous *prima facie* valid federal trademark registrations." ECF 81 at 41, 44. In response, Plaintiffs note that in their First Amended Complaint they deleted all references to any cancelled registrations. Plaintiffs also question what authority requires them to identify Defendants' trademark registrations in their complaint.

Defendants' allegations must reflect that Plaintiffs' misrepresentations undermine the legitimacy of the proceeding. *Kottle*, 146 F.3d at 1063 (holding that allegations of conspiracy with others to oppose applications and misrepresentations to the administrative agency were insufficiently specific). The Court finds Defendants' allegations to be insufficient. *Cf. Freeman*, 410 F.3d at 1185 (noting in the context of application of the *Noerr-Pennington* doctrine that "[d]iscovery misconduct, subornation of perjury and witness intimidation" are "serious matters" that if not discovered in time could "have infected the defense of the lawsuit as to make it a sham").

Defendants also rely on their allegation in their fourth and sixth counterclaims that Plaintiffs engaged in fraud on the USPTO and on Plaintiffs' assertions to the Court on several occasions that their RBK Mark is "incontestable." Neither of these assertions is contained in the fifth and eleventh affirmative defenses and, as such, Defendants fail to give "fair notice" to Plaintiffs that their immunity is subject to the misrepresentation sham exception based on this conduct.

## C. Failure to State a Claim

Plaintiffs alternatively argue Defendants' unclean hands and trademark misuse defenses fail sufficiently to allege a defense based on antitrust activity, and their unclean hands defense fails as a matter of law.

### 1. Allegations of Antitrust Activity

To the extent Defendants allege antitrust activity (and to the extent such allegations are not barred by *Noerr-Pennington*), Defendants implicitly concede they do not state a claim under Section 1 of the Sherman Act. Regarding Section 2 of the Sherman Act, that statute prohibits monopolizing, attempting to monopolize, and conspiring to monopolize any part of the trade or commerce of the United States. 15 U.S.C. § 2. Defendants explain that their allegations in the two affirmative defenses at issue are intended to allege under Section 2 of the Sherman Act only attempted monopolization. To state such an affirmative defense (or to state a claim for attempted monopolization), a party must allege, among other things, "a dangerous probability that [Plaintiffs] would monopolize a particular market."[7] *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993). This element requires "inquiry into the relevant product and geographic market and the [alleged would-be monopolist's] economic power in that market." *Id.* "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of S. California*, 252 F.3d 1059, 1063 (9th Cir. 2001).

In their response, Defendants contend that the relevant market is subject to further factual development. In their fifth and eleventh affirmative defenses, Defendants allege that Plaintiffs

---

[7] To state a claim for attempted monopolization, a party must allege, in addition to a dangerous probability of success, "a specific intent to control prices or destroy competition," "predatory or anticompetitive conduct directed at accomplishing that purpose," and "causal antitrust injury." *Image Tech. Servs. Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997).

are attempting to restrain trade of "two and four striped designs on branded footwear or apparel." ECF 81 at 41, 44. This allegation is insufficient to state a claim under Section 2 of the Sherman Act. Among other deficiencies, Defendants do not allege that Plaintiffs' actions have precluded (or are likely to preclude) Defendants from participating in a *market*, such as the footwear or apparel market. *See Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 57 (2d Cir. 1997) (restrictions on ability to use PINE-SOL mark did not "in any way restrict [plaintiff] from producing and selling products that compete[d] directly with the LYSOL brand").

Defendants also discuss what is known as "*Walker Process* fraud," which provides that "the enforcement of a patent procured by fraud on the Patent Office may be violative of [Section] 2 of the Sherman Act provided the other elements necessary to a [Section] 2 case are present." *Walker Process Equip., Inc. v. Food Mach. and Chem. Corp.*, 382 U.S. 172, 174 (1965). The Court does not consider this argument because Defendants have not alleged fraud on the USPTO sufficient to support their fifth or eleventh affirmative defenses.

### 2.  Unclean Hands

Finally, separate and apart from the applicability of the *Noerr-Pennington* doctrine, Defendants' unclean hands defense fails as a matter of law. "To make out an unclean hands defense, a trademark defendant 'must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims.'" *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)). The defendant may not rely on the "allegedly unfair or improper filing of a trademark infringement lawsuit[.]" McCarthy § 31:51. Instead, the conduct must "relate to the getting or using the alleged trademark rights." *Id.*

Defendants point to Plaintiffs' misrepresentations to the Court as to the trademark rights they owned, when they were in fact cancelled (an error Plaintiffs corrected in their First

Amended Complaint) and Plaintiffs' failure to alert the Court as to TRB's registrations for the allegedly infringing RBX Mark. These are all actions related to Plaintiffs' enforcement of its trademark and thus are unrelated to "getting or using" that trademark. In their response to Plaintiffs' motion, Defendants also rely on allegations found in their fourth and sixth counterclaims and on other assertions not alleged anywhere in their affirmative defenses. In so doing, Defendants fail to give Plaintiffs "fair notice" that such conduct is part of Defendants' fifth affirmative defense of unclean hands.

## CONCLUSION

Plaintiffs' Motion for Judgment on the Pleadings (ECF 109) is GRANTED. Defendants' fifth and eleventh affirmative defenses are dismissed.

**IT IS SO ORDERED**.

DATED this 23rd day of January, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge