# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.,** a Delaware corporation, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>**TRB ACQUISITIONS LLC,** a New York limited liability company, *et al.*,<br><br>    Defendants. | Case No. 3:15-cv-2113-SI<br><br>**OPINION AND ORDER** |

Stephen M. Feldman, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; R. Charles Henn Jr., Charles H. Hooker III, and Nichole D. Chollet, KILPATRICK TOWNSEND & STOCKTON LLP, 1100 Peachtree Street, Suite 2800, Atlanta, GA 30309. Of Attorneys for Plaintiffs.

Kenneth R. Davis II and Parna A. Mehrbani, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204; Michelle Mancino Marsh, Allen G. Reiter, Eric Roman, Lindsay Korotkin, Alissa G. Friedman, and Phaik Lin Goh, ARENT FOX LLP, 1675 Broadway, New York, NY 10019. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

In this lawsuit, three adidas-named entities (adidas America, Inc., adidas AG, and adidas

International Marketing B.V.) and two Reebok-named entities (Reebok International Ltd. and

Reebok International Limited) (collectively, "Plaintiffs") allege federal and state claims of

trademark infringement, unfair competition, trademark dilution, and deceptive trade practices against Defendant TRB Acquisitions LLC ("TRB") and fourteen of TRB's licensees (collectively, "Defendants"). Before the Court is Defendants' motion to compel production of documents reviewed by three of Plaintiffs' deposition witnesses. Two of these deponents were designated by Plaintiffs as corporate representatives under Rule 30(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), and one deponent was a percipient witness. Plaintiffs argue that the documents are protected from discovery by either the attorney-client privilege or the work-product doctrine. Defendants respond that any such protection has been waived by: (1) the witnesses' review of the documents in preparation for deposition; (2) the witnesses' reliance on the documents in testifying; (3) the crime-fraud exception to the attorney-client privilege; and (4) Plaintiffs' failure properly to list the documents on a privilege log.

## STANDARDS

### A. Attorney-Client Privilege

Pursuant to Rule 501 of the Federal Rules of Evidence ("FRE"), the federal common law of privilege applies in federal court civil cases when a claim arises under federal law. In addition, "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) (citations omitted). "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The party asserting a privilege has the burden of establishing the applicable privilege. *Id.* Under the attorney-client privilege, when: "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless

the protection be waived." *Id*. (quotation marks and citation omitted). However, "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quotation marks and citation omitted). Further, for the attorney-client privilege to apply, it is essential "that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*." *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973) (emphasis in original) (quotation marks and citation omitted).

## B. Work-Product Doctrine

The work-product doctrine "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U. S. Dist. Court for the Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)). Documents or the compilation of materials prepared by agents of the attorney in preparation for litigation may be covered by the work-product doctrine. *Richey*, 632 F.3d at 567. To qualify for work-product protection, materials must: "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Id*. (quotation marks omitted).

The work-product doctrine affords special protection to materials that reveal an attorney's mental impressions and opinions ("opinion" or "core" work product). *Admiral Ins. Co.*, 881 F.2d at 1494; Fed. R. Civ. P. 26(b)(3)(B). Other work-product materials may be ordered to be produced upon a showing of substantial need for the information and that the information cannot be otherwise obtained without undue hardship. *Admiral Ins. Co.,* 881 F.2d at 1494; Fed R. Civ. P. 26(b)(3)(A)(ii). To obtain the opinion (or core) work product of an opposing party, however, a party must show that the mental impressions of counsel are at issue and the need for

the material is compelling. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

The primary purpose of the work-product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co.*, 881 F.2d at 1494. Work-product protection, like the attorney-client privilege, is waivable. *Richey*, 632 F.3d at 567.

## C. FRE 612

Rule 612 of the FRE is titled "Writing Used to Refresh a Witness's Memory" and provides:

> (a) **Scope**. This rule gives an adverse party certain options when a witness uses a writing to refresh memory:
>
> (1) while testifying; or
>
> (2) before testifying, *if the court decides that justice requires the party to have those options*.
>
> (b) **Adverse Party's Options; Deleting Unrelated Matter**. Unless 18 U.S.C. § 3500 provides otherwise in a criminal case, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony. . . .
>
> (c) **Failure to Produce or Deliver the Writing**. If a writing is not produced or is not delivered as ordered, the court may issue any appropriate order. . . .

Fed. R. Evid. 612 (italicized emphasis added).

The options available when a document is used to refresh a witness's recollection include that "the adverse party is entitled to have [the document] produced and to introduce into evidence any portion that relates to the witness's testimony." *In re Kellogg Brown & Root, Inc.* 796 F.3d 137, 143 (D.C. Cir. 2015); Fed. R. Evid. 612(b). Pursuant to FRCP 30(c)(1), FRE 612 applies to depositions. *See U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 565 (C.D.

Cal. 2003) ("Rule 612 applies to deposition testimony."); *Nutramax Labs., Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458, 461 n.7 (D. Md. 1998) (noting that many courts and "[l]earned commentators" conclude that FRE 612 applies to deposition testimony, although recognizing that a few courts have determined that it does not because the rule "implies testimony before a judicial officer," but ultimately concluding that "the better reasoned conclusion is that Rule 612 does apply at depositions"); *e.g.*, *Kellogg*, 796 F.3d at 143-44 (applying FRE 612 to deposition testimony); *Hallam v. Gemini Ins. Co.*, 2015 WL 11237637, at *4 (S.D. Cal. June 19, 2015) (same).

**D. Deposition of a Corporate Representative under FRCP 30(b)(6)**

Rule 30 of the FRCP is titled "Depositions by Oral Examination." FRCP 30(b)(6) provides:

> *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and *must describe with reasonable particularity the matters for examination*. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. *The person designated must testify about information known or reasonably available to the organization*. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6) (emphasis added).

As explained by the Advisory Committee, the discovery device created by FRCP 30(b)(6) was intended to assist both sides in the deposition process. Previously, officers or managing agents of a corporation who were deposed might use a technique known as "bandying," in which each witness in turn disclaims knowledge of facts that are known to other persons in the organization and thereby to the organization itself. This rule was intended to curb

that practice. In addition, organizations at times were subjected to an unnecessarily large number of their officers and agents being deposed by a party who was uncertain of who in the organization has knowledge regarding some specific matter at issue. The Advisory Committee observed that the burden placed by this rule on a party required to produce a witness or witnesses "is not essentially different from that of answering interrogatories under Rule 33, and is in any case lighter than that of an examining party ignorant of who in the corporation has knowledge." Fed. R. Civ. P. 30, advisory committee's notes to 1970 amendments; *see also Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 660-61 (D. Or. 2015) (discussing the substantial obligations imposed by FRCP 30(b)(6) on a party requesting a deposition of a corporate representative and on a party receiving such a request).

"In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation. The Rule 30(b)(6) designee does not give his personal opinion. Rather, he presents the corporation's 'position' on the topic. The designee testifies on behalf of the corporation and thus holds it accountable." *Sprint Commc'ns Co. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006) (quotation marks and footnotes omitted). Under this rule, "companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Id.* (quotation marks omitted)).

For these reasons, the purpose underlying FRCP 30(b)(6) would be "frustrated [if] a corporate party produces a witness who is unable . . . or unwilling to provide the necessary factual information on the entity's behalf." *Black Horse Lane Assoc. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000). Thus, the rule requires, if need be, that the responding party "must

prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits." *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996). In short, corporate parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information was in the witness's personal knowledge, provided that the information is reasonably available to the corporation. *Covad Commc'ns Co. v. Revonet, Inc.*, 267 F.R.D. 14, 25 (D.D.C. 2010); *see also Nutramax*, 183 F.R.D. at 469 ("The testimony of [FRCP 30(b)(6)] witnesses also is not limited to matters within their personal knowledge, but extends to matters known or reasonably available to the party designating the witness." (quotation marks omitted)).

Because FRCP 30(b)(6) places substantial responsibilities and burdens on the responding corporate party, the rule itself expressly requires that the party requesting the deposition "must describe with reasonable particularity the matters for examination." As one court has explained, "to allow the Rule to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Sprint*, 236 F.R.D. at 528 (emphasis added); *see also Lipari v. U.S. Bancorp, N.A.*, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008). "Once notified as to the reasonably particularized areas of inquiry, the corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Sprint*, 236 F.R.D. at 528 (quotation marks omitted).

## BACKGROUND

The adidas-named entities manufacture, market, advertise, promote, distribute, and sell footwear and apparel bearing the Three-Stripe trademark (the "Three-Stripe Mark"). These entities also use a triangular logo that incorporates the Three-Stripe Mark (the "Badge of Sport

Mark"). Plaintiff adidas AG is the owner of United States trademark registrations for several iterations of its Three-Stripe Mark. Plaintiff adidas International Marketing B.V. is the owner of trademark registrations for the Badge of Sport Mark.

The Reebok-named entities manufacture, market, advertise, promote, distribute, and sell footwear and apparel under the REEBOK trademark and the RBK trademark (the "RBK Mark"). Plaintiff Reebok International Limited ("Reebok UK") owns both the REEBOK trademark and the RBK Mark. Plaintiff Reebok International Ltd. ("Reebok USA") advertises and distributes all REEBOK-branded and RBK-branded products in the United States. Plaintiff adidas AG wholly owns Plaintiff Reebok USA, and Plaintiff Reebok USA wholly owns Reebok UK.

Defendant TRB owns all rights, interest, and title in and to the RBX trademark (the "RBX Mark"). TRB licenses the use of the RBX Mark to others, including the licensee defendants, in accordance with the terms of several license agreements. Plaintiffs allege, among other things, that the RBX Mark infringes the Three-Stripe Mark, the Badge of Sport Mark, the REEBOK trademark, and the RBK Mark.

Defendants assert, among other defenses, that Reebok made a decision to shift its branding away from the RBK Mark to "REEBOK" and thereby abandoned the RBK Mark. As part of this assertion, Defendants state that Reebok's claimed use of "stickers" containing the RBK Mark on boxes in late 2011 or 2012 was not a bona fide use in commerce but instead was orchestrated for the sole and fraudulent purpose of making a "maintenance filing" with the U.S. Patent and Trademark Office ("PTO"). Defendants also assert that laches bars Plaintiffs' claims, and this defense turns in part on when Plaintiffs first became aware of the RBX Mark.

Defendants argue that Plaintiffs' corporate representative deposition witnesses designated under FRCP 30(b)(6), William Federspiel and Sara Vanderhoff, and Plaintiffs' percipient

deposition witness, Maya Rodal, have all reviewed purportedly attorney-client privileged or work-product protected documents related to these defenses. Defendants also argue that at deposition Defendants' counsel was precluded from asking these witnesses about which documents were used to educate the corporate representative deponents under FRCP 30(b)(6) or which documents refreshed the recollection of any of the deponents.

The parties have had numerous discovery disputes in this case, the most recent of which the Court resolved on July 28, 2017, as clarified on August 21, 2017. In its August 21st Order, the Court requested additional briefing on the question of whether showing documents to corporate representative deponents designated under FRCP 30(b)(6) "automatically" waives attorney-client privilege or work-product protection for those documents. In their opening supplemental brief (ECF 293), Defendants raise for the first time the arguments that the purportedly privileged or work-product protected documents should be produced because they fall within the crime-fraud exception or because Plaintiffs failed to list them on a privilege log. Defendants also argue for the first time that on August 9, 2017, they discovered that percipient witness Ms. Rodal also used privileged documents to refresh her recollection before her deposition.

Defendants request that Plaintiffs be required to produce these documents to Defendants or, alternatively, that the Court review these documents *in camera* to determine whether the documents were properly withheld as privileged or protected and, if so, whether any privilege or protection has been waived. Specifically, Defendants seek:

(1)     All privileged documents that Mr. Federspiel reviewed for purposes of preparing for his FRCP 30(b)(6) deposition testimony on topics 5[1] and 6[2];

(2)     All privileged documents that Ms. Vanderhoff reviewed for purposes of preparing for her FRCP 30(b)(6) deposition testimony on topics 40[3] and 42[4]; and

(3)     All privileged or unproduced documents that Ms. Rodal reviewed for purposes of preparing for her deposition testimony as a percipient witness with respect to Plaintiffs' knowledge of TRB, the RBX Mark, or Reebok's RBK maintenance filings with the PTO.

## DISCUSSION

## A.  FRCP 30(b)(6) Corporate Representative Deponents

### 1.  FRE 612 in the Context of an FRCP 30(b)(6) Deposition

The primary question in the discovery dispute pending before the Court focuses on whether a corporate representative's review of attorney-client privileged or work-product protected documents in preparation for testifying in a FRCP 30(b)(6) deposition waives the privilege or protection. The Ninth Circuit has not yet addressed this specific question.

---

[1] Topic 5 is "Reebok's design, selection, use, and authorization of Third Party use of the RBK Mark and RBK Logo."

[2] Topic 6 is "Reebok's use or non-use of the RBK Mark or the RBK Logo, including its use on products (including, but not limited to, apparel, footwear, headwear, and athletic equipment and gear), hangtags, packaging, in advertising and promotions, and the changes of such uses over time."

[3] Topic 40 is "Adidas's knowledge of Defendants, the RBX Mark, the RBX Logo, the RBX Federal Registrations, and products bearing the RBX Mark or the RBX Logo, including the date(s) on which the Adidas first became aware of any of Defendants, the RBX Mark, the RBX Logo, the RBX Federal Registrations, and products bearing the RBX Mark or the RBX Logo."

[4] Topic 42 is "Adidas's efforts to determine whether the RBX Mark and the RBX Logo infringed on, diluted or otherwise damaged Adidas's rights in and to any of the Adidas Marks."

A leading appellate case discussing when disclosure should be ordered under FRE 612, but not in the specific context of a deposition of a corporative representative, is *Sporck v. Peil*, 759 F.2d 312 (3rd Cir. 1985). In that case, the Third Circuit held that the following three conditions must be met before an adverse party may obtain documents reviewed by a witness before testifying at a deposition: (1) "the witness must use the writing to refresh his memory"; (2) "the witness must use the writing for the purpose of testifying"; and (3) "the court must determine that production is necessary in the interests of justice." *Id.* at 317 (citing Fed. R. Evid. 612). The first of these requirements "is consistent with the purposes of [FRE 612], for if the witness is not using the document to refresh his memory, that document has no relevance to any attempt to test the credibility and memory of the witness." *Id.* The second requirement is "designed 'to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in part to have an impact upon the testimony of the witness.'" *Id.* at 317-18 (quoting Fed. R. Evid. 612 advisory committee note). If the document did not influence the witness's testimony, it serves "little utility for impeachment and cross-examination" of the witness. *Id.* at 318. The third requirement allows the trial court to "exercise discretion to guard against fishing expeditions among a multitude of papers which a witness may have used in preparing for trial." *Id.* (quotation marks omitted). The court in *Sporck* further indicated that this test can allow an adverse party to obtain documents that refreshed a deponent's recollection, even when such documents are protected by the work-product doctrine. *See id.* at 316-17 (determining that a compilation of documents provided by counsel are subject to the work-product doctrine, but that such a determination "does not end the issue" and that the protected documents may still be obtained through FRE 612).

Some courts, both before and after *Sporck*, have applied an "automatic" waiver under FRE 612, regardless of whether a deposition witness is a percipient witness or a corporate representative designated under FRCP 30(b)(6). *See, e.g.*, *Mattel, Inc. v. MGA Entm't, Inc.*, 2010 WL 3705782, at *5-6 (C.D. Cal. Aug. 3, 2010) (noting that FRE 612 "renders discoverable" documents reviewed prior to a deposition and that "'[a]ny privilege or work product protection against disclosure is deemed waived as to those portions so reviewed,'" and ordering production of all privileged documents "reviewed" by the witness "to refresh her recollection prior to her deposition" (quoting *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 25 (N.D. Cal. 1985))); *In re Polyester Staple Antitrust Litig.*, 2005 WL 3766934, at *2-3 (W.D.N.C. Sept. 7, 2005) ("Parkdale must produce the documents used to refresh Mr. Thomas' memory. . . . Rule 612 applies to deposition testimony and requires production of otherwise privileged documents."); *Marshall v. U.S. Postal Serv.*, 88 F.R.D. 348, 350 (D.D.C. 1980) ("Second, it is also apparent that once a document is used to refresh the recollection of a witness, privileges as to that document have been waived. This waiver is authorized by Rule 612 . . . ." (citation omitted)). The Court sees some appeal to an automatic waiver rule, particularly in the context of a witness designated under FRCP 30(b)(6).

Parties have a "heightened need to discover" documents used to prepare witnesses designated under FRCP 30(b)(6). *See Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 242 (D. Md. 2010); *Nutramax*, 183 F.R.D. at 472. As the court in *Nutramax* noted: "There is a greater need to know what materials were reviewed by expert and designee witnesses in preparation for deposition since the substance of their testimony may be based on sources beyond personal knowledge." 183 F.R.D. at 469. "How would it serve the pursuit of truth to shield such information, where the very same information would be available through other

discovery devices? Denial of access would only cloud, rather than clarify, corporate knowledge."

*Coryn Grp.*, 265 F.R.D. at 245.[5]

Moreover, when a corporation or other organization chooses to use attorney-client privileged or work-product protected documents to prepare its FRCP 30(b)(6) designee, the concern for fairness is heightened. As explained by the Southern District of Florida:

> in the 30(b)(6) context, a corporation cannot shield itself from the duties required under the rules of discovery merely by allowing its counsel to review all of the documents that its corporate representative uses to obtain a basis of knowledge in preparation of the 30(b)(6) deposition or to refresh his recollection, and then claim that those documents are protected from disclosure under the work product doctrine. Rather, it is the responsibility of the corporation and the 30(b)(6) corporate representative to gather the information relevant to the areas of inquiry for the deposition.

*Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam*, 2010 WL 5187680, at *3 (S.D. Fl. Dec. 10, 2010).

In addition, "[a] finding of privilege would place the cross-examiner at an unfair disadvantage. Documents that the witness had consulted would be barred from being used to probe that testimony. An incentive would thereby be created for parties to use privileged documents to prepare witnesses as a means of limiting the preparation of the cross-examiner." John W. Gergacz, ATTORNEY-CORPORATE CLIENT PRIV., § 5:29 (3d Ed. 2017) (footnote omitted). A corporate designee could testify only as to information and communications that are advantageous. Other information that would contradict the testimony or undermine the corporation's position and was contained in the documents could be ignored, and the opposing party would have no way of knowing how to test or challenge the corporate designee's

---

[5] For example, instead of a deposition conducted pursuant to FRCP 30(b)(6), a party could serve interrogatories to an opposing party under FRCP 33, joined with a document request under FRCP 34 seeking the production of all documents consulted by the party in preparing its answers to the interrogatories.

testimony. *Barrer v. Women's Nat'l Bank*, 96 F.R.D. 202, 205 (D.D.C. 1982); *see also Nutramax*, 183 F.R.D. at 473 ("It is all too easy for a witness to testify that his recollection is vague . . . . Rigorous cross examination is needed to test such self-serving statements by focused, analytical questioning . . . to test the witness's assertions.").

The court also recognizes, however, that many courts exercise discretion by applying a case-by-case balancing test. *See, e.g.*, *Heron Interact, Inc. v. Guidelines, Inc.*, 244 F.R.D. 75, 77 (D. Mass. 2007) ("To decide this question, the court must balance Defendants' need to see the documents—so as to have a complete record of its examination as well as to test Chacho's credibility—with Plaintiff's interest in protecting privileged information which might reveal its counsel's trial strategy or theory of the case."); *In re Rivastigmine Patent Litig.*, 486 F. Supp. 2d 241, 243 (S.D.N.Y. 2007) ("A better approach is the functional analysis . . . . [where] '[b]efore ordering production of privileged documents, courts require that the documents can be said to have had sufficient "impact" on the [witness'] testimony to trigger the application of Rule 612.' If this threshold is met, courts then engage in a balancing test considering such factors as whether production is necessary for fair cross-examination or whether the examining party is simply engaged in a 'fishing expedition.'" (first alteration added, remaining alterations in original) (citations omitted)); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 145 (D. Del. 1982) ("It would thus appear that [in enacting FRE 612,] Congress left the task of striking a balance between the competing interests of full disclosure and the maintenance of confidentiality for case by case determination."). "In exercising discretion under Rule 612, the courts balance the need for disclosure, in order to examine the witness fully, against the need to protect work product, in order to encourage careful preparation." *Coryn Grp*, 265 F.R.D. at 241. As the District of Columbia Circuit recently noted, however, "[c]ourts have divided on how to reconcile

Rule 612 balancing with attorney-client privilege and work product protection." *Kellogg*, 796 F.3d at 144.

Leading treatises also note that courts are divided between the balancing test and an automatic waiver rule, but generally support the balancing test. *See, e.g.*, Jack B. Weinstein, WEINSTEIN'S EVID. MANUAL § 10.05 (2017 Matthew Bender & Co.) (noting that some courts have established a balancing test and others require automatic disclosure and arguing that the rule of automatic disclosure should be rejected); Charles Alan Wright & Victor J. Gold, 28 FED. PRAC. & PROC: EVID. § 6188 (2017) (discussing absolute waiver and balancing tests and concluding that mandatory disclosure appears required under FRE 612(a)(1), but the balancing approach makes sense for cases under FRE 612(a)(2)); Glen Weissenberger, FED. EVID. § 612.6 (2017 Matthew Bender & Co.) (same). Some courts and commentators argue that this approach is most consistent with the text of FRE 612, which supports mandatory waiver under the circumstances of FRE 612(a)(1), but only discretionary waiver under the circumstances of FRE 612(a)(2).[6]

After reviewing numerous cases and several leading treatises involving FRE 612 and attorney-client privileged or work-product protected documents, and considering the purposes and requirements of depositions of a corporate representative designated under FRCP 30(b)(6), the Court finds that the application of FRE 612 should be different in the context of a witness

---

[6] Although still supported by the current text of FRE 612, this interpretation was more strongly supported in the previous version of the rule, which stated, in relevant part: "if a witness uses a writing to refresh memory for the purpose of testifying, either—(1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." Fed. R. Evid. 612 (1987). Notably, the advisory committee notes to the 2011 amendments state that the amendments were intended to make the rule "more easily understood" and to be "stylistic only."

designated under FRCP 30(b)(6) than in the context of a deposition of a percipient witness. The Court also does not adopt the application of an automatic waiver rule *per se*, but instead applies a middle-ground approach between the automatic waiver rule and the balancing test, in which a balancing test is applied but certain elements of the test are considered met with a rebuttable presumption in the context of a witness designated under FRCP 30(b)(6).

In considering this modified balancing approach, the Court will apply the three-part test set forth in *Sporck* and used by numerous district courts around the country. Although the Ninth Circuit has neither adopted nor rejected this test, it essentially includes the elements set forth in the text of FRE 612.

### 2. Application of *Sporck* to the Pending Motion

#### a. Whether the documents "refreshed" recollection

The first element discussed in *Sporck* is that a document be used to refresh a witness's recollection. In the context of a deposition of a corporate representative under FRCP 30(b)(6), this element should be read broadly. This is because even if the designee lacks independent knowledge of the noticed topics and is not having his or her own personal knowledge refreshed, because the corporation has an obligation to educate a witness regarding the noticed topics, it is the corporation that has the "prior knowledge of the facts contained in the documents" and thus it is the corporation's knowledge that is being "refreshed" under FRE 612. *Coryn Grp.*, 265 F.R.D. at 242; *see also Hallam*, 2015 WL 11237637, at *4 ("Thus, it appears that Gemini chose to use the claim notes to *refresh the company's recollection* in preparing this important 30(b)(6) witness." (emphasis added)). This element is presumed to be met when the corporation or its attorneys choose to refresh the corporation's knowledge with the selected documents.

Although Mr. Federspiel joined the company in 2015, the relevant topics for purposes of this motion involve conduct that occurred in late 2011 and 2012. Accordingly, Defendants argue,

this corporate representative necessarily had to educate himself from the documents he reviewed, including the privileged documents. The Court agrees. The corporation had to refresh its recollection by educating Mr. Federspiel with documents, and the corporation, through its counsel, chose a selection of documents that included privileged documents to do so. Thus, the first element is met with respect to Mr. Federspiel and the documents provided to him. Similarly, wth regard to Ms. Vanderhoff, again the company chose to refresh her (and its) recollection and educate her on the relevant topics with privileged documents. Therefore, the first element is met with respect to Ms. Vanderhoff.

### b. Whether the documents were "used" for the purpose of testifying

The second element asks whether the documents were "used" for the purpose of testifying. Plaintiffs argue that Defendants fail to show that the witnesses actually relied upon any privileged documents. For this element, the Court is applying a modified approach to the balancing test. The second element is designed to ensure that parties do not go on "fishing expeditions" or are not given "wholesale" access to the opposing party's files. *Sporck*, 759 F.2d at 317-18. Such concerns, however, are not present in ordering production of only specific documents that were shown to a designated corporate representative to prepare that witness for a deposition under FRCP 30(b)(6). *See Coryn Grp.*, 265 F.R.D. at 243; *see also Wheeling-Pittsburgh Steel Corp. v. Underwriters Labs., Inc.*, 81 F.R.D. 8, 11 (N.D. Ill. 1978) (ordering production of the entire file reviewed by the witness and noting such production does "not authorize Allied to explore plaintiff's files in wholesale fashion. Defendant's access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of Mr. Flanders. Since Mr. Flanders selectively chose plaintiff's file marked 'Communications with Counsel,' Allied is hereby granted access to the contents therein").

When dealing with FRE 612 issues in the context of depositions of percipient witnesses, courts not infrequently conduct an *in camera* review to compare the documents at issue with the actual deposition testimony. The court can then evaluate whether the documents appear to have influenced the testimony. In the context of FRCP 30(b)(6) depositions, however, the Court concludes that a better practice is for there to be a rebuttable presumption that the witness relied on the documents selected by the corporation (or its counsel) and then presented to the corporate representative to educate that witness on the noticed topics. Because the deposing party has an obligation to provide a deposition notice with specific and detailed topics and the responding corporation (or other organization) has a corresponding obligation to provide a witness who is knowledgeable on each specified topic, it is an reasonable inference that documents selected by the corporation and provided to the witness to educate him or her on a particular topic is intended to (and thus is likely to) have an influence on the witness's testimony on that topic. This is particularly true "where a corporate designee testifies on topics of which he denies any personal knowledge, [because] he is an 'empty vessel' and documents reviewed on those topics in preparation for the deposition necessarily informed his testimony." *Coryn Grp.*, 265 F.R.D. at 243.

Both Mr. Federspiel and Ms. Vanderhoff were such "empty vessels" on the relevant topics at issue in the pending motion. Although Plaintiffs argue that these witnesses have been involved with this litigation and have thus gained some knowledge of the underlying facts, the Court does not find this to be a persuasive argument that these witnesses were sufficiently knowledgeable on the relevant noticed topics. Moreover, the fact of whether the witness is an "empty vessel" is not dispositive on this element. If the corporation chooses to use documents to

refresh the recollection of a witness with prior knowledge, *i.e.*, who is not an empty vessel, the rebuttable presumption remains the same, albeit likely more easily rebutted.

Accordingly, the Court finds that there is a rebuttable presumption that Mr. Federspiel and Ms. Vanderhoff actually relied on the documents reviewed in presenting their testimony on the noticed topics. Because this is a rebuttable presumption, if Plaintiffs submit appropriate evidence, such as evidence showing that the subjects addressed in the withheld documents were not in fact covered in the depositions or that the witnesses testified exclusively based on knowledge obtained from sources other than those documents, then the Court will consider reviewing *in camera* any particular documents to determine whether it is likely that those documents may have influenced the testimony. *See Nutramax*, 183 F.R.D. at 473 (noting that this element may be established by "circumstantial proof, from which an inference may be drawn whether such assistance was received"); *cf.* 1 MCCORMICK ON EVID. § 9 (7th ed. 2016) (noting that for a witness's testimony plausibly to have been refreshed from a document requires a "nexus between the contents of the writing and the fact purportedly remembered").

### c. Whether the interests of justice require disclosure

In balancing the policies underlying the attorney-client privilege and the work product protection against the need for disclosure for effective cross-examination and impeachment, the Court again is mindful that the context under consideration is a deposition of a corporate representative under FRCP 30(b)(6). As others courts have recognized, and as already discussed above, there is a heightened need for robust disclosure in this context.

The Court recognizes and shares the concern expressed by the D.C. Circuit in *Kellogg*, in which the court rejected the notion that if disclosure is always required merely by preparation for a deposition under FRCP 30(b)(6), then requesting parties might submit deposition notices under that rule that intentionally cover privileged investigations in order to circumvent the attorney-

client privilege and gain knowledge of otherwise privileged communications. *Kellogg*, 796 F.3d at 145 (noting that a party cannot overcome privilege by issuing a notice under FRCP 30(b)(6) that covers a privileged investigation and then demanding under FRE 612 to see the underlying privileged documents because "[a]llowing privilege and protection to be so easily defeated would defy 'reason and experience' and 'potentially upend certain settled understandings and practices' about the protections for such investigations" (citations omitted)). This concern, however, can be avoided by the corporation filing a motion for a protective order upon receiving such a deposition notice under FRCP 30(b)(6). *See* Fed. R. Civ. P. 26(c)(1) (providing for protective orders).

A notice requiring the deposition of a corporate representative issued under FRCP 30(b)(6) "must describe with reasonable particularity the matters for examination." Thus, the corporation will have advance notice if a party is attempting to designate an improper topic that seeks to place a privileged document or communication at issue, such as the privileged investigation in *Kellogg*. FRE 612 does not need to be weakened, however, to provide the necessary protections for the attorney-client privilege under the narrow circumstances presented in *Kellogg*.

Plaintiffs argue that the Mr. Federspiel and Ms. Vanderhoff are attorneys and thus their testimony and documents will necessarily encroach into privileged matters. But the Plaintiffs, not Defendants, chose to designate attorneys as the witnesses for Plaintiffs on these topics. The noticed topics are unlike the topic in *Kellogg*, which specifically asked about a privileged investigation. Topics 5 and 6 involve Reebok's use and non-use of its RBK logo. Topic 40 involves adidas's knowledge of Defendants, the RBX mark and logo, and the use of the RBX mark and logo. Topic 42 involves adidas's efforts to determine whether the RBX mark and logo

infringed on adidas's rights. Only Topic 42 could arguably be considered to involve a legal issue, and even that topic could have had a layperson designated to respond. Although whether the RBX mark infringed on adidas's rights may be a legal issue, adidas's efforts to determine whether this infringement occurred are factual and could be described by someone other than an attorney. It was Plaintiffs' decision to designate attorneys, and Plaintiffs cannot now argue that the fact that they designated attorneys somehow reduces the applicability of FRE 612.

The Court does note, however, that even in the context of FRE 612 there is a heightened concern with compelling disclosure of pure "opinion" or "core" work product. *See Seven Seas*, 2010 WL 5187680, at *3; *Nutramax*, 183 F.R.D. at 465; *cf. Admiral Ins. Co.*, 881 F.2d at 1494 (noting, but not in the FRE 612 context, that there is heightened protection for such work product). Accordingly, the element that directs a court to consider the "interests of justice" may well be affected by whether the documents at issue contain pure opinion or core work product. In the pending discovery dispute, there is no indication that any of the withheld documents contain such core work product. If they do, however, Plaintiffs may seek appropriate protection from the Court.

Considering the issues and concerns of fairness and the attorney-client privilege and work-product protection,[7] the Court finds that the balance favors disclosure of the documents selected by the company and provided to the corporate representative witnesses to prepare them for their depositions under FRCP 30(b)(6) on the specified topics. The identified topics are of

---

[7] Plaintiffs argue that the Court should follow *Suss v. MSX Int'l Eng'g Svcs., Inc.*, 212 F.R.D. 159 (S.D.N.Y. 2002), in analyzing waiver of the attorney-client privilege under FRE 612. *Suss* found that the attorney-client privilege must independently and separately be waived before production could be ordered under FRE 612. *Id.* at 164-65. The Court does not find *Suss* persuasive and agrees with cases and secondary sources that have declined to follow its reasoning. *See, e.g.*, *Rivastigmine*, 486 F. Supp. 2d at 243; *Calandra v. Sodexho, Inc.*, 2007 WL 1245317, at *4 (D. Conn. Apr. 27, 2007); *see also* Gergacz, ATTORNEY-CORPORATE CLIENT PRIV., § 5:29 (noting that *Suss* "should not be followed").

significant importance to the defense, are narrow in scope, and involve only a subset of privileged and work-product protected documents selected by the company to educate and refresh the recollection of Plaintiffs' FRCP 30(b)(6) witnesses who otherwise did not have personal knowledge of the topics. The documents were reviewed for the specific purpose of deposition preparation, and the topics involved events that occurred years before the depositions took place. Accordingly, subject to the caveats and opportunities to seek further protection from the Court noted above, Plaintiffs must produce the documents that were shown to Mr. Federspiel and Ms. Vanderhoff to prepare them for their FRCP 30(b)(6) testimony on topics 5, 6, 40, and 42, regardless of attorney-client privilege or work-product protection. Because of this ruling, the Court does not reach Defendants' alternative argument regarding Plaintiffs' purported privilege log deficiencies.

### 3. Documents independently reviewed by Mr. Federspiel and Ms. Vanderhoff

Defendants assert that they recently learned that Mr. Federspiel and Ms. Vanderhoff also independently reviewed privileged documents in preparing for their depositions, in addition to the documents selected by the company to prepare them for their testimony under FRCP 30(b)(6). Plaintiffs respond that Defendants fail to meet their burden to show that Mr. Federspiel and Ms. Vanderhoff actually reviewed any documents independently. Plaintiffs do not deny that these witnesses reviewed documents independently, but merely argue that Defendants do not sufficiently prove such review. Given the history of less-than-full candor in discovery by Plaintiffs in this case, the Court is not persuaded by this form-over-substance argument.

The Court's application of the modified balancing test, however, is only applicable in the context of witnesses designated under FRCP 30(b)(6) for documents selected by the corporation. The presumption of disclosure (that arises from the rebuttable presumptions of elements one and

two) is not supported for documents that a witness independently reviews. It is one thing for a corporation to select what documents will educate its FRCP 30(b)(6) witnesses. Those are documents that the company apparently has found to be of such importance to the topic and the need to educate its corporate representatives before their depositions that the company selected them in order to meet its obligations under FRCP 30(b)(6). Therefore, it is both logical and fair to rebuttably presume that those documents were intended to and did refresh the recollection of and influence the testimony of the witnesses and will be of such importance that the interests of justice support disclosure. When a witness independently decides to review a certain document, however, that presents a different matter.

Documents that a witness—particularly a witness who lacks personal knowledge of the relevant topic, came to the company after the relevant events, or who is an "empty vessel" with respect to the relevant topic—believes may be important to a topic may not be important at all. Presumably, if documents are important to a topic, the company would have selected those documents to meet its obligations under FRCP 30(b)(6). Accordingly, the Court does not find that a presumption of disclosure is appropriate for any documents that Mr. Federspiel or Ms. Vanderhoff may have independently reviewed relating to topics 5, 6, 40, and 42. Instead, the Court orders that, to the extent Mr. Federspiel or Ms. Vanderhoff independently reviewed documents, those documents must be produced to the Court *in camera*, along with the complete deposition transcripts for these two witnesses. The Court will make a determination as to whether those documents were appropriately designated as privileged or work-product protected and, if so, whether those documents appear to have influenced a witness's testimony such that they should be produced in the interests of justice.

**B. Fact Witness—Ms. Rodal**

Although the parties' original dispute on this issue only involved FRCP 30(b)(6) witnesses and the Court's original order sought supplemental briefing only relating to waiver in the context of privileged documents in preparing FRCP 30(b)(6) witnesses, Defendants argue that on August 9, 2017, they became aware for the first time that percipient witness Ms. Rodal also reviewed privileged documents in preparing for her deposition. Defendants contend that this contradicts Ms. Rodal's previous testimony that she did not review privileged documents and that this was not information previously disclosed in Plaintiffs' privilege logs, and thus Defendants could not have raised the issue in the earlier discovery dispute briefing. Given the discovery history of this case, the Court will address Defendants' motion on the merits.

FRE 612 and the *Sporck* test are not limited only to FRCP 30(b)(6) witnesses. Defendants argue that application of the balancing test supports ordering disclosure of the documents reviewed by Ms. Rodal. There is some dispute regarding the underlying facts relating to Ms. Rodal and her review of documents.

Defendants assert in their reply brief that Ms. Rodal was on maternity leave for much of 2007, 2009, and 2012, and yet she testified regarding Reebok's RBK trademark prosecution in 2007, 2009, and 2012 and Plaintiffs' knowledge of TRB and the RBX Mark during those time periods. Thus, Defendants argue, those events were outside of Ms. Rodal's personal knowledge, and she necessarily testified based on knowledge derived from other sources. Defendants conclude that she must have recently reviewed documents, likely privileged documents, to provide her with that knowledge.

Because this was new information asserted in a reply brief, Plaintiffs responded at oral argument. They asserted that these facts are inaccurate. Plaintiffs pointed to Ms. Rodal's

testimony, at page 168 and 169 of her deposition transcript,[8] that she reviewed documents to get

back up to speed when she got back from maternity leave, not recently to prepare for deposition.

Counsel also represented that they telephoned Ms. Rodal to confirm that she did not review

documents relating the time periods she was out on maternity leave to refresh her recollection

prior to deposition. Plaintiffs further responded that Ms. Rodal did not testify that she reviewed

privileged documents, but merely testified that she reviewed the documents  given to her by

counsel and that those documents may or may not have been privileged. Thus, argue Plaintiffs,

Defendants fail to show that Ms. Rodal either refreshed her recollection with or relied on

privileged documents in testifying.

　　When asked to respond to these arguments, Defendants modified their argument.

Defendants argued that Plaintiffs prepared a "binder" for Ms. Rodal similar to the binders

prepared for Plaintiffs' witnesses designated under FRCP 30(b)(6). Defendants argued that if

Plaintiffs chose to prepare Ms. Rodal in a similar manner as its witnesses designated under

FRCP 30(b)(6), then she should be treated like a witness designated under FRCP 30(b)(6). The

Court disagrees.

　　As discussed above, the Court finds that witnesses designated under FRCP 30(b)(6) are

unique based on the specific obligations and responsibilities placed on both the noticing party

and responding party by that rule. The fact that a percipient witness is given a binder of

documents to prepare for deposition does not create the same burdens and obligations of a

witness designated under FRCP 30(b)(6).

---

[8] Ms. Rodal's deposition transcript is in the record as an exhibit in the pending summary judgment motions, and her testimony at pages 168-170 indicates that at least for the 2012 maternity leave period, and relating to the subject of the RBX trademark, she looked back at some point, likely before 2015, to see what happened while she was gone. ECF 231-12 at 13-15. This testimony does not, however, relate to the 2007 or 2009 maternity leave time periods.

Furthermore, Defendants fail to show that this "binder" refreshed Ms. Rodal's recollection, included privileged documents, or could reasonably have influenced her testimony. Under Defendants' theory, every percipient witness who is given documents by an attorney to prepare for a deposition would be subject to having those documents disclosed under FRE 612 based on a showing of nothing more than the fact that documents were given to the percipient witness. The Court finds this to be an insufficient basis to trigger FRE 612. Accordingly, the Court denies Defendants' motion with respect to Ms. Rodal.

## C. Crime-Fraud Exception

Defendants also argue that the Court should conduct an *in camera* review of the withheld documents to determine if the crime-fraud exception applies. The Court already has resolved the motion based on Defendants' arguments in the context of a deposition of a corporate representative under FRCP 30(b)(6). Because most of the documents at issue will not require an *in camera* review, the Court declines to reach Defendants' alternative argument relating to the crime-fraud exception at this time. If, however, during the Court's limited *in camera* review of the documents ordered for *in camera* review, it appears to the Court that the crime-fraud exception may apply, the Court may revisit this portion of Defendants' motion.

## CONCLUSION

Defendants' motion to compel (ECF 293) production of documents reviewed by Plaintiffs' FRCP 30(b)(6) witnesses William Federspiel and Sara Vanderhoff and percipient witness Maya Rodal is resolved as stated in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of November, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge