**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, *et al.*, | Case No. 3:15-cv-2113-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **TRB ACQUISITIONS LLC**, *et al.*, | |
| Defendants. | |

Stephen M. Feldman, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; R. Charles Henn Jr., Charles H. Hooker III, and Nichole D. Chollet, KILPATRICK TOWNSEND & STOCKTON LLP, 1100 Peachtree Street, Suite 2800, Atlanta, GA 30309. Of Attorneys for Plaintiffs.

Kenneth R. Davis II, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204; Michelle Mancino Marsh, Allen G. Reiter, Lindsay Korotkin, Alissa F. Bard, and Phaik Lin Goh, ARENT FOX LLP, 1301 Avenue of the Americas, Floor 42, New York, NY 10019. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Defendants move to dismiss this case based on alleged misconduct by Plaintiffs and their counsel and awarding attorney's fees to Defendants for the entirety of their costs and expenses in litigating this case. In the alternative, Defendants request lesser sanctions, including:

(1) precluding Plaintiffs from disputing certain issues; (2) establishing adverse facts and instructing the jury to accept those facts; (3) excluding Plaintiffs (but not Defendants) from using certain evidence; (4) instructing the jury that it may make certain "adverse inferences" against Plaintiffs; (5) precluding Plaintiffs from disputing certain claims and dismissing portions of this case; and (6) awarding attorney's fees to Defendants for the additional discovery and related expenses that Plaintiffs' misconduct has caused. For the following reasons, Defendants' motion is denied in part and deferred in part.

## STANDARDS

Defendants move to dismiss and for other sanctions under the Court's inherent authority, and under Rules 16(f), 37(b), (c), (d), (e), and 41(b) of the Federal Rules of Civil Procedure. Regarding a district court's inherent power to dismiss, the Ninth Circuit has explained:

> It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)); *see also Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380-82 (9th Cir. 1988) (reversing dismissal because the alleged misconduct was peripheral to the merits of case, but observing that "[d]ismissal under a court's inherent powers is justified . . . in response to abusive litigation practices . . . and to insure the orderly administration of justice and the integrity of the court's orders"); *North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (affirming dismissal of the defendant's counterclaim under the court's inherent power for concealing documents and violating the court's discovery order).

Rule 16(f) of the Federal Rules of Civil Procedure provides that a court may order sanctions, including dismissal, for a party's failure to comply with a scheduling or pretrial order. Rule 37(b)(2) provides for sanctions, including dismissal, for failure to comply with a discovery order. Rule 37(c)(1)(C) permits sanctions, including dismissal, for failure to provide information or identify a witness as required under Rule 26(a) or (e). Rule 37(d)(3) authorizes sanctions, including dismissal, for failure to appear at a deposition or respond to interrogatories. Rule 37(e)(2) provides for sanctions, including dismissal, for failure to preserve electronically stored information. Rule 41(b) permits dismissal for failure to prosecute, failure to comply with the Federal Rules of Civil Procedure, or failure to comply with a court order. *See also In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("[Rule 16(f)] puts teeth into these objectives by permitting the judge to make such orders as are just for a party's failure to obey a scheduling or pretrial order, including dismissal. Rule 37(b)(2)(C) allows dismissal for failure to comply with discovery plans and orders, and Rule 41(b) permits dismissal for failure of the plaintiff to prosecute or to comply with any order of court.").

The Ninth Circuit has set out five factors that a court must weigh when considering the sanction of dismissal. These factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)) (applying the factors in reviewing dismissal based on Rule 41(b)); *see also In re PPA*, 460 F.3d at 1226 (applying the factors in reviewing dismissal based on failure to comply with court orders); *Anheuser-Busch*, 69 F.3d at

348 (applying the factors in reviewing dismissal based on the court's inherent authority). Dismissal is proper when "at least four factors support dismissal" or if "three factors strongly support dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (quoting *Hernandez v. City of El Monte*, 138 F.3d .393, 399 (9th Cir. 1998)).

## BACKGROUND

The parties have contentiously litigated this case from the beginning. There have been numerous discovery disputes requiring formal and informal Court intervention. The Court has expressed concern over the conduct of both parties, but particularly the conduct of Plaintiffs and their counsel. The Court previously has sanctioned Plaintiffs for discovery-related conduct. The Court also has re-opened discovery and allowed new document discovery and depositions from Plaintiffs, including both percipient and Rule 30(b)(6) witnesses, because Plaintiffs timely did not provide complete and adequate discovery. The Court also has reviewed documents *in camera* and ordered Plaintiffs to produce documents that the Court found not to be privileged or for which privilege was waived. The Court also found that the crime-fraud exception to privilege applied to Plaintiffs' conduct occurring in 2012 relating to Reebok's sticker program to maintain the RBK trademark. The Court also ordered Plaintiffs to produce documents that were withheld as privileged but related to that sticker program and the associated trademark filing. Further, Plaintiffs failed to produce non-privileged, responsive documents relating to that sticker program until after the close of discovery and the filing of summary judgment briefs, and then only in response to one of the Court's discovery orders.

The additional discovery was ordered after the parties filed voluminous (more than 18,000 pages) of summary judgment memoranda, declarations, and exhibits in the summer of 2017. Because of the additional discovery, the Court at first stayed, and then denied without

prejudice, the pending summary judgment motions. The Court also delayed the trial in this case to May 21, 2019, from its earlier date of November 6, 2017.

## DISCUSSION

### A. Dismissal

#### 1. General Considerations

Defendants argue that dismissal is warranted because Plaintiffs have perpetuated a fraud on the Court and on Defendants, have engaged in egregious discovery-related misconduct, and have irrevocably tainted the proceedings such that the truth cannot be ascertained. Defendants contend that Plaintiffs' witnesses designated under Rule 30(b)(6) of the Federal Rules of Civil Procedure have lied under oath, that Plaintiffs have filed false statements and documents with the Court, including summary judgment filings, that Plaintiffs have destroyed relevant documents, that Plaintiffs delayed in producing relevant documents, including documents relating to the 2012 sticker program, until after the close of discovery and after the completion of summary judgment briefing, that Plaintiffs have litigated discovery requests at every turn, forcing Defendants to seek discovery from third parties and to file multiple motions before this Court and in other jurisdictions, only for Plaintiffs either to lose the motions or produce documents at the last moment before the motions could be heard or ruled upon, and that the majority of Plaintiffs' document production was an irrelevant document "dump" that Plaintiffs admit they did not review for relevance and thus Plaintiffs improperly transferred the burden of review to Defendants.

Plaintiffs' response is that ultimately Defendants have received responsive documents and thus they have been made whole, that Defendants too have been aggressive and hostile during the litigation, that Defendants also have engaged in discovery misconduct, that Defendants are "relentless" with what they seek in discovery and never satisfied, and that

Plaintiffs have acted in good faith and have produced documents in response to the Court's discovery orders. Plaintiffs admit to making some factual errors in filings with the Court and in previous testimony, and that they destroyed evidence through a "routine" document destruction policy of persons whom Plaintiffs did not realize at the time had relevant information.

The Court first notes that producing relevant, responsive documents after the close of discovery in response to a Court's discovery order is not how litigation should be conducted. A party has a responsibility timely to search for relevant, responsive documents and produce them in a timely manner. A party should not need a court order to force the party to search relevant custodians or to obtain and produce relevant documents. There may be times when a party does not accept that a custodian has relevant documents or a topic must be searched until after a court order, but that is not the case here. The Court is troubled by the fact that it took several court orders for certain relevant documents, including documents relating to the 2012 sticker program, which go directly to the merits of some of Defendants' counterclaims and affirmative defenses, to be produced to Defendants. It is particularly troubling that these documents were produced after summary judgment briefing was completed. Dismissal, however, "is a harsh penalty and is to be imposed only in extreme circumstances." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (quoting *Henderson*, 779 F.2d at 1423). The Court does not find that Plaintiffs' conduct rises to the level required to warrant such a drastic sanction.

Plaintiffs' and their counsel's conduct relating to discovery has not been ideal, and has been admonished by the Court during the course of this litigation, but the Court does not find that they have "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice" sufficient to support dismissal under the Court's inherent authority. *Anheuser-Busch*, 69 F.3d at 348. Although the inconsistencies in sworn testimony

(either in deposition or filed declarations) and later-discovered documentary evidence are starting to grow in number, the Court does not conclude at this time that they are all intentional misrepresentations designed to perpetrate a fraud on the Court.[1] Further, they likely can be used for impeachment purposes at trial. For example, the inconsistencies in the deposition testimony and declarations relating to the purported 2011 use of the sticker program, which actually did not begin until 2012, can be used for impeachment during cross examination at trial. Additionally, whether the spreadsheet purporting to summarize financial data is admissible at summary judgment (if a second round of summary judgment motions are permitted) or at trial will be decided by the Court under Rule 1006 of the Federal Rules of Evidence at the appropriate time.

The Court also does not find dismissal under Rule 37(d)(3) is appropriate under the circumstances of this case. Plaintiffs did not fail to appear for a deposition or respond to an interrogatory. Defendants' argument that the false or incomplete responses by Plaintiffs' Rule 30(b)(6) witnesses is tantamount to failing to appear is unavailing. The Court takes a party's obligation to prepare a Rule 30(b)(6) witness seriously and will consider an appropriate motion if Plaintiffs failed to live up to that obligation, including allowing the re-opening of a deposition, limiting testimony at trial, or other appropriate relief. But dismissal for failing to appear is not relief the Court will grant at this time for failing to prepare a Rule 30(b)(6) witness. Regarding the other bases of dismissal argued by Defendants, the Court weighs the five factors.

---

[1] The Court also has imposed lesser sanctions for some of them. For example, the King misrepresentation resulted in the Court ordering his deposition and the search of his electronic devices and documents.

## 2. The Ninth Circuit's Five Factors

### a. The Public's Interest in Expeditious Resolution of Litigation

This factor supports dismissal, but not strongly. "The public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" *In re PPA*, 460 F.3d at 1227. When there is delay, it is "costly in money, memory, manageability, and confidence in the process." *Id.* When the delay is unreasonable, this factor supports dismissal. *Id.*

Plaintiffs' discovery-related conduct has contributed to significant delay in this case. Defendants, however, are not blameless in the delay. They have sought extensions in briefing and have engaged in other actions that also contributed to some of the delay. They have also engaged in some discovery-related conduct that resulted in additional motion practice and Court rulings in Plaintiffs' favor, although to a much lesser degree. Thus, the Court finds that most of the delay is attributable to Plaintiffs and this factor supports dismissal, but does not do so strongly.

### b. The Court's Need to Manage its Docket

A district court needs to manage its docket and parties must comply with court orders, including scheduling orders and discovery orders. Plaintiffs have complied with the Court's scheduling orders. Plaintiffs also have attempted to comply with the Court's discovery orders, although Defendants do not agree that Plaintiffs fully have complied. Defendants have not, however, moved to compel further compliance. To the Court's knowledge, Plaintiffs have not blatantly refused to comply with or ignored any Court orders.

This factor also is to help a district court ensure that its docket does not become unmanageable. *Id.* Although this case has taken up a fair amount of the Court's time with various discovery motions and other disputes, the Court does not find that as a result its docket is unmanageable. This factor does not support dismissal.

### c. The Risk of Prejudice to Defendants

This factor strongly favors dismissal. Defendants have received discovery piecemeal and much later than they otherwise could have. They have had to request discovery from third parties and file many motions, all at additional expense. They have had to re-open numerous depositions, and take additional depositions years later, when memories may have faded. They have also had their ability to go to trial significantly delayed. Finally, they spent significant time and money filing their own and responding to Plaintiffs' summary judgment motions on an incomplete record, which ultimately prompted Defendants to request that the Court delay resolution of summary judgment under Rule 56(d). *See id.* at 1227-28 (noting that prejudice is presumed "if the plaintiff's actions impair the defendant's ability to go to trial," the plaintiff fails to produce documents as ordered, or the plaintiff causes unreasonable delay, although the plaintiff may rebut the presumption with a "non-frivolous" explanation for the delay, after which the defendant must provide some evidence of actual prejudice such as costs, loss of evidence, or loss of memory).

### d. The Public Policy Favoring Disposition of Cases on the Merits

This factor is neutral. Generally, the public policy favoring disposition on the merits counsels against dismissal. *Id.* at 1228. However, "a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits." *Id.* Accordingly, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *Id.* (quotation marks omitted).

### e. Availability of Less Drastic Sanctions

This factor does not support dismissal. There are less drastic sanctions available. Accordingly, because four factors do not support, or three factors do not support dismissal strongly, dismissal is not warranted at this time.

## B. Lesser Sanctions

The parties focus their briefing on Defendants' motion to dismiss. Defendants also request lesser sanctions, but do not elaborate. Plaintiffs merely state that Defendants did not specifically confer on each of the alternative sanctions sought and that each of the alternative sanctions are really case, or claim, dispositive and thus are subject to the same standard as the motion to dismiss. The Court addresses each alternative sanction requested, in turn.

### 1. Issue Preclusion

Defendants request that Plaintiffs be precluded from opposing or asserting any defenses to Defendants' laches, fraud, or abandonment counterclaims and affirmative defenses. This requested sanction is denied as, essentially, case dispositive.

### 2. Fact Establishment

Defendants request that the Court take as true and instruct the jury that: (a) Plaintiffs' had knowledge of the RBX brand and use of the RBX mark on goods in the United States before November 10, 2013, but affirmatively declined to act; (b) the RBK Mark was not in *bona fide* use in United States commerce for any goods, including "footwear, headwear, apparel, namely shirts," from 2009 to the present; and (c) Plaintiffs and in-house counsel knew that the RBK Mark was not in *bona fide* use by September 27, 2012, when Reebok filed its 2012 statement of use with the United States Patent and Trademark Office ("USPTO") and by March 29, 2016, when Reebok filed its 2016 statement of use.

The Court declines to order any of these sanctions at this time. Regarding the first, the Court recognizes there have been some incomplete and potentially misleading deposition answers, and possibly document production, relating to "watch notices" received by adidas and possibly Reebok (given the interrelated corporate structure of the two entities) regarding TRB's application for the RBX Mark. At this time, however, it is still an outstanding legal question regarding whether receipt of watch notices is sufficient to put Plaintiffs on notice to begin the laches period. The parties did not thoroughly brief the issue for it to be decided at this time.[2] If Defendants renew this portion of their motion in a pretrial motion, the Court will consider it after complete briefing.

---

[2] Plaintiffs stated in their response, without any authority, that intent-to-use applications are irrelevant to laches. In Plaintiffs' summary judgment response brief on this issue, Plaintiffs cited to *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 2008 WL 4614660, at *11 (N.D. Cal. Oct. 16, 2008), for the argument that notice of an intent-to-use application is insufficient. This citation is unavailing because that case is factually distinguishable. In *Levi Strauss*, the fact that the plaintiff had not received notice of the defendant's use of the mark was found to be undisputed. Further, the intent-to-use application was in the name of a different entity than the entity using the mark, which is what the court found dispositive in discussing the trademark application, not the fact that it was an intent-to-use application versus actual use. TRB is the entity that both used the mark and filed the intent-to-use application. Plaintiffs also cited to 6 McCarthy on Trademarks and Unfair Competition § 31:20 for the proposition that: "It is well established that trademark applications stating an intent to use a mark do not start the clock because they provide no notice of *use*." ECF 223 at 48 (emphasis in original). The cited section of McCarthy on Trademark, however, addresses progressive encroachment (where a business changes by expanding into different territories or a different type of business) and not trademark applications or intent-to-use applications with respect to laches. Indeed, searches of McCarthy on Trademark for "intent to use" in the same paragraph as "laches" and for "intent to use" in the same paragraph as "trademark application" both retrieved no results.

The U.S. District Court for the District of New Jersey, on the other hand, expressly found that publication of an intent-to-use application provided sufficient notice to trigger the "should have known" standard, denied injunctive relief, and stated: "Indeed, that Pharmacia sat silently on its rights with full knowledge of Alcon's intent to use the Travatan name gives rise to a separate laches defense." *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 383, 385 (D.N.J. 2002) (noting that "[t]he 'should have known' standard is satisfied by contrasting the full scope of a party's monitoring practices and the way it addressed marks it truly regarded as violating its rights, with its inactivity with respect to the mark it belatedly seeks to enjoin" (citing cases)).

Regarding Defendants' second and third facts requested to be established, after Defendants filed their motion the Court issued its Opinion and Order relating to the crime-fraud exception and the 2012 statement of use submitted to the USPTO. The Court found that the statement that the RBK Mark was in bona fide use in the ordinary course of trade in the September 2012 statement of use filed with the USPTO was fraudulent. The Court then ordered Plaintiffs to produce all related documents that had been withheld on the basis of privilege. Thus, Defendants will have significant new discovery on which to prove the facts they are requesting the Court establish. The Court declines to judicially establish the fact or instruct the jury. The Court also notes that in its Opinion and Order relating to the crime-fraud exception, the Court declined to make any finding after 2012, and the Court continues to so decline.

3. **Evidentiary Exclusion**

The Court defers ruling on evidentiary exclusions until the Court is deciding evidentiary issues at the final pretrial conference, or, if a further motion for summary judgment is permitted, at the time of such summary judgment briefing, if applicable.

4. **Adverse Inference Jury Instructions**

The Court defers ruling on jury instructions until the Court considers them at the time of the final pretrial conference.

5. **Claim Preclusion**

Defendants move to preclude the European-based entities of Plaintiffs from asserting any claims in this action and to preclude Plaintiffs from asserting any claims under the RBK Mark. Although Defendants did not include any argument specifically relating to this requested alternative sanction, it appears that the first request stems from Plaintiffs' alleged failure adequately to search for responsive documents from the European custodians despite the Court's express order that they do so, and the second request arises from Plaintiffs' alleged fraud on the

USPTO relating to the RBK Mark. Regarding the latter, the Court subsequently issued its Opinion and Order relating to the crime-fraud exception, providing Defendants with additional documents that they will be able to use in this litigation. The Court declines to issue a claim preclusion sanction relating to the RBK Mark as, essentially, dispositive.

Regarding the European entities, the Court finds a claim preclusion sanction also to be too harsh at this time. If Defendants seek permission to move to compel, the Court would consider such a request. Based on the admissible evidence in the record,[3] however, the Court does not find that Plaintiffs' conduct warrants the severe sanction of dismissing the claims of the European entities.

### 6. Attorney's Fees and Cost-Shifting

Regarding attorney's fees or cost-shifting, Plaintiffs argue that the Court has considered that issue as each motion has been individually litigated and should not consider awarding Defendants' any attorney's fees at this time. Although the Court has considered some attorney's fees requests and cost-shifting issues with individual discovery motions,[4] looking at the discovery issues globally, the Court is troubled by Plaintiffs' pattern of conduct and repeated "mistaken" representations and missteps. The Court finds Plaintiffs' failure to produce the non-privileged, responsive documents relating to Reebok's 2012 sticker program until after the close of discovery and the conclusion of summary judgment briefing to be particularly troublesome. Accordingly, the Court is inclined to award some amount of attorney's fees and possibly cost-

---

[3] The Court disregarded inadmissible attorney argument and other inadmissible aspects of the lengthy attorney declarations submitted in support of the briefs relating to this motion, which was a not-so-subtle attempt to avoid the Court's refusal to grant the request for overlength briefs.

[4] The Court awarded Defendants attorney's fees for bringing their first motion to compel and denied Defendants' request to shift the costs of the depositions that the Court recently allowed.

shifting relating to some of the additional discovery. The Court, however, defers ruling on this issue until the end of the case, when the Court rules on all issues relating to attorney's fees.

## CONCLUSION

Defendants' motion to dismiss and other sanctions and fees (ECF 368) is DENIED IN PART and DEFERRED IN PART, as discussed herein. Further, the Court does not believe that oral argument will likely be helpful and thus strikes the hearing schedule for October 9, 2018.

**IT IS SO ORDERED**.

DATED this 5th day of October, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge