IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**TRB ACQUISITIONS LLC**, *et al.*,<br><br>Defendants. | Case No. 3:15-cv-2113-SI<br><br>**OPINION AND ORDER** |

Stephen M. Feldman, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; R. Charles Henn Jr., Charles H. Hooker III, and Nichole D. Chollet, KILPATRICK TOWNSEND & STOCKTON LLP, 1100 Peachtree Street, Suite 2800, Atlanta, GA 30309. Of Attorneys for Plaintiffs.

Kenneth R. Davis II, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204; Michelle Mancino Marsh, Allen G. Reiter, Lindsay Korotkin, Alissa F. Bard, and Phaik Lin Goh, ARENT FOX LLP, 1301 Avenue of the Americas, Floor 42, New York, NY 10019. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs move for a protective order relating to a document the Court ordered produced under Federal Rule of Civil Procedure 612.[1] Plaintiffs also move to compel production of

---

[1] Plaintiffs' motion originally include additional documents, but the Court's subsequent Opinion and Order relating to the crime-fraud exception to attorney-client privilege mooted that portion of Plaintiffs' motion.

PAGE 1 – OPINION AND ORDER

documents that Plaintiffs argue are required "supplemental production" under Rule 26(e)(1) of the Federal Rules of Civil Procedure. Plaintiffs also move to compel Defendants either to abandon their "good faith" arguments or for the Court to find that the attorney-client privilege has been waived for documents relating to TRB's trademark search reports and likelihood of confusion communications with counsel. Finally, Plaintiffs request their attorney's fees for bringing this motion. Defendants object to all of Plaintiffs' requests and seek their attorney's fees for having to respond to the motion to compel. For the following reasons, Plaintiffs' motion for a protective order is denied, Plaintiffs' motion to compel is denied, and consideration of attorney's fees for Defendants is deferred.

## STANDARDS

**A. Protective Order**

Rule 26(c) of the Federal Rules of Civil Procedure provides, in relevant part, that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> * * *
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters

Fed. R. Civ. P. 26(c)(1).

**B. Supplemental Production and Motion to Compel**

Rule 26(e) of the Federal Rules of Civil Procedures provides, in relevant part, that:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A). Federal Rule of Civil Procedure 37(a) allows a party to move for an order compelling disclosure or discovery.

## C. Attorney's Fees

Rule 37(a)(5) provides:

> (5) *Payment of Expenses; Protective Orders*.
>
> (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5).

## DISCUSSION

## A. Protective Order

On January 31, 2018, the Court found that corporate-designatee witness Sara Vanderhoff had reviewed and relied on the substance of an email string, a portion of which was protected by the attorney-client privilege, in preparation for her deposition being held under Rule 30(b)(6) of the Federal Rules of Civil Procedure. ECF 319. The Court thus found, under Federal Rule of

Evidence ("FRE") 612, that the attorney-client privilege had been waived for the entire email. *Id.* (citing the Court's Opinion and Order dated November 22, 2017, ECF 318).

Plaintiffs move for a protective order clarifying that the unredacted email can only be shown to Ms. Vanderhoff and only she can be questioned regarding its contents. Plaintiffs argue that FRE 612 results in a limited waiver, does not result in a subject-matter waiver, and thus no other witness can be shown the unredacted document. Defendants respond that the limited, non-subject matter waiver is achieved by only the one document having its privilege waived, and not all other related documents. Defendants argue, however, that the single email reviewed by Ms. Vanderhoff, having been found to have its privilege, can now be shown to any witness.

FRE 612 provides that when a witness uses a writing to refresh memory before testifying, "an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." This rule is applicable to depositions and deposition testimony by operation of Rule 30(c) of the Federal Rules of Civil Procedure ("The examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence . . . ."); *see also Sporck v. Peil*, 759 F.2d 312, 317 (3d Cir. 1985) (noting that FRE 612 "is applicable to depositions and deposition testimony by operation of Federal Rule of Civil Procedure 30(c)").

Plaintiffs emphasize that under the FRE 612, the writing may be used only in cross-examination of "the witness" who used the writing to refresh his or her recollection and that only the portion that relates to the witness's testimony may be entered into evidence. This, however, does not necessarily mean that only the witness who refreshed his or her recollection may see the document that has been entered into evidence.

After a document is received in evidence, and under circumstances such as those present in this case, FRE 612 places no express limit on who may be shown the document. FRE 612 places an express limitation on the portion of the document that may be admitted into evidence—the portion that relates to the witness's testimony—but other than that limitation there is no limit placed on the use of the document after it is in evidence.

This is in contrast to the immediately preceding clause relating to cross-examination on the entire document, which is limited only to "the witness." There is no similar limitation on use of the portion of the document that is admitted into evidence. The Court must give meaning to the difference in the text of these portions of the FRE 612. *See Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (noting, in the context of statutory interpretation, that courts must give effect to every clause and word and that when particular text is used in one section but is omitted in another—"let alone in the very next provision"—courts presume that the drafters intended a difference in meaning). Because the rule does not include any limited purpose or limitation on who may review the document in its evidentiary use of the portion of the document that can be admitted into evidence, the Court declines to read such a limitation into FRE 612.

The Court has found that the entire email was used by Ms. Vanderhoff in her testimony and thus the Court ordered the email to be unredacted and produced in its entirety. Accordingly, the entire email relates to her testimony and may be entered into evidence, shown to any witness, and used for the questioning of any witness under FRE 612.[2]

---

[2] Defendants raise additional arguments regarding why the contents of the email should be permitted to be shown to other witnesses. Because the Court finds that it is proper under FRE 612 to show the unredacted document to other witnesses, the Court does not reach Defendants' additional arguments.

## B. Motion to Compel

### 1. Timeliness

The Court first notes that this motion is untimely. The Court has been dealing with discovery issues in this case for months, and Plaintiffs never raised any of the issues they now raise in their motion to compel, filed on September 4, 2018. Indeed, Plaintiffs expressly represented to the Court on June 1, 2018, that there was only "one pending supplemental-discovery matter"—the issue related to Apple and Mr. King's iCloud account. Yet the issues they now raise are not new. They are issues that were raised because of Defendants' summary judgment filings in the summer of 2017. Even the issues relating to the anticipated new summary judgment filings would have been known to Plaintiffs in June 2018, when Plaintiffs made the above representation and were proposing a case schedule that included prompt summary judgment and trial deadlines. The Court thus denies the motion as untimely. But even if the motion were timely, it would be denied on the merits, as discussed below.

### 2. Supplementation of Documents Related to Actual Confusion

Plaintiffs move that Defendants should be required to interview their employees, search their email and other documents in order to "supplement" Defendants' production relating to whether any actual confusion occurred after discovery closed. Plaintiffs note that they have produced hundreds of additional documents since the close of discovery in January 2017, relating to actual consumer confusion that has occurred after that date.

Defendants respond that supplementation is required under Rule 26(e)(1)(A) only if information provided during discovery is incomplete or incorrect, and that supplementation is not to be used for ongoing "rolled" discovery. To hold otherwise, argue Defendants, would render a discovery cutoff date meaningless. Defendants contend that their responses relating to actual confusion that they provided during the discovery period were not incomplete or incorrect.

The Court agrees with Defendants and the authorities cited in Defendants' brief. *See Our Children's Earth v. Leland Stanford Jr. Univ.*, 2015 WL 12964638, at *3 (N.D. Cal. Oct. 29, 2015) (noting that "the duty to supplement under Rule 26(e) does not automatically supersede the fact discovery cutoff as to developments thereafter that relate to prior requests for discovery made before the cutoff" and that "endless rolling production would undermine" the just, speedy, and inexpensive determination of cases and the need of proportionate discovery); *Kuhns v. City of Allentown*, 2010 WL 4236873, at *3 (E.D. Pa. Oct. 26, 2010) (noting that to allow supplementation "would be to invite rolling discovery in a way that would unfairly burden [Defendant] and indefinitely postpone trial"); *Dong AH Tire & Rubber Co. v. Glasforms, Inc.*, 2008 WL 4786671, at *2 (N.D. Cal. Oct. 29, 2008) ("The duty to supplement under Rule 26(e)(1) is directed to documents generated during the relevant time frame previously not produced but subsequently discovered. To say that the duty to supplement covers documents generated after that date would render meaningless any delineated time period for production . . . . [N]othing in [] rule [26(e)(1)] imposes a never ending obligation to produce documents continuously as they are created . . . ."). Plaintiffs are not, in fact, requesting supplementation, but are requesting ongoing discovery after the discovery cutoff date.

Although Plaintiffs may have elected to continue discovery efforts relating to actual confusion after fact discovery closed, Defendants are under no obligation to do so. Defendants may not, however, use at trial or summary judgment, if a further summary judgment motion is permitted,[3] evidence from after the discovery cutoff period if such evidence was not timely produced to Plaintiffs.

---

[3] The parties discuss new summary judgment motions as if they are a given, but the Court has instructed that no summary judgment motion may be filed without advance permission from the Court. The parties must first make a *prima facie* showing to the Court that there are no

### 3. Supplementation of Financial Documents

Plaintiffs request that Defendants supplement their financial information. Defendants do not dispute that supplementation of their financial information is warranted, but argue that the parties had agreed to a single supplementation closer to the time of trial and that there is no need for ongoing, burdensome, rolling supplementation. The only reason Plaintiffs provide for supplementation at this time is that Defendants relied on their own financial information in arguing their original motion for summary judgment and Plaintiffs believe that Defendants may use more recent financial information to support any new motion for summary judgment. Defendants respond, however, that they will use only the older financial data in any new summary judgment motion, if one is allowed. Based on that representation, the Court will not order supplementation of Defendants' financial information at this time. Defendants may not use any financial data not previously produced to Plaintiffs. The Court accepts the parties' earlier agreement of supplementation of financial information closer to trial.

### 4. Good Faith Defense and Purported Waiver of Attorney-Client Privilege

Plaintiffs move that the Court order that Defendants either must abandon their "good faith" arguments or find that there has been an implied waiver by TRB of its attorney-client privilege relating to the trademark search reports it instructed its counsel to conduct before registering its trademarks and the likelihood of confusion communications it had with its counsel. An implied waiver of the attorney-client privilege occurs when: (1) the party asserts the privilege as a result of an affirmative act, such as asserting claims or defenses; (2) through the affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense. *Home Indem.*

---

genuine disputed issues of material fact relating to a particular claim or affirmative defense before a motion for summary judgment will be authorized.

*Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). The third factor is met when lack of disclosure would be "manifestly unjust" and would result in significant prejudice to the party seeking disclosure. *Id.* As some courts have stated, implied waiver prevents parties from using the privilege "both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).

Plaintiffs note that in Defendants' previous summary judgment filings, they submitted the Declaration of Eli Yedid, who stated that TRB adopted the RBX trademark in good faith, believing that it did not infringe any other mark. Mr. Yedid testified that: (1) he instructed counsel to perform trademark searches to ensure that the RBX letters and "claw" mark design were available to be registered; (2) the searches revealed there were no identical marks, although there were many marks that shared one to three letters with RBX and appeared to be peacefully coexisting; (3) three active RBK registrations showed up in the searches, but they were among 45 results in Group 4 and thus were not concerning; (4) the searches revealed no direct conflicts but many claw marks and triangle orientations that were peacefully coexisting and thus adidas was not concerning; (5) he instructed counsel to file an application with the USPTO to register the RBX mark; and (6) although the company from whom TRB bought the RBX mark had been using it, Mr. Yedid instructed his graphic designer to alter the RBX font and to move away from the RBK font. Plaintiffs argue that Mr. Yedid's declaration and Defendants' arguments in their summary judgment brief regarding TRB's good faith put TRB's attorney-client communications relating to likelihood of confusion at issue and fairness requires that the communications be produced. The Court disagrees.

Plaintiffs argue that TRB's good faith is inextricably intertwined with legal advice and Defendants cannot assert this argument without waiving privilege. Plaintiffs provide no

trademark case in support of this theory. Good faith is relevant in trademark cases. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49, 348 n.9, 354 (9th Cir. 1979), a*brogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (holding that the "alleged infringer's intent in adopting the mark is weighed, both as probative evidence of the likelihood of confusion and as an equitable consideration" and "[g]ood faith . . . may be given considerable weight in fashioning a remedy"); 4 McCarthy on Trademarks and Unfair Competition § 23:124 (5th ed.) ("[G]ood faith' is not . . . a defense to infringement . . . [h]owever, an infringer's good faith may negate or lessen monetary relief and be relevant in fashioning the scope of injunctive relief."). Under Plaintiffs theory, no trademark holder could assert good faith without being found implicitly to waive attorney-client privilege. The Court declines to adopt such a sweeping proposition. *SmithKline Beecham Corp. v. Apotex Corp.*, 2005 WL 2436662, at *3,*5 (E.D. Pa. Sept. 28, 2005) (noting in a patent infringement action that "[a]sserting an affirmative defense of good faith does not automatically place advice of counsel at issue" and denying as moot a motion to compel due to a party's representation that it "intends to defend itself against the allegations of bad faith, but without relying on or putting at issue the advice of counsel" and that it "will not attempt to introduce as evidence [or disclose any] material that it has withheld from production on the grounds of privilege" (emphasis omitted)); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 199 F.R.D. 677, 682 (N.D. Okla. 2001) (denying motion to compel production of privileged documents in right of publicity infringement action and finding that "no waiver . . . has occurred based on the general assertion by Defendant that it did not act in bad faith but acted in good faith"). The Court instead looks to the specific statements and arguments of Defendants to see if they placed any attorney-client communication at-issue and if fairness supports disclosure of those communications.

In their summary judgment filings, Defendants did not reveal any privileged communications. Not all communications with attorneys are privileged. Privileged communications are those that are "made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). As an initial matter, Defendants produced the trademark search reports, but those are not privileged. Regarding Mr. Yedid's statements, a factual statement that a client instructed counsel to perform trademark searches does not reveal a privileged communication. Trademark searches can, and are, done by non-lawyers. The fact that Mr. Yedid asked an attorney to perform a task that can be performed by a non-attorney does not demonstrate that Mr. Yedid was seeking legal advice and does not make the communication privileged. Additionally, a factual statement by Mr. Yedid reflecting what the trademark searches revealed does not reveal a privileged communication.

Similarly, the fact that Mr. Yedid concluded that the RBK mark was not concerning because it was part of Group 4 and was among 45 other applications or registered marks in that group does not reveal attorney-client communications and did not put likelihood of confusion communications at issue. *See Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner."). Had Mr. Yedid, for example, stated that he believed there was no likelihood of confusion between the RBK mark and the RBX mark, there may be a stronger argument that his conclusion was inextricably intertwined with legal advice. But making a statement that three marks amongst many did not concern him did not necessarily imply reliance on legal advice.

Defendants have not asserted a defense of reliance on legal advice. Merely arguing good faith is insufficient to impliedly waive attorney-client privilege. Defendants are not using

attorney-client privilege as both a sword and a shield. Mr. Yedid's specific statements did not put attorney-client communications relating to likelihood of confusion at issue. The Court concludes it would not be manifestly unjust to preclude Plaintiffs from obtaining the attorney-client communications relating to likelihood of confusion, nor are Plaintiffs suffering prejudice by not having access to those documents.

### 5. Attorney's Fees[4]

Because Plaintiffs' motion to compel is denied, Plaintiffs are not entitled to attorney's fees. Defendants prevailed in defending against this motion. As the Court noted in its Opinion and Order resolving Defendants' motion to dismiss as sanctions for discovery-related conduct, however, the Court will consider more generally the issue of attorney's fees at the conclusion of this case.

## CONCLUSION

Plaintiffs' Motion for Protective Order (ECF 351) is DENIED. Plaintiffs' motion to compel (ECF 376) is DENIED. Attorney's fees are not awarded to any party at this time.

**IT IS SO ORDERED**.

DATED this 5th day of October, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[4] Neither party requested attorney's fees relating to Plaintiffs' motion for protective order, and thus fees are discussed only relating to Plaintiffs' motion to compel.